IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| BIANCA CLAYBORNE, individually and as next friend of J.C., D.W., L.W., A.C., and P.C., ) ) ) Plaintiff, ) ) v. ) ) RUBEN BASALDUA *et al.*, ) ) Defendants. ) | Case No. 4:24-cv-00012 District Judge Corker Magistrate Judge Lee |

### DCS DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO MOTION TO DISMISS

Katlyn Taylor (née Pelham), Montana Medina, and Erica Wright-Gilliam (collectively, "DCS Defendants") filed a motion to dismiss on May 20, 2024. (D.E. 33 & 34.) Plaintiffs responded to the motion on June 10, 2024. (D.E. 40.) A few brief points are warranted, so the DCS Defendants file this reply.

**I.  The Court Can and Should Address the DCS Defendants' Assertions of Qualified Immunity at this Stage.**

District courts have an obligation to "adjudicate . . . motion[s] to dismiss on grounds of qualified immunity." *Sterling Hotels, LLC v. McKay*, 71 F.4th 463, 467 (6th Cir. 2023). Because "[t]he Supreme Court has repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation," the Sixth Circuit has made clear that "when a defendant moves to dismiss on qualified-immunity grounds, district courts cannot avoid ruling on the issue." *Id.* at 466 (internal citations and quotation marks omitted). Thus, at the pleadings stage, the court must "take[] the complaint's factual allegations as true and decide[] whether—based on those facts—the defendant is entitled to qualified immunity." *Id.* "If so, the case is over; if not, the

1

denial of immunity is provisional, since the court may revisit the issue on summary judgment—where the court will take as true only the facts as to which the plaintiff has created a 'genuine issue.'" *Id.*

Nevertheless, Plaintiffs insist that there is an "unbroken line" of Sixth Circuit precedent holding that "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." (D.E. 40, at 8–9.) But that line of precedent has indeed been broken and deemed "at best imprecise." *Crawford v. Tilley*, 15 F.4th 752, 763 (6th Cir. 2021). In *Crawford*—a case referenced nowhere in Plaintiffs' response and post-dating every Sixth Circuit case that Plaintiffs do cite in support of their assertion—the Sixth Circuit clarified that "the validity of [a qualified-immunity] defense[] may be apparent from the face of the complaint, rendering a motion to dismiss appropriate," and that there is no justification for "a special rule or presumption against granting motions to dismiss that applies specifically for qualified immunity." *Id.* After all, it is the plaintiff's burden to include in its complaint allegations showing a "violation of clearly established law," and failing to do so means that the "defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Id.* at 760 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Thus, "if the complaint is 'distinguishable from [the Sixth Circuit's] past cases on its face,' it will not survive a motion to dismiss." *Kenjoh Outdoor, LLC v. Marchbanks*, 23 F.4th 686, 695 (6th Cir. 2022) (quoting *Crawford*, 15 F.4th at 766).

Such is the case here. As discussed below and at length in the DCS Defendants' motion to dismiss, (D.E. 34, at 8–20), the allegations against the DCS Defendants are "easily distinguishable from [binding] past caselaw." *Kenjoh Outdoor*, 23 F.4th at 695. And thus the claims against the DCS Defendants "need not proceed" any further. *Id.*

## II. The Court Should Reject Plaintiffs' Attempt to Turn Qualified Immunity on Its Head.

Plaintiffs' response is bereft of *any* binding precedent that has addressed circumstances similar to those alleged here. That is because there is no such precedent. In apparent recognition of this fact, Plaintiffs can only fault the DCS Defendants for not citing precedent that clearly exonerates them. But that is not how qualified immunity works. Again, once a defendant has invoked qualified immunity, it is the *plaintiff's* burden to hurdle the "high bar" of identifying a legal rule with "a high degree of specificity," "particularized to the facts of the case," that the defendant allegedly violated. *Beck v. Hamblen Cnty., Tenn.*, 969 F.3d 592, 599 (6th Cir. 2020) (internal citations and quotation marks omitted); *see also Arrington-Bey v. City of Bedford Heights, Ohio*, 858 F.3d 988, 993 (6th Cir. 2017) ("[A] plaintiff must identify a case with a similar fact pattern that would have given 'fair and clear warning to officers' about what the law requires."); *Goode v. Berlanga*, 646 F. App'x 427, 430 (6th Cir. 2016) ("[T]he plaintiff bears the burden of showing 'that the right was clearly established in light of the specific context of the case, not as a broad general proposition.'").

