IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | | |
|---|---|---|
| BIANCA CLAYBORNE, individually and as next friend of J.C., D.W., L.W., A.C., and P.C., | ) ) ) ) | |
| Plaintiff, | ) ) ) | Case No. 4:24-cv-00012 |
| v. | ) ) ) | District Judge Corker Magistrate Judge Lee |
| RUBEN BASALDUA, et al. | ) ) | |
| Defendants. | ) | |

**REPORT OF THE PARTIES' PLANNING MEETING**

1. **26(f) Conferences**: The following persons participated in Rule 26(f) conferences on April 10, 2024, and via various email correspondence through June 20, 2024:

   - Tony Orlandi and Tricia Herzfeld representing the Plaintiffs.
   - Meghan Murphy and Peako Jenkins representing Ruben Basaldua, Douglas Foster, Donnie Clark, and James Thompson (the "THP Defendants").
   - Jordan Crews and Katherine Adams representing Defendants Katlyn Taylor (nee Pelham), Montana Medina, and Erica Wright-Gilliam (the "DCS Defendants").
   - Gina Vogel and Jeff Thompson, representing Defendants Alan Crabtree and Coffee County (the "County Defendants").

1a. **Case Synopsis per D.E. 35**:

This case involves alleged civil rights violations stemming from an incident on February 17, 2023. That day, Bianca Clayborne, her five children (then ages 4 months to 7 years old), and the children's father were traveling from Atlanta to Chicago. When they passed through Coffee County, a Tennessee Highway Patrol ("THP") Officer pulled the car over, and three other THP

1

officers respond to the scene. The stop lasted over two hours. During the stop, THP called the Department of Children's Services ("DCS") to be present at the Coffee County Jail. The THP officers cited Ms. Clayborne for simple possession of marijuana. Clayborne then drove to the Coffee County jail with the THP officers.[1] At the jail, DCS social workers were waiting. They spoke with one of the THP officers, who told them that Ms. Clayborne was a good mother, that she should be released so that she would not be separated from her children, that the children were not being neglected or abused, and that it would be best for everyone for Ms. Clayborne to stay with the children. DCS social workers stated that they still intended to question Ms. Clayborne and the children. At the car, the DCS social workers proceeded to question Ms. Clayborne and to demand a urine sample from Ms. Clayborne (which she was unable to provide). After the DCS workers exited the car, multiple officers from the Coffee County Sheriff's Department ("CCSD") (including officer Alan Crabtree) placed spike strips to immobilize the car. About four miles from the jail, DCS held an emergency *ex parte* hearing in Coffee County General Sessions Court, resulting in an *Ex Parte* Protective Custody Order. After this order was issued, County officers at the jail separated the children from Ms. Clayborne. DCS initially placed the children in foster care for the next 14 days (two children in one foster home and three children in a separate foster home). On approximately March 3, 2023, DCS placed all five children with a family friend in Nashville. DCS returned custody of the children to Ms. Clayborne on April 13, 2023.

**Plaintiffs' Claims**: Plaintiffs bring federal constitutional and state law claims against four THP officers (the THP Defendants), three DCS workers (the DCS Defendants), CCSD Officer

---

[1] Clayborne alleges that the THP officers escorted her to the jail and that she was not free to leave. The THP officers deny that she was not free to leave.

Crabtree and Coffee County (the County Defendants), and John Doe Officers of the CCSD. In substance, Plaintiffs allege that the family should have been free to leave once Ms. Clayborne was merely cited for simple possession of marijuana, but instead the family was illegally seized, arrested, and searched after that point. Plaintiffs also allege that the DCS Defendants denied Plaintiffs due process by separating them without notice and an opportunity to be heard, and that the County is liable for unconstitutional actions of the CCSD officers. Plaintiffs seek nominal, compensatory, and punitive damages, along with declaratory relief.

**THP Defendants' Defenses**: The THP Defendants deny that they illegally seized, arrested, or searched the Plaintiffs. The THP Defendants deny that they violated any of the Plaintiffs' constitutional rights and deny liability as to all counts asserted against them in the Complaint. Defendants assert the defense of qualified immunity.

