# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# AT WINCHESTER

| | |
|---|---|
| BIANCA CLAYBORNE, et al., | ) |
| | ) |
|    Plaintiff, | ) |
| | ) Case No.: 4:24-cv-00012 |
| v. | ) |
| | ) Judge Clifton L. Corker |
| RUBEN BASALDUA, et al., | ) |
| | ) JURY DEMANDED |
|    Defendants. | ) |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DCS TO COMPLY WITH SUBPOENA

Plaintiffs have asserted claims against three groups of Defendants: (1) Tennessee Highway Patrol Troopers ("THP Troopers"); (2) Coffee County Sheriff's Deputy Alan Crabtree, the County, and John Doe officers (the "County Defendants"); and (3) three social workers with the Tennessee Department of Children's Services (the "Social Workers"). The Social Workers filed a Motion to Dismiss, claiming immunity, and then moved to stay discovery as to the Social Workers. In contrast, THP Troopers and the County Defendants filed Answers. Discovery as to those Defendants is ongoing. The Social Workers have declined to participate in discovery pending a ruling on their motions.

Plaintiffs served a subpoena to the Tennessee Department of Children's Services ("DCS"). DCS has records that are relevant to Plaintiffs' claims against the THP Defendants and the County Defendants. These records will need to be produced regardless of whether the Social Workers are immune to Plaintiffs' claims. Nevertheless, DCS has objected to producing them until the Court adjudicates whether the Social Workers have immunity. DCS's position is unreasonable and inefficient. It would delay the progression of this case against the THP Troopers and the Social Worker Defendants for no purpose. For these reasons and those set out below, Plaintiffs respectfully request that the Court order DCS to comply with the subpoena.

## BACKGROUND

### I. Factual Background

Plaintiffs allege that on February 17, 2023, various governmental actors violated their civil rights. As described in the Complaint, the following events occurred:

- Ms. Clayborne was traveling in a car with her five children aged 4 months to 7 years old.

- After a prolonged traffic stop in Coffee County, THP Troopers issued a citation to Ms. Clayborne for simple possession of a small amount of marijuana. This was a citation-only offense for which Clayborne legally should have been free to leave.

1

- Nevertheless, the THP Troopers illegally detained Clayborne and her children, escorted her to the Coffee County jail, and illegally transferred custody of her and her children to the Social Workers at the jail. This followed a debate between two of the officers about whether "policy" required the troopers to bring the family to DCS. (It did not.)

- Under Tennessee law, the Social Workers had no authority to arrest or interrogate Clayborne or her children. Nor did they have any probable cause. To the contrary, a THP officer told them not to separate the children from Ms. Clayborne because she was a good mother and there was no indication of neglect or abuse.

- Despite having no arrest authority and no probable cause, the Social Workers illegally arrested, detained, and interrogated Clayborne and her children, including illegally attempting to force Clayborne to take a urine test in her vehicle.

- The Social Workers enlisted officers in the Coffee County Sheriff's Department to place spike strips around Clayborne's car and surround the car to immobilize her and her family. They did so to prevent Clayborne from participating in (or even knowing about) a secret hearing a few miles up the road, so that DCS could procure an *ex parte* order to separate Clayborne from her children.

- It is unclear what evidence, if any, DCS presented at this "hearing."

- The children were separated from their mother for 55 days, including 14 days separated from each other across two foster homes.

## II.    Plaintiffs' Claims

Based on these allegations, Plaintiffs have brought claims against certain groups of Defendants, including: (1) THP Troopers Ruben Basaldua, Douglas Foster, Donnie Clark, and James Thompson (the "THP Troopers"); (2) CCSD Deputy Alan Crabtree, Coffee County, and John Doe CCSD officers (the "County Defendants"); and (3) DCS social workers Pelham, Medina, and Wright-Gilliam (the "Social Workers"). The claims are as follows:

- **Counts I and II**:   Fourth Amendment and Tennessee False Arrest/Imprisonment Claims against the THP Trooper Defendants for civil rights violations.

- **Counts III and IV**:  Fourth Amendment and Tennessee False Arrest/Imprisonment Claims against the Social Workers and the County Defendants, for arresting and detaining the family at the jail (including DCS enlisting Crabtree and other officers to place spike strips and surround the car).

2

- **Count V**: A Fourth Amendment claim by Clayborne against the Social Workers for unlawfully searching her in the car.

