UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
WINCHESTER DIVISION

| | |
|---|---|
| BIANCA CLAYBORNE, | ) |
| Plaintiff, | ) 4:24-CV-00012-DCLC-SKL |
| v. | ) |
| RUBEN BASALDUA *et al.*, | ) |
| Defendants. | ) |

**ORDER**

Plaintiff has sued in their individual capacity several Tennessee Highway Patrol troopers; Coffee County, Tennessee; several sheriff's deputies; and Katlyn Taylor, Montana Medina, and Erica Wright-Gilliam, employees of the Tennessee Department of Children Services ("DCS Defendants"), alleging they each violated her Fourth Amendment right to be free from unreasonable searches and seizures and her Fourteenth Amendment right to due process. The DCS Defendants have collectively moved to dismiss invoking absolute and qualified immunity [Doc. 33]. The motion is now ripe for resolution.

**I.     BACKGROUND**

On February 17, 2023, Plaintiff left Atlanta, Georgia with her five children headed to a funeral in Chicago, Illinois [Doc. 1, ¶ 1]. When she travelled through Coffee County, Tennessee, a trooper with the Tennessee Highway Patrol stopped her vehicle for a "slow poke" violation [Doc. 1, ¶ 32]. The trooper searched the vehicle and found a small amount of marijuana [Doc. 1, ¶ 45]. Other troopers joined the traffic stop and "decided to arrest" Plaintiff and her boyfriend for simple possession of marijuana [Doc. 1, ¶ 48] (emphasis omitted). They advised Plaintiff and her boyfriend that they were contacting the Department of Children Services to take custody of her

1

children [Doc. 1, ¶ 50]. The troopers then changed their approach and rather than arresting Plaintiff they decided to issue her a citation and arrest only her boyfriend [Doc. 1, ¶ 77]. But they required Plaintiff to accompany them to the Coffee County jail where she had to meet with the DCS [Doc. 1, ¶¶ 80, 92]. They caravanned together to the jail. Upon arrival at the jail, the DCS Defendants were waiting and there "detained and interrogated the whole family, illegally forced [Plaintiff] to try to provide a urine sample … and … had officers place spike strips around [Plaintiff's] car while DCS … obtained an *ex parte* order" to remove Plaintiff's children from her custody [Doc. 1, ¶¶ 3, 129-30]. In their attempt to obtain a urine sample Plaintiff alleges that the DCS Defendants required Plaintiff "to remove her pants and underwear" while in the front seat of her car [Doc. 1, ¶ 113]. When Plaintiff could not provide a urine sample, DCS claimed that her failure had "made matters worse" for her [Doc. 1, ¶ 116].

Plaintiff eventually exited her vehicle with her children and entered the jail to post bail for her now incarcerated boyfriend [Doc. 1, ¶¶ 132-35]. When she posted bail, she was instructed to have a seat on the bench in the waiting area [*Id.*, ¶ 135]. While she waited, DCS obtained an *ex parte* court order authorizing them to take custody of Plaintiff's children [Doc. 1, ¶¶ 137, 145]. Plaintiff alleges that DCS did not advise her of the hearing, so she had no opportunity to present any evidence as to why removal of her children was improper. [Doc. 1, ¶ 4]. It took Plaintiff almost two months to regain custody of her five children [Doc. 1, ¶¶ 166–67].

Plaintiff alleges the DCS Defendants violated her Fourth Amendment right to be free from an unreasonable seizure by detaining her and her children at the jail without probable cause (Count III) [Doc. 1, ¶¶ 226–47]. Plaintiff also asserts related state law claims for false arrest and false imprisonment (Count IV) [Doc. 1, ¶¶ 248-270]. Plaintiff also claims the DCS Defendants violated the Fourth Amendment by requiring her to submit to a urine screen and by requiring her to remove

2

"her pants and underwear to attempt to provide a [urine] sample." (Count V) [Doc. 1, ¶ 273]. Plaintiff asserts a substantive due process claim under the Fourteenth Amendment alleging the DCS Defendants violated her constitutional right to family integrity (Count VI). [Doc 1, ¶ 285]. Plaintiff also asserts a procedural due process claim against the DCS Defendants, alleging that they did not provide her notice of the hearing prior to her children being removed from her custody and that no exigent circumstances existed to justify proceeding with a hearing on an *ex parte* basis (Count VIII) [Doc. 1, ¶¶ 312–13]. The DCS Defendants have filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted [Doc. 33]. They claim as a group that all Plaintiff's claims are barred by either absolute or qualified immunity [*Id.*, pg. 1].

II. ANALYSIS

A. **Plaintiff's Fourth Amendment Claims against the DCS Defendants – Counts III and V.**

Plaintiff alleges the DCS Defendants unlawfully seized her and her children in violation of the Fourth Amendment [Doc. 1, ¶¶ 226–47] (Count III) and conducted an unlawful search when they demanded that she submit to a urine drug screen [Doc. 1, ¶¶ 271–280] (Count V). The DCS Defendants argue that while precedent clearly establishes that social workers are governed by the Fourth Amendment when entering the home, removing children from the home and in conducting in-school interviews, none of those precedents clearly prohibited what the DCS Defendants did in this case [Doc. 34, pgs. 9–12]. They argue that because all their actions occurred outside the home, there is no clearly established right they violated to trigger liability [*Id.*, pgs. 11–12].