### A. Fourth Amendment claims.

The DCS Defendants argue that they are entitled to qualified immunity from the Fourth Amendment claims because binding precedent in this context—which is limited to a social worker's entry and search of a home, removal of children from their homes, and in-school interviews of children—is materially distinguishable from the facts alleged here. (D.E. 34, at 8–12.) Plaintiffs do not dispute this description of the state of the law. Instead, they attempt to shirk their duty of showing a clearly established Fourth Amendment violation by arguing that the DCS Defendants have not shown that the alleged conduct was clearly compliant with the Fourth Amendment. (D.E. 40, at 15.) Plaintiffs also appeal to broad Fourth Amendment propositions and the Sixth Circuit's general and unremarkable acknowledgment that social workers, like all

government officials, are subject to the Fourth Amendment.[1] (*See id.* at 12–15.) But this appeal to "broad general proposition[s]" is not enough—and it comes nowhere close to identifying a legal rule with "a high degree of specificity" that is "particularized to the facts of the case." *Beck*, 969 F.3d at 599; *Goode*, 646 F. App'x at 430; *see also, e.g.*, *Clark v. Stone*, 998 F.3d 287, 301–02 (6th Cir. 2021) (acknowledging that "[s]ocial workers are generally governed by the Fourth Amendment's warrant requirement" but nevertheless holding that the defendant social workers were entitled to qualified immunity because precedent "d[id] not clearly establish that a reasonable social worker in *this situation* would know that his conduct was violating the Fourth Amendment" (emphasis in original)); *Schulkers v. Kammer*, 955 F.3d 520, 533–36 (6th Cir. 2020) (similar).

## B. Procedural-due-process claim.

The DCS Defendants argue that the procedural-due-process claim fails for multiple reasons, including that the deprivation of Plaintiffs' right to family integrity was perpetrated by the state court through its removal order (and not by the DCS Defendants), and that under state law, it was the duty of the state court—not the DCS Defendants—to provide prior notice and an opportunity to be heard. (D.E. 34, at 17–18.) In support of these arguments, the DCS Defendants cite, among other cases, *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716 (6th Cir. 2011). (*Id.*) Instead of identifying precedent to the contrary, Plaintiffs attempt to distinguish *Pittman* on its facts. (D.E. 40, at 19–21.) Regardless, the asserted factual differences on which Plaintiffs rely—i.e., that *Pittman* "did not involve emergency ex parte proceedings" and that the social worker there did not "actively deprive[]" the parent of prior notice and a hearing—

---

[1] Plaintiffs also rely on Tennessee statutes, asserting that the DCS Defendants "had no [arrest] authority" under those statutes. (D.E. 40, at 12–13.) But even if true, this has no bearing on whether the DCS Defendants are entitled to qualified immunity, because "[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." *Davis v. Scherer*, 468 U.S. 183, 194 (1984).

4

are distinctions without a difference. Indeed, the Sixth Circuit has applied *Pittman* to orders resulting from ex parte proceedings, and even when the defendant had allegedly failed to provide prior notice. *See Kolley v. Adult Protective Servs.*, 725 F.3d 581, 585–87 (6th Cir. 2013) (where defendants had allegedly deprived plaintiff of custodial rights by "petition[ing] for an ex parte order when no emergency existed," "fail[ing] to notify [plaintiff] of the custody hearings," and "falsely testif[ying] about [plaintiff's] actions and statements," holding that "*Pittman*'s analysis control[led]" because "the court was the final decision-maker regarding . . . custody decisions" and because it was the "courts' duty to notify the appropriate parties to a custody hearing"); *see also Young v. Vega*, 574 F. App'x 684, 690 (6th Cir. 2014), *abrogated on other grounds by Barber v. Miller*, 809 F.3d 840, 844 (6th Cir. 2015) (holding that the case could not "be distinguished from *Pittman*," explaining that "Tennessee law vested the juvenile court with the ultimate decision making authority concerning the issuance of . . . ex parte orders of immediate removal and temporary placement" and that "the temporary loss of custody was a deprivation perpetrated by the juvenile court alone").