**DCS Defendants' Defenses**: The DCS Defendants deny that they violated any of Plaintiffs' constitutional rights and deny liability as to all counts asserted against them in the Complaint. The DCS Defendants assert that they are entitled to qualified immunity from all claims alleged against them. And, to the extent that the Fourteenth Amendment claims are based on the DCS Defendants initiating removal proceedings in state court, the DCS Defendants assert that they are also entitled to absolute prosecutorial immunity from those claims.

**County Defendants' Defenses**: The Coffee County Defendants deny that they violated any of the Plaintiff's constitutional rights and deny liability as to all counts asserted against them in the Complaint. Defendant Crabtree asserts the defense of qualified immunity.

2. **Initial Disclosures**. The parties have completed the initial disclosures required by Rule 26(a)(1). By agreement among the parties, those disclosures were made on **May 10, 2024**.

3. **Discovery Plan**. The parties propose this discovery plan:

The parties have already begun discovery, including initial disclosures and document discovery.

The DCS Defendants have filed a motion to dismiss asserting, among other things, that they are entitled to qualified immunity from all claims alleged against them. The DCS Defendants may seek a stay of discovery as to them pending the Court's resolution of the threshold qualified-immunity issues raised in the motion to dismiss. Should the Court grant such a stay and subsequently deny part or all of the DCS Defendants' motion to dismiss, the following dates may require modification.

(a) Discovery will be needed on these subjects:
(1) The circumstances of what occurred February 17, 2023, involving the Plaintiffs, including in the traffic stop, at the jail, and at the courthouse.
(2) Relevant policies, practices, and procedures of the THP, DCS, and the County.
(3) Training and supervision of individual Defendants.
(4) The identity of the John Does.
(5) Alleged damages suffered by Plaintiffs.

(b) Disclosure of discovery of electronically stored information should be handled as follows: The Court has entered a Joint ESI Protocol (D.E. 38.) In substance, the parties have agreed to the format of productions of ESI, along with a process for identifying relevant custodians and search terms.

(c) The parties have agreed to an order regarding claims of privilege or of protection as trial-preparation material asserted after production, as follows: as reflected in ¶ 7 of the ESI Protocol (D.E. 38), the parties have agreed that (as to both electronic and hard copy production), no waiver of privilege/work product protection occurs absent intentional waiver.

(d) *Dates for commencing and completing discovery, including discovery to be commenced or completed before other discovery*: Discovery has already commenced. Fact discovery shall be complete **December 18, 2024**. Discovery motions shall be filed by **November 25, 2024**.

(e) *Maximum number of interrogatories by each party to another party, along with the dates the answers are due*: The parties incorporate the 25-interrogatory limit of Rule 33(a)(1). Answers to interrogatories shall be due within 30 days of service under Rule 33(b)(2).

(f) The parties do not intend to cap the number of Requests for Admission. All RFAs shall be due by no later than 21 days after service. The deadline for serving RFAs

is **November 27, 2024**.

(g)　Plaintiffs shall be limited to 30 fact depositions, including any third-party deposition. Each of the THP Defendants, DCS Defendants, and Coffee County Sheriff's Office Defendants shall be limited to 10 depositions, including any third-party depositions. As discovery progresses, if a party believes that exceeding these caps is warranted, the parties shall confer to see if they can reach agreement on additional depositions, and may seek court relief if they cannot reach agreement.

(h)　Limits on the length of depositions, in hours: Depositions presumptively shall be limited to 7 hours, consistent with Rule 30.

(i)　*Dates for exchanging reports of expert witnesses*: Initial expert reports due **April 11, 2025**. Rebuttal Reports due **May 23, 2025**.

(j)　Dates for supplementations under Rule 26(e): In addition to the default obligation to supplement in timely fashion, the parties shall supplement by no later than **November 4, 2024**.

**4.　Other Items:**

(a)　*A date if the parties ask to meet with the court before a scheduling order*: If the Court believes that a conference is appropriate, a conference on July 8, 2024 would work for the parties.

(b)　*Requested dates for pretrial conferences*. The parties respectfully request a status conference with the Court approximately the week of **October 23, 2024**. The parties also request a pretrial conference approximately 7 days before trial.

(c)　*Final dates for the plaintiff to amend pleadings or to join parties*: **September 27, 2024**.