- **Count VI**: Deprivation of substantive due process against all Defendants for taking actions illegally to separate Clayborne from her children without probable cause.

- **Count VII**: *Monell* Claim Against Coffee County.

- **Count VIII**: A Procedural Due Process claim against the Social Workers for purposely (and illegitimately) depriving Plaintiffs of the ability to have notice and an opportunity to be heard before separating them.

Plaintiffs allege that they suffered damages including severe emotional trauma, anxiety, depression, mental and emotional anguish, and monetary damages.

Accordingly, the claims against all the Defendants are based on overlapping facts. During the initial traffic stop at the gas station, the Troopers were communicating (through their dispatcher) with DCS. The THP Troopers (illegally) escorted the family to the jail to meet with the Social Workers. At the jail, at least one THP Trooper had a discussion with the Social Workers. The Social Workers then enlisted CCSD officers (including Crabtree) to assist them in detaining the family for purposes of illegally arresting, illegally interrogating, illegally detaining, and deliberatively depriving the family of due process to separate the children from their mother without any cause (or even any authority). No one knows what happened at the supposed "hearing" (or if one even took place), including what representations DCS made to the Court about what had happened. Also, the conditions of the children's separation (such as their foster placements, how they were treated, their physical and emotional well being) are relevant to Plaintiffs' damages against each Defendant.

### III. Procedural History and Plaintiffs' Subpoena

On May 20, 2024, the Social Workers filed a Motion to Dismiss (D.E. 33), asserting immunity to Plaintiffs' claims. On June 13, Plaintiffs served a subpoena to DCS (**Exhibit 1**) (the

"Subpoena"). In substance, the Subpoena requested: (1) records concerning the February 17 incident, Clayborne, Williams, or their children (such as interactions at the jail, details about the foster placements, and communications with other Defendants); (2) records of proceedings against Clayborne or Williams (including the *ex parte* hearing on February 17, communications with the juvenile court, and the children's removal to state custody; (3) relevant DCS policies (such as policies about DCS involvement when a child's caretaker is detained by law enforcement); and (4) personnel files and disciplinary records of – and complaints against – the Social Workers.[1]

On June 21, the Social Workers filed a Motion to Stay (D.E. 43), seeking to stay all discovery relevant to claims against them – even where that discovery is also relevant to claims against other defendants.[2] On June 27, DCS responded to the Subpoena. (*See* **Exhibit 2**.) Like the Social Workers, DCS objects to providing any records (even those relevant to claims against other defendants) until the Court decides whether the Social Workers are immune.

Discovery is proceeding against the THP Troopers and the County Defendants. However, the Social Workers (and DCS) have declined to provide discovery at this time.

## **SUBPOENA COMPLIANCE**

Under Rule 45(a)(1)(A)(iii), a party can command a third party to "produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control . . . ." A subpoena to a third party is subject to the same discovery limitations as those out in Rule 26.[3] Under that standard, a party may obtain discovery of records that are

---

[1] The Schedule attached to the Subpoena sets out these requests in full detail.
[2] Plaintiffs opposed (D.E. 44), and the Social Workers filed a Reply (D.E. 45). In the Reply, the Social Workers pointed out that Plaintiffs had not moved to compel responses to the DCS subpoena.
[3] *Pearce v. Emmi*, 2017 WL 528254, at *2 (E.D. Mich. Feb. 9, 2017).

relevant to any party's claim or defense and proportional to the needs of the case.[4] Under Rule 45(d)(2)(B)(i), a party that serves a subpoena can move to compel compliance. The party serving the subpoena must "take reasonable steps to avoid imposing undue burden or expenses on a person subject to a subpoena."[5] To determine whether burden is undue a court must balance the potential value of the information to the party seeking it against the cost, effort, and expense to be incurred by the person or party producing it.[6]

## ARGUMENT

Qualified immunity protects government officials from unnecessary and burdensome discovery or trial proceedings only.[7] It provides immunity to certain claims, not from litigation in general.[8] In *Flint Water*, the government officials were key factual witnesses regarding other claims."[9] Accordingly, the Sixth Circuit affirmed a trial court order that required governmental defendants to "respond to discovery requests as if they were already dismissed from the case."[10]