"[A] social worker, like other state officers, is governed by the Fourth Amendment's warrant requirement." *Kovacic v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 724 F.3d 687, 695 (6th Cir. 2013)(quoting *Andrews v. Hickman Cnty.*, 700 F.3d 845, 859 (6th Cir.2012)). In

3

*Andrews,* the Sixth Circuit observed that "state officer[s] should operate with the default understanding that the Fourth Amendment applies to her actions, unless a specific exception to the requirements of the Fourth Amendment has been found to apply." *Andrews*, 700 F.3d at 859. "Fourth Amendment standards are the same, whether the state actor is a law enforcement officer or a social worker." *Id.* at 863 (citations omitted).

In this case, Plaintiff alleges the DCS Defendants unlawfully seized her and her children in the parking lot of the jail without probable cause. The DCS Defendants claim as a group that immunity bars Plaintiff's claims against them. Immunity comes in two forms – absolute and qualified. Social workers enjoy absolute immunity when they act in their "capacity as legal advocates" engaging in such acts as initiating court actions or testifying under oath in court. *Kovacic*, 724 F.3d at 694. They do not enjoy absolute immunity when they perform investigative functions. *Id.* In this case, the allegations against the DCS Defendants involve investigative actions. Detaining Plaintiff and her children in the parking lot and ordering Plaintiff to submit to a urine screen is investigative at its core. Accordingly, absolute immunity does not apply.

The next issue is qualified immunity. Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Crawford v. Tilley*, 15 F.4th 752, 760 (6th Cir. 2021) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "It also protects them from the cost and burdens of suit, including discovery." *Id.* The Complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). "At the pleading stage, [plaintiff's burden to defeat a qualified immunity claim] is carried by alleging facts plausibly making out a

4

claim that the defendant's conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015).

It has long been held that "[a]n investigative official ha[s] a duty … to refrain from engaging in acts which continued a person's detention without probable cause." *Gregory v. City of Louisville*, 444 F.3d 725, 749 (6th Cir. 2006). The troopers had only issued Plaintiff a citation. *See* Tenn. Code Ann. § 40-7-118(e)(1)(C) ("In issuing a citation, the officer shall . . . [r]elease the cited person from custody." However, the DCS Defendants prevented Plaintiff from leaving the parking lot and Plaintiff alleges they had no basis to do so [Doc. 1, ¶¶ 129–36]. On this issue, Plaintiff has carried her initial burden at this stage.

The same is true for the DCS Defendants ordering Plaintiff to submit a urine screen. "The Fourth Amendment protects against unreasonable searches and seizures." *Schulkers*, 955 F.3d at 533. And, "urine tests … [are] indisputably searches within the meaning of the Fourth Amendment." *Ferguson v. City of Charleston*, 532 U.S. 67, 76 (2001)(citing *Skinner v. Railway Labor Executives' Assn.*, 489 U.S. 602, 617 (1989)). Therefore, such searches must be reasonable. At this point, Plaintiff has alleged the DCS Defendants had no basis to require her to submit to a warrantless drug screen, especially in the manner in which it was administered. Because social workers are governed by the Fourth Amendment's warrant requirement, *see Kovacic*, 724 F.3d at 695, Plaintiff has alleged enough facts to survive a motion to dismiss.[1]

**B.     Fourteenth Amendment Substantive Due Process Claim - Count VI**

---

[1]     It very well may be that qualified immunity may bar Plaintiffs claims in this context. But at this point absent the development of the factual record, the Court is not in a position to dismiss the claims. *See Guertin v. State*, 912 F.3d 907, 917 (6th Cir. 2019).

5

The DCS Defendants also move the Court to dismiss Plaintiff's Fourteenth Amendment substantive due process claim for taking actions that separated Plaintiff from her children without probable cause [Doc. 34, pg. 12]. Plaintiff alleges the DCS Defendants violated due process by "illegally detain[ing]" [her] and her family at the jail[,]" "forc[ing] [her] to try to provide a urine sample[,]" telling her failing to provide a urine sample "made things worse for her [,]" and using spike strips to keep her vehicle at the jail [Doc. 1, ¶¶ 285(a)–(d)]. But the Supreme Court explained that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997). Thus, the Court must analyze Plaintiff's unlawful seizure claim and unreasonable search claim under the Fourth Amendment, not the more general Fourteenth Amendment substantive due process claim. The Court has already done so, permitting those claims to proceed as Fourth Amendment claims, not Fourteenth Amendment claims.