Plaintiffs also rely on *Barnett v. Hommrich*, No. 3:17-CV-155, 2018 WL 10195923 (E.D. Tenn. Mar. 27, 2018), where the court denied dismissal of a procedural-due-process claim related to the removal of a child. (D.E. 40, at 19, 21.) But there is a crucial detail in *Barnett* that is absent here—the child there ("M.G.W.") was removed *without prior judicial approval*. *See Barnett*, 2018 WL 10195923, at *1, 8 (noting that the social workers removed M.G.W. *before* the juvenile court had entered the protective custody order and that, in the absence of an exigency, the social workers were not entitled to qualified immunity for "the *warrantless* indefinite custody removal of M.G.W."). Indeed, the court later dismissed all claims asserted by M.G.W.'s brother, M.W.— including his procedural-due-process claim—because he was removed "pursuant to a facially valid

court order."² *Barnett v. Smithwick*, No. 3:17-CV-155, 2019 WL 7290475, at *12 (E.D. Tenn. May 30, 2019), *aff'd*, 835 F. App'x 31 (6th Cir. 2020).

      C.      **Substantive-due-process claim.**

In their motion to dismiss, the DCS Defendants explained that for a substantive-due-process claim, like procedural-due-process claim, only the state court is responsible for the deprivation of the right to family integrity where, as here, the children are removed pursuant to the state court's removal order. (D.E. 34, at 13.) And although there is an exception to this rule when the removal order "is based on a bad-faith child-services investigation," the "[c]ase law exploring this bad-faith exception is sparse," and "[t]he few cases" to apply the exception involved circumstances not alleged here. (*Id.* at 13–14.) The DCS Defendants also explained that a substantive-due-process claim requires a plaintiff to show "conscience-shocking conduct"—a standard that is difficult to meet—and that there appears to be no case in the Sixth Circuit holding that a social worker shocks the conscience by engaging in anything like the conduct alleged here. (*Id.* at 15–16.)

Plaintiffs do not dispute these points. Instead, they simply assert that they have "allege[d] facts supporting" the bad-faith exception and conscience-shocking conduct. (D.E. 40, at 23.) Thus, they again fail entirely to identify a specific legal rule "particularized to the facts of the case," *Beck*, 969 F.3d at 599, and therefore have not alleged "a violation of their clearly established substantive-due-process rights," (D.E. 34, at 13–16).

---

² The children here were removed pursuant to the state court's protective-custody order. (D.E. 1, ¶¶ 137, 145, 152–53, 157.) Plaintiffs do not dispute that the order was facially valid—and for good reason. Under Tennessee law, a child may be taken into state custody pursuant to a court order, Tenn. Code Ann. § 37-1-113(a)(1), and there is a presumption of validity to any order entered in the minutes of a court of record, *id.* § 37-1-102(b)(7).

### D. State-law claim.

Finally, with respect to the state-law claim for false arrest and imprisonment, the DCS Defendants explain in their motion to dismiss that there appears to be no Tennessee case that has even addressed such a claim against a social worker. (D.E. 34, at 19.) Plaintiffs do not disagree. Instead, they point to this statement in the motion to dismiss: "At most, a reasonable social worker would have understood the general proposition that 'the intentional restraint or detention of another without just cause' constitutes false arrest and imprisonment." (*Id.*) Plaintiffs contend that this "concession" defeats the DCS Defendants' entitlement to qualified immunity from this claim. (D.E. 40, at 24–25.) But, again, generic descriptions of a legal principle cannot defeat qualified immunity—indeed, it was precisely for this reason that the DCS Defendants included the statement in their motion. (*See* D.E. 34, at 19–20.) Plaintiffs go on to say that the DCS Defendants cannot "skirt liability" from this claim. (D.E. 40, at 25.) But it is Plaintiffs who cannot skirt their responsibility to identify specific precedent with facts similar to those alleged here. They have not and all but explicitly concede that they cannot.