(d)　*Final dates for the defendant to amend pleadings or to join parties*: **September 27, 2024**.

(e)　*Final dates to file dispositive motions*: **June 13, 2025**.[2]

(f)　*State the prospects for settlement*. Given the nature of this case, the parties believe that settlement is possible once the DCS Defendants' asserted immunity defenses are adjudicated.

(g)　*Identify any alternative dispute resolution procedure that may enhance settlement prospects*. The parties believe that the following plan will enhance the prospects

---

[2] Under default deadlines, responses will due **July 11, 2025**, and replies due **July 18, 2025**.

for settlement:

a. The parties shall make at least two substantive attempts at case resolution. By no later than **October 7, 2024,** the parties must file a joint case resolution status report confirming their first substantive attempt at settlement. The parties must have conducted enough discovery or otherwise exchanged enough information prior to this date to substantively evaluate and discuss settlement**.** The parties' joint reports must state the specific steps taken toward case resolution, including that an offer or demand was made and responded to and that counsel discussed the parties' positions and specific next steps to promote case resolution. In other words, the parties must "show their work" in creating a plan to facilitate successful settlement negotiations.

b. The parties' second attempt must be by mediation, which must be concluded by no later than **February 9, 2025**. A report of mediation, which will constitute the second required case resolution status report, must be filed by no later than **February 23, 2025**. Promptly upon selection of a mediator and scheduling of mediation, and by no later than **December 20, 2024**, the parties must file a joint notice of mediation details, which confirms their selection and identity of the selected mediator and the date on which mediation is scheduled.

(h) *Final dates for submitting Rule 26(a)(3) witness lists, designations of witnesses whose testimony will be presented by deposition, and exhibit lists*. The default disclosures deadline under Rule 26(a)(3)(B) should control here, including disclosures under Rule 26(a)(3)(A) no later than 30 days before trial.[3]

(i) *Final dates to file objections under Rule 26(a)(3)*. The default objection deadline under Rule 26(a)(3)(B) should control here, including objections no later than 14 days before trial.

(j) *Suggested trial date and estimate of trial length*. The parties suggest a trial date of **October 27, 2025**. The parties hereby certify in good faith that the case should be

---

[3] Should this land on a weekend or holiday, the parties request that the deadline by the last business day <u>before</u> that weekend date.

ready for trial by that date, which is under 18 months from the filing of this Report. The parties anticipate that trial will last 5-7 days.

**(k)** **Other matters.**

    a. The THP Defendants have dashcam and bodycam videos of the February 17, 2023, incident. The parties have agreed to seek to enter into a stipulation regarding the authenticity of those videos by **July 12, 2024**. Also, as already reflected in the Answers filed thus far, the parties anticipate that additional facts will not be in dispute, and the parties will seek to reach factual stipulations where possible. The parties shall advise the Court of all factual stipulations by no later than **May 16, 2025**.

    b. The parties suggest that any *Daubert* motions be filed by **August 1, 2025**.[4]

    c. As reflected at D.E. 22, the parties have not consented to proceed before a magistrate judge.

    d. With respect to electronic disclosures of information, there will be some electronic discovery of Defendants. The parties have agreed to limit that discovery to information reasonably available in the ordinary course of business. The parties have already agreed to the format and media of such productions. All parties have informed their clients to preserve potentially discoverable information. At this point, the parties do not anticipate any special problems in connection with electronic discovery. All discovery requests and responses are to be made through counsel. For Plaintiffs, Ms. Clayborne is responsible for preserving responsive records. Defendants have appointed the following individuals as responsible for that Defendant's document retention policies:

        i. DCS Defendants: Multiple individuals throughout DCS depending on the records requested. As of the filing of this document, those individuals include the named DCS Defendants and Amy McLaughlin.

        ii. THP Defendants: Multiple individuals throughout the THP depending on records requested. As of the filing of this document, those individuals include the named THP Defendants, Brian Hughes, Cpt. Christopher Ray, Cpt. Wesley Stafford, Cpt. Travis Plotzer, and Crystal Millsaps.

        iii. County Defendants: Multiple individuals throughout the CCSO

---

[4] Under default deadlines, responses would be due **August 15, 2025**, and replies due **August 22, 2025**.