---

[4] Fed. R. Civ. 26(b)(1).
[5] Fed. R. Civ. P. 45(d)(1).
[6] *Pearce*, 2017 WL 528254, at *2.
[7] *In re Flint Water Cases*, 930 F.3d 820 (6th Cir. 2020); *see also Crawford-El v. Britton*, 523 U.S. 574, 593 n.14 (1998) ("Discovery involving public officials is indeed one of the evils that *Harlow* aimed to address, but neither that opinion nor subsequent decisions create an immunity from *all* discovery. *Harlow* sought to protect public officials from the costs of 'broad-reaching' discovery, and we have since recognized that limited discovery may sometimes be necessary."); *McLaurin v. Morton*, 48 F.3d 944, 949 (6th Cir. 1995) (stating that an official's assertion of immunity can reduce the scope of discovery, but it may not eliminate it); *Lion Boulos v. Wilson*, 834 F.2d 504, 507 (5th Cir. 1987) ("Qualified immunity does not shield government officials from all discovery but only discovery which is either avoidable or overly broad"); *Tubar v. Clift*, 2006 WL 521683, at *2 (W.D. Wash. Mar. 2, 2006) ("[Q]ualified immunity is available only to individual government officials, not governmental entities.")
[8] *Id.* at 5.
[9] *Flint Water*, 960 F.3d at 828.
[10] *Id.* at 827; *see also In re Flint Water Cases*, 2019 WL 8060597, at *2-3 (E.D. Mich. May 20, 2019) (stating that "[w]hile discovery proceeds, the state and MDEQ defendants must participate in it to the extent necessary. If the state and MDEQ defendants are eventually dismissed as a result of their pending appeals, they will still be required to respond to discovery as a non-party. So in the interim, this litigation will go forward and the state and MDEQ defendants are required to

This makes sense: if discovery as to a defendant claiming immunity is unavoidable, there is no just reason to prevent a plaintiff from obtaining it.[11]

Here, even if the Social Workers were not Defendants, Plaintiffs could obtain discovery from DCS because it has information relevant to the claims against the THP Trooper Defendants and the County Defendants. DCS does not dispute this. For example, DCS would have records about: what information was relayed by the THP Troopers to DCS and the Social Workers about the family during the traffic stop (and what DCS/the Social Workers said back); what took place at the jail (including the actions of the County Defendants, who participated in seizing the family, and when and at whose direction did that); communications with anyone at DCS or the Social Workers; representations made to the Juvenile Court about what information the Troopers conveyed to DCS/the Social Workers; and the circumstances of the children's foster placements (such as information about the children's safety, security, treatment, and physical and mental condition while in foster care). Finally, as to the personnel files, they are public records.[12] Because this discovery is unavoidable, it should proceed.

Plaintiffs' position is consistent with *Flint Water*. As the trial court explained there:

---

respond to discovery requests as if they were already dismissed from the case."); *In re Flint Water Cases*, 2020 WL 1815040, at *1 (E.D. Mich. Apr. 9, 2020) (reaffirming order).

[11] *See Mendia v. Garcia*, 2016 WL 3249485, at *5 (N.D. Cal. June 14, 2016) ("While discovery directed to Defendants as to the *Bivens* claims against them is inappropriate given their pending qualified immunity appeal, ... limited discovery as to these Defendants is appropriate because regardless of whether they are entitled to qualified immunity, they will still need [to] participate in discovery as percipient witnesses related to the FTCA claims against the United States."); *Harris v. City of Balch Springs*, 33 F. Supp. 3d 730, 733 (N.D. Tex. 2014) ("The court can think of no legal reason why discovery and pretrial matters may not proceed with respect to [the counts not being appealed on qualified-immunity grounds]. ... [E]ven if the Fifth Circuit were to grant [him] qualified immunity ... he would necessarily be required to testify on behalf of the City regarding [those counts]. ... Whether [he] is subjected to discovery on these counts now or after the resolution of qualified immunity is quite beside the point.").

[12] See DCS Policy, Administrative Policies and Procedures: 4.17 at page 2 of 4 available at https://files.dcs.tn.gov/policies/chap4/4.17.pdf; T.C.A. § 10-7-504.