Plaintiff further alleges "[t]he DCS Defendants prevented [her] from having notice and opportunity to be heard at the hearing" when they filed for an *ex parte* order to obtain custody [Doc. 1, ¶ 285(e)]. But unlike their investigative actions, their actions as legal advocates entitle them to absolute immunity. And social workers are acting in their capacity as legal advocates when they "initiat[e] court actions or testify[] under oath" *Holloway v. Brush*, 220 F.3d 767, 775 (6th Cir. 2000). "This includes work as a legal advocate, such as filing legal papers with the courts…." *Hancock v. Miller*, 852 F. App'x 914, 923 (6th Cir. 2021)(citations omitted); *see also Salyer v. Patrick*, 874 F.2d 374, 378 (6th Cir.1989)("[F]amily service workers [are] absolutely immune from liability in filing [a] juvenile abuse petition, due to their quasi-prosecutorial function in the initiation of child abuse proceedings."). And this immunity applies even where the

6

allegations include "malice, corruption, or error." *Hancock*, 852 F.App'x at 923 (citing *Kovacic*, 724 F.3d at 694). Here, the DCS Defendants efforts to obtain an *ex parte* court order authorizing them to take custody of Plaintiff's is exactly the kind of conduct that provides them absolute immunity. *Id*.

Finally, a plaintiff may establish a substantive due process violation where the conduct shocks the conscience and was "constitutionally repugnant." *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 765 (6th Cir. 2020) (quoting *Guertin v. State*, 912 F.3d 907, 922 (6th Cir. 2019)). Here, seeking the removal of Plaintiff's children by way of an *ex parte* juvenile court order does not shock the conscience. *See Smith v. Williams-Ash*, 173 F. App'x 363, 367 (6th Cir. 2005)(social worker had qualified immunity despite their actions to deny the parents a prompt hearing because that conduct did not "go[] so far as to 'shock the conscience'").

C.  **Fourteenth Amendment procedural due process claim – Count VIII**

Plaintiff also claims a Fourteenth Amendment procedural due process claim, alleging that the DCS Defendants illegally had Plaintiff's children removed from her custody without exigent circumstances and without prior notice of the hearing and without providing her an opportunity to be heard. [Doc. 1, ¶¶ 303-23]. The DCS Defendants claim absolute immunity [Doc. 34, pg. 17]. In this case, the DCS Defendants did not remove Plaintiff's children without a court order. They did not act unilaterally in removing Plaintiff's children from her custody. Rather, they filed an *ex parte* petition with the juvenile court, seeking a court order authorizing their removal of her children. That petition was reviewed by a juvenile judge who granted their request. Thus, to the extent that Plaintiff's claim is based on the decision of the juvenile judge to sign the *ex parte* order of removal of Plaintiff's children, that is a decision of the juvenile court not the DCS Defendants. *See Brent v. Wenk*, 555 F. App'x 519, 529 (6th Cir. 2014)(affirming the district court's decision

7

finding that the family court bore the responsibility of the removal decision not the state defendants who sought that relief). Likewise, in *Pittman*, the Sixth Circuit found that the social worker did not violate the plaintiff's procedural due process rights where it was the juvenile court which made the decision to remove the children without notice and opportunity to be heard prior to issuing the order, and state law made the court responsible for ensuring all necessary parties received notice. *Pittman*, 640 F.3d at 729–30 (citing Ohio R.Juv.P. 15(A) and Ohio Rev.Code Ann. § 2151.29). Here, as in *Pittman*, state law requires a juvenile court to "ascertain whether all necessary persons are before the court," and if a necessary party is absent, "whether notice of the hearing was provided to that person and whether the hearing may proceed." Tenn.R.Juv.P. 112(a). Ensuring Plaintiff received proper notice was the court's responsibility, not the DCS Defendants.

In any event, the DCS Defendants enjoy absolute immunity in their initiation of court proceedings. *See Turner v. Lowen*, 823 F. App'x 311, 317 (6th Cir. 2020)("Social workers, like prosecutors and probation officers, enjoy absolute immunity when they engage in conduct 'intimately associated with the judicial process.'"). As the Sixth Circuit noted in *Turner*, "[a] plaintiff … cannot sue a social worker for her alleged failure to 'properly investigate' the facts supporting a petition for removal, even if those facts turn out to be false or incomplete." *Id.* (citing *Pittman*, 640 F.3d at 726).

D.     **Plaintiff's state law claims - Count IV**

Plaintiff has also asserted state law claims for false arrest and false imprisonment which rest on substantially the same allegations as the Fourth Amendment unlawful-seizure claim [Doc. 1, ¶¶ 248–70]. Similarly, the DCS Defendants claim that their claims here are barred by qualified immunity [Doc. 34, pg. 18]. Because the Court does not find the procedural posture of this case allows the Court to make that judgment at this stage in the case with respect to Plaintiff's Fourth

8

Amendment claims, the Court finds the same applies to Plaintiff's state claims. The motion to dismiss Plaintiff's state law claims is **DENIED** at this stage in the process.

III. **CONCLUSION**

For the reasons stated herein, the DCS Defendants' motion [Doc. 33] is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** as to Counts VI and VIII of the Complaint. Those counts are **DISMISSED** as to the DCS Defendants. The motion is **DENIED** as to Counts III, IV, and V. Further, the DCS Defendants' Motion to Stay Discovery [Doc. 43] is **DENIED AS MOOT**.

**SO ORDERED:**

s/ Clifton L. Corker
United States District Judge