### III. Plaintiffs Have Not Shown that this Is a Rare, Obvious Case Needing no Relevant Precedent.

As a last resort, Plaintiffs argue that the allegations against the DCS Defendants establish constitutional violations so obvious that a relevant body of caselaw is not needed to show that the violations were clearly established. (*See* D.E. 40, at 10–11, 16–17, 22.) To overcome an assertion of qualified immunity, Plaintiffs are almost always required to "show that 'then-existing precedent' put the illegality of [the defendant's] conduct 'beyond debate.'" *Ashford v. Raby*, 951 F.3d 798, 801 (6th Cir. 2020) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)). Though there is a "rare" exception for the "obvious case" in which "no precedent is needed," the

burden remains on the plaintiff to show that this rare exception applies. *Id.* (quoting *Wesby*, 583 U.S. at 64).

Plaintiffs fall well short of carrying that burden, because the cases on which they rely for the exception's application involve circumstances that bear no resemblance at all to those alleged here. Only one of those cases involves claims against a social worker. But the social worker there demanded entry into the family's home and strip searched all of the children—"search[ing] the[ir] bodies and inspect[ing] the[ir] genitals . . . for signs of physical abuse"—without "even a shadow of probable cause that the [parents had] physically abused the[] children." *Curry v. Ky. Cabinet for Health & Fam. Servs.*, No. 3:17-CV-00730-JRW-CHL, 2020 WL 4820718, at *1, 5 (W.D. Ky. Aug. 19, 2020). Nothing of the sort has been alleged here. The other cases on which Plaintiffs rely are even further afield. *See Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364 (2009) (school officials entitled to qualified immunity because clearly established law did not show that strip search of student at school violated the Fourth Amendment); *Hope v. Pelzer*, 536 U.S. 730 (2002) (handcuffing prisoner to hitching post); *Moderwell v. Cuyahoga Cnty., Ohio*, 997 F.3d 653 (6th Cir. 2021) (placing pretrial detainee alone in a cell on lockdown in response to non-violent minor infraction, without access to medical staff or other necessities, and despite knowing of detainee's suicidal condition); *Guertin v. State*, 912 F.3d 907 (6th Cir. 2019) (taking affirmative steps to systematically contaminate a community through its public water supply with deliberate indifference); *Baynes v. Cleland*, 799 F.3d 600, 614 (6th Cir. 2015) (excessively forceful or unduly tight handcuffing).

## CONCLUSION

For the reasons stated above and in the memorandum in support of the motion to dismiss, all claims against the DCS Defendants should be dismissed in their entirety.

Respectfully submitted,

JONATHAN SKRMETTI
Tennessee Attorney General and Reporter

/s/ *Jordan K. Crews*
JORDAN K. CREWS, BPR #34541
Senior Assistant Attorney General
KATHERINE P. ADAMS, BPR #39501
Assistant Attorney General
Office of the Tennessee Attorney General
P.O. Box 20207
Nashville, TN 37202
(615) 532-7913; (615) 532-7259
jordan.crews@ag.tn.gov
katherine.adams@ag.tn.gov
*Attorneys for Katlyn Taylor, Montana Medina, and Erica Wright-Gilliam*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and exact copy of the foregoing has been forwarded via the District Court's electronic filing system, to:

Tricia Herzfeld
Anthony A. Orlandi
Herzfeld, Suetholz, Gastel, Leniski & Wall, PLLC
223 Rosa L. Parks Avenue, Suite 300
Nashville, TN 37203
tricia@hsglawgroup.com
tony@hsglawgroup.com

Abby R. Rubenfeld
Rubenfeld Law Office, PC
202 South Eleventh Street
Nashville, TN 37206
arubenfeld@rubenfeldlaw.com

Meghan Murphy
Senior Assistant Attorney General
Peako Jenkins
Assistant Attorney General
Office of the Tennessee Attorney General
P.O. Box 20207
Nashville, TN 37202
meghan.murphy@ag.tn.gov
peako.jenkins@ag.tn.gov

Jeffrey R. Thompson
Gina Sarli Vogel
Lewis Thomason, P.C.
900 South Gay Street, Suite 300
P.O. Box 2425
Knoxville, TN 37901
jrthompson@lewisthomason.com
gvogel@lewisthomason.com

on this the 17th day of June 2024.

/s/ *Jordan K. Crews*
JORDAN K. CREWS
Senior Assistant Attorney General