depending on the records requested.  As of the filing of this document, those individuals include Alan Crabtree and Frank Watkins.

| | |
|---|---|
| Date: June 21, 2024 | */s/ Anthony A. Orlandi*  <br>TRICIA R. HERZFELD, BPR #26014  <br>ANTHONY A. ORLANDI, BPR #33988  <br>Herzfeld, Suetholz, Gastel, Leniski & Wall, PLLC  <br>223 Rosa L. Parks Avenue, Suite 300  <br>Nashville, TN 37203  <br>(615) 800-6225  <br>tricia@hsglawgroup.com  <br>tony@hsglawgroup.com  <br><br>ABBY R. RUBENFELD, pro hac vice  <br>Rubenfeld Law Office, PC  <br>810 Dominican Drive, Ste. 215  <br>Nashville, TN 37228  <br>(615) 386-9077  <br>arubenfeld@rubenfeldlaw.com  <br>*Attorneys for Plaintiffs* |
| Date: June 21, 2024 | */s/ Jordan K. Crews*  <br>JORDAN K. CREWS, BPR #34541  <br>Senior Assistant Attorney General  <br>KATHERINE P. ADAMS, BPR #39501  <br>Assistant Attorney General  <br>Office of the Tennessee Attorney General  <br>P.O. Box 20207  <br>Nashville, TN 37202  <br>(615) 532-7913; (615) 532-7259  <br>jordan.crews@ag.tn.gov  <br>katherine.adams@ag.tn.gov  <br>*Attorneys for Katlyn Taylor, Montana Medina, and Erica Wright-Gilliam* |
| Date: June 21, 2024 | */s/ Meghan Murphy*  <br>MEGHAN MURPHY, BPR #34061  <br>Senior Assistant Attorney General  <br>PEAKO JENKINS, BPR #32190  <br>Assistant Attorney General  <br>Office of the Tennessee Attorney General  <br>P.O. Box 20207  <br>Nashville, TN 37202  <br>(615) 253-3890; (615) 741-8059 |

meghan.murphy@ag.tn.gov
peako.jenkins@ag.tn.gov
*Attorneys for Ruben Basaldua, Donnie Clark,
Douglas Foster, and James Thompson*

Date: June 21, 2024

*/s/ Gina S. Vogel*
JEFF R. THOMPSON, BPR #020310
GINA S. VOGEL, BPR #033526
Lewis Thomason, P.C.
900 South Gay Street, Suite 300
P.O. Box 2425
Knoxville, TN 37901
(865) 546-4646
jrthompson@lewisthomason.com
gvogel@lewisthomason.com
*Attorneys for Coffee County, Tennessee, and Officer Crabtree*

**CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing document was served via CM/ECF notification and electronic mail on this 21st day of June 2024 on the following:

| | |
|---|---|
| Jeffrey R Thompson<br>Gina Sarli Vogel<br>**Lewis Thomason, P.C.**<br>900 South Gay St., Ste. 300<br>P.O. Box 2425<br>Knoxville, TN 37901<br>865-546-4646<br>Fax: 865-523-6529<br>jrthompson@lewisthomason.com<br>gvogel@lewisthomason.com<br><br>***Attorneys for Coffee County Tennessee and Officer Crabtree*** | Jordan Crews<br>Katherine P. Adams<br>**Office of the Tennessee Attorney General**<br>P.O. Box 20207<br>Nashville, Tennessee 37202<br>(615) 532-7913 phone<br>(615) 532-5683 fax<br>jordan.crews@ag.tn.gov<br>Katherine.adams@ag.tn.gov<br><br>***Attorneys for Erica Wright-Gilliam, Katlyn Taylor and Montana Medina*** |
| Meghan Murphy<br>Peako Jenkins<br>**Office of the Tennessee Attorney General**<br>P.O. Box 20207<br>Nashville, Tennessee 37202<br>Phone (615) 253-3890<br>meghan.murphy@ag.tn.gov<br>Peako.Jenkins@ag.tn.gov<br><br>***Attorneys for Ruben Basaldua, Donnie Clark, Douglas Foster, and James Thompson*** | |

                                              */s/ Anthony A. Orlandi*
                                              Anthony A. Orlandi