While discovery proceeds, the state and MDEQ defendants must participate in it to the extent necessary. *See Crawford-El*, 523 U.S. at 597, 118 S.Ct. 1584. If the state and MDEQ defendants are eventually dismissed as a result of their pending appeals, they will still be required to respond to discovery as a non-party. So in the interim, this litigation will go forward and the state and MDEQ defendants are required to respond to discovery requests as if they were already dismissed from the case. After all, **the "driving force" behind immunity is the avoidance of *unwarranted* discovery**, *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), **not all discovery even if inevitable**. The Court's recently entered CMO recognizes this fact. It states that "[a]ny defendant to which this order does not apply shall be treated as a non-party for the purposes of discovery...." (Dkt. 827 at 1.) The state and MDEQ defendants must comply with this order.[13]

On appeal, the Sixth Circuit affirmed the trial court's approach.[14]

The principle here is the same – and Plaintiffs are seeking the same relief. DCS should provide records to the same extent it would if the Social Workers were not defendants.[15] These records will need to be produced regardless of whether the Social Workers are immune (or even parties). There is no point to waiting, which would prejudice and unnecessarily delay Plaintiffs' ability to pursue their claims against the THP Troopers and the County Defendants. Furthermore, requiring this discovery imposes no burden on the Social Workers themselves, and DCS itself has already gathered at least some of these records.[16]

---

[13] *Flint Water*, 2019 WL 8060597, at *3 (emphasis added).
[14] *Flint Water*, 930 F.3d at 827.
[15] As Plaintiffs explained in their opposition to the Motion to Stay, discovery of the Social Workers is also potentially relevant to their qualified immunity defense. (D.E. 44 at p. 7.)
[16] Rule 26(b)(1) (material discoverable if relevant and "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."); *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 569 F. Supp. 3d 626, 634 (E.D. Mich. 2021) (ordering production of relevant materials where defendant did not substantiate burden); *see also Mestas v. Town of Evansville*, 2017 WL 11768140, at *3 (D. Wyo. Oct. 27, 2017) (ordering production of relevant materials where there was "minimal burden" to the responding party).

## CONCLUSION

The Subpoena to DCS seeks discovery relevant to Plaintiffs' claims against the THP Trooper Defendants and the County Defendants. For the reasons previously stated, Plaintiffs respectfully request that the Court compel DCS to comply with the subpoena and make a full production within 21 days of the Court's Order.

DATED: July 19, 2024.

Respectfully submitted,

*/s/ Anthony A. Orlandi*
Tricia R. Herzfeld (#26014)
Anthony A. Orlandi (#33988)
**HERZFELD SUETHOLZ GASTEL LENISKI AND WALL, PLLC**
223 Rosa L. Parks Avenue, Suite 300
Nashville, TN 37203
Telephone: (615) 800-6225
tricia@hsglawgroup.com
tony@hsglawgroup.com

Abby R. Rubenfeld
**Rubenfeld Law Office, PC**
810 Dominican Drive, Ste. 215
Nashville, TN 37228
Telephone: (615) 386-9077
arubenfeld@rubenfeldlaw.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

    I hereby certify that a copy of the foregoing document was served via electronic mail on this 19th day of July 2024:

| | |
|---|---|
| Jeffrey R Thompson<br>Gina Sarli Vogel<br>**Lewis Thomason, P.C.**<br>900 South Gay St., Ste. 300<br>P.O. Box 2425<br>Knoxville, TN 37901<br>865-546-4646<br>Fax: 865-523-6529<br>jrthompson@lewisthomason.com<br>gvogel@lewisthomason.com<br><br>***Attorneys for Coffee County Tennessee and Officer Crabtree*** | Jordan Crews<br>Katherine P. Adams<br>**Office of the Tennessee Attorney General**<br>P.O. Box 20207<br>Nashville, Tennessee 37202<br>(615) 532-7913 phone<br>(615) 532-5683 fax<br>jordan.crews@ag.tn.gov<br>Katherine.adams@ag.tn.gov<br><br>***Attorneys for Erica Wright-Gilliam, Katlyn Taylor and Montana Medina*** |
| Meghan Murphy<br>Peako Jenkins<br>**Office of the Tennessee Attorney General**<br>P.O. Box 20207<br>Nashville, Tennessee 37202<br>Phone (615) 253-3890<br>meghan.murphy@ag.tn.gov<br>Peako.Jenkins@ag.tn.gov<br><br>***Attorneys for Ruben Basaldua, Donnie Clark, Douglas Foster, and James Thompson*** | |

                                                         */s/ Anthony A. Orlandi*
                                                         Anthony