# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# AT WINCHESTER

| | |
|---|---|
| BIANCA CLAYBORNE, et al., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: 4:24-cv-00012 |
| v. ) | |
| ) | Judge Clifton L. Corker |
| RUBEN BASALDUA, et al., ) | |
| ) | JURY DEMANDED |
| Defendants. ) | |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

The Motion for Leave to Amend is unopposed, except for the existing County Defendants' objection to adding County Sheriff's Department officials Frank Watkins, James Sherrill, Stephen Sharketti, and Alex Bell (the "New County Defendants"). The County Defendants' (partial) opposition is procedurally improper and substantively without merit. Plaintiffs respectfully reiterate their request for leave to file a First Amended Complaint. (*See* D.E. 72-1) ("FAC").)

I. **The County Defendants' Opposition is Procedurally Improper**

The existing County Defendants do not squarely address any Rule 15 factors other than futility of amendment as to the proposed New County Defendants. As explained in Plaintiffs' opening Motion, the County Defendants do not have standing to assert futility arguments on behalf of non-parties. (*See* D.E. 73, Pltf. Memo. at 11-12.) The County Defendants' Response does not address this point – let alone dispute it.

Regardless, as Plaintiffs explained in their opening Motion, the appropriate stage to address futility here is through post-amendment dispositive motion practice – not Rule 15 briefing. (*See* D.E. 73, Memo. at 12-13.) Without addressing this, the County Defendants challenge whether (as to the four New County Defendants) Plaintiffs adequately alleged tolling and whether those officers are entitled to qualified immunity. Courts routinely (and appropriately) take these issues up through dispositive motions – not Rule 15 briefing.[1] Plaintiffs urge the same result here.

---

[1] *See, e.g.*, *Raya v. Barka*, 2012 WL 5828009, at *2 (S.D. Cal. Aug. 26, 2021) (granting plaintiff leave to amend to add a claim based on a fraudulent concealment and holding that the sufficiency of those allegations should be tested after allowing the amendment); *McElvy v. Sw. Corr., LLC*, 2020 WL 13882825, at *1 (N.D. Tex. Jan. 9, 2020) (same); *Kandik v. Wyeth*, 2011 WL 5191515 (D. Ariz. Nov. 1, 2011) (same); *Hoffman v. Kik,* 2019 WL 4075366, at *1 (E.D. Mich. Aug. 29, 2019) (holding that the "procedurally correct course of action for defendant to take is to file a motion to dismiss or for summary judgment raising the qualified immunity defense and tailoring her argument to the facts alleged in plaintiff's second amended complaint."); *Been v. New Mexico Dep't of Info. Tech.*, 2010 WL 11597479, at *3 (D.N.M. June 24, 2010) (finding that it was "premature to consider qualified immunity prior to joinder of" a newly named defendant, because

## II. The Futility Arguments Are Procedurally and Substantively Deficient

Even if the Court is inclined to address the futility arguments, they lack merit.

### A. The FAC Plausibly Alleges Facts Supporting Tolling

Plaintiffs' claims are subject to Tennessee's one-year statute of limitations.[2] However, the limitations date can be tolled based on (a) fraudulent concealment or (b) equitable tolling.[3]

Fraudulent concealment applies if a "defendant engages in conduct intended to conceal the identity of the person or persons who caused the plaintiff's injury from the plaintiff."[4] To invoke this doctrine, a plaintiff must show four elements: (1) the defendant affirmatively concealed the plaintiff's injury or the identity of the wrongdoer or failed to disclose material facts regarding the injury or the wrongdoer despite a duty to do so; (2) the plaintiff could not have discovered the injury or the identity of the wrongdoer despite reasonable care and diligence; (3) the defendant knew that the plaintiff had been injured and the identity of the wrongdoer; and (4) the defendant concealed material information from the plaintiff by withholding information or making use of some device to mislead the plaintiff in order to exclude suspicion or prevent inquiry.[5]

---

"qualified immunity is an affirmative defense that must be raised by the party alleging it") (quoting *Gagan v. Norton*, 35 F.3d 1473, 1477 (10th Cir. 1994)).

[2] *Hochstetler v. City of Hendersonville,* 2023 WL 5517207, at *2 (M.D. Tenn. Aug. 25, 2023).

[3] *See Reguli v. Russ*, 2023 WL 6690948, at *7-9 (M.D. Tenn. Aug. 22, 2023) (citing *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 462-463 (6th Cir. 2012)), *R&R adopted,* 2023 WL 6129503 (M.D. Tenn. Sept. 19, 2023), *aff'd,* 109 F.4th 874 (6th Cir. 2024) (fraudulent concealment); *Bohler v. City of Fairview*, 2018 WL 5786234, at *8 (M.D. Tenn. Nov. 5, 2018) (citing *Redwing*, 363 S.W.3d at 462-63) (same); *Doe v. Lee,* 2024 WL 4363151, at *13-14 (M.D. Tenn. Sept. 30, 2024) (equitable tolling); *Hochstetler*, 2023 WL 5517207, at *4 (same).

[4] *Reguli*, 2023 WL 6690948, at *7–9 (citing *Redwing*, 363 S.W.3d at 436).

[5] *Reguli*, 2023 WL 6690948, at *8. The County Defendants assert that Plaintiffs are not entitled to relation back based on a Rule 15(c) "mistake" in naming the original John Does. But Plaintiffs are not asserting timeliness based on a relation back "mistake" under Rule 15(c), so that issue is immaterial to the Motion.

Equitable tolling is available when a plaintiff demonstrates "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.[6] It typically arises where the litigant's failure to meet a legally mandated deadline unavoidably arose from circumstances beyond the litigant's control.[7]

Here, Plaintiffs' proposed FAC alleges that both tolling doctrines apply. (*See* FAC ¶¶ 610, 626-629; *see also* FAC ¶¶ 340-368, 436-465.) In evaluating the sufficiency of Plaintiffs' tolling allegations, the Court takes the FAC allegations as true and draws all reasonable inferences in Plaintiffs' favor.[8] Plaintiffs' FAC meets this low pleading burden.

The County had records that identified or could have been used to identify Watkins, Sherrill, Sharketti, and Bell (*see* FAC ¶¶ 436-465, 626-629.) This included surveillance footage (FAC ¶¶ 441-453),[9] an audio recording of calls with the Coffee County District Attorney and General Sessions Judge Greg Perry (FAC ¶¶ 341-368),[10] and call logs for the officers involved (FAC ¶¶ 454-456).[11] The County had a duty to preserve these records for multiple reasons,

---

[6] *Budget Charters, Inc. v. Pitts*, 2017 WL 5444743, at *7 (M.D. Tenn. Nov. 14, 2017).
[7] *Id.* (citing *Vroman v. Brigano*, 346 F.3d 598, 604 (6th Cir. 2003)).
[8] *See, e.g.*, *Am. News & Info. Servs., Inc. v. Gore*, 2014 WL 4681936, at *6 (S.D. Cal. Sept. 18, 2014) (finding that, "[a]ccepting the truth of the allegations of the SAC and drawing all reasonable inferences in favor of Playford, the statute of limitations may be tolled by" a California statute); *Moses v. Westchester Cnty. Dep't of Corr.*, 951 F. Supp. 2d 448, 450 (S.D.N.Y. 2013) (articulating the Rule 12 standard and affirming Magistrate Judge decision that extraordinary circumstances alleged justified equitable tolling); *Green v. Schriro*, 2019 WL 1765220, at *6 (E.D.N.Y. Apr. 22, 2019) (plaintiff's allegations supported delayed accrual or equitable tolling).
[9] The County had surveillance video of the jail lobby and surveillance footage from cameras in the parking lot that would have identified all County officers named in the proposed FAC. (FAC ¶¶ 441, 453.) The County normally maintains those videos for at least 45 days. (FAC ¶ 442.)
[10] On the date of the incident, Watkins and Sherrill had calls about Clayborne and her family with (1) District Attorney Craig Northcutt, and (2) Judge Perry (who called Sherrill on his cell phone). (FAC ¶¶ 341-368.) The County recorded these calls, in which the names of Watkins and Sherrill names are mentioned. (*See* FAC ¶¶ 436-440.)
[11] The County also provides cell phones to its officers. (FAC ¶ 454.) Logs of their calls reflect the officers involved in the incident. (¶ 455.)

including (*inter alia*) that it anticipated civil rights litigation **that day** for intervening to separate the children from their mother. (FAC ¶¶ 11, 352, 443-448.)[12] On January 23, 2024, within the limitations period, Clayborne's attorney sent a public records request to the County seeking information that could identify the officers involved in the incident. (FAC ¶¶ 440, 458.) Watkins (who had recorded the call, was directly involved in the incident, was otherwise aware of all the County officers involved, and had directed everyone to separate the family) handled the County's response to that request. (FAC ¶ 458.) The video would have been responsive, but the County had already deleted it despite its preservation duty. (¶ 463.) Also, the call logs and audio recording were responsive, but the County did not produce them and (through Watkins) misrepresented to Plaintiffs that no responsive documents existed (FAC ¶¶ 458-463.)[13]

Those allegations support tolling based on fraudulent concealment or equitable tolling – as specifically alleged (element by element) in the FAC (FAC ¶¶ 626-629). Had the County complied with its legal obligations, Clayborne would have identified Watkins, Sherrill, Sharketti, and Bell and named them within the one-year limitations period. This meets Plaintiff's Rule 8 pleading burden.[14] The County Defendants do not squarely dispute that the FAC alleges the necessary elements. Instead, notwithstanding the Rule 12 standard, they ignore many relevant allegations, urge the Court to make assumptions that contradict the FAC (including considering selective deposition excerpts outside the FAC), and ask the Court to draw inferences in the New County

---

[12] Sherrill told Judge Perry (in Watkins' presence) that the County would face a "damn lawsuit for sure" if it separated the children from Clayborne. (FAC ¶¶ 352, 443.) The County also knew that the footage was relevant to ongoing court proceedings. (FAC ¶¶ 443-447.)

[13] Watkins admitted at deposition that the audio was responsive and should have been produced. (*See* D.E. 76-3, Watkins Dep. at 89:9-13; *see also* **Ex. 1** to Orlandi Decl.)

[14] *Compare Miller v. Shults*, 2012 2168952, at *8 (E.D. Tenn. May 27, 2021) (finding no fraudulent concealment where "plaintiff never sent any information requests to defendants" and "[t]his is not a case where defendants were asked for the information and failed to turn it over, concealed it, or delayed in producing it; defendants were simply never asked.").

Defendants' favor.[15] They cannot prevail without following the Rule 12 standard. Also, the County Defendants' citation the Sixth Circuit decision in *General Electric Co.* does not support their position. That cited section did not concern tolling; instead, it concerned whether the district court should have granted the defendant leave under Rule 15(a) to amend its answer to assert an absolute privilege – and the Sixth Circuit found that it was error ***not*** to allow the amendment.[16]

### B. Plaintiffs Did Not Delay in Naming These Defendants

The County Defendants also accuse Plaintiffs' counsel of a Rule 11(b)(3) violation for not doing a reasonable pre-filing investigation and (because of a lack of diligence) otherwise failing to name the New County Defendants earlier in the case. These assertions are inaccurate.

First, Plaintiffs' counsel did attempt to get information about the identities of the other officers before filing the Complaint. Plaintiffs served a public records request to the County on January 23, 2024 – seeking records reflecting the officers involved. As explained above, the County had a legal duty to produce that information (including the still-existing audio recording and call logs),[17] but told Plaintiffs nothing existed. That was untrue. The County violated its legal duty under the public records statute and concealed critical information.

Second, Plaintiffs diligently pursued their rights during this case.[18]

- Discovery did not open until the parties' initial Rule 26(f) conference on April 10, 2024. (*See* D.E. 42.) Plaintiffs served Rule 34 requests to the County Defendants on April 22. The County Defendants responded on June 3 and supplemented on September 3, but did not produce or disclose the call logs or audio.

---

[15] To take just one example, the County asserts that it had no duty to preserve the videos until receiving the January 23, 2024 request. But this both contradicts and ignores Plaintiffs' allegations about its duty to preserve starting the date of the incident. (*See* ¶¶ 443-453 and 626-628.)

[16] *See General Electric Co. v. Sargent & Lundy*, 916 F.3d 1119, 1130 (6th Cir. 1990).

[17] *See, e.g., Conley v. Knox County Sheriff*, 2022 WL 289275, at *8 (Tenn. Ct. App. Feb. 1, 2022) (holding that the Tennessee Public Records Act "requires the custodian of a public record to 'promptly make available for inspection *any* public record not specifically exempt from disclosure") (quoting T.C.A. § 10-7-503(a)(2)(B).) (emphasis in original).

[18] Where applicable, these assertions are supported by the accompanying Orlandi Declaration.

- On September 11, Plaintiffs deposed County Defendant Crabtree. He testified that Sherrill was on a call with a judge when he saw Sherrill arrive at the jail. (D.E. 76-3 at 21:7-20.)[19]

- On September 16, Plaintiffs asked to set depositions of 8 County witnesses (including Sherrill, Bell, Sharketti, and Watkins) for mid-October, and to produce call logs of communications about the incident. (*See* Ex. 2 to Orlandi Decl., Email String.) In substance, the County initially responded that the depositions should not be set until the County deposed Clayborne, that it was too "soon" to take County depositions in November, and that, due to scheduling conflicts, the depositions could not be set until Nov. 13-15 at the earliest under any circumstances.[20]

- After further conferral, Plaintiffs agreed to set the depositions of Sherrill, Bell, Sharketti, and Watkins for November 14 and 15 (within the earliest time frame offered).

- On October 15, the County produced call logs and a raw audio recording.[21]

- On November 14 and 15, Plaintiffs deposed Sherrill, Sharketti, Bell, and Watkins. They testified about their involvement in the incident. The testimony indicated that they apparently had separated the family before the *ex parte* removal order issued – relying instead on supposed "verbal authorization" from Judge Perry. (*See, e.g.*, D.E. 76-4, Watkins Dep. at 58:3-68:14; D.E. 76-3, Crabtree Dep. at 44:25-45:22 & 48:7-49:11.)

- On November 15, Plaintiffs set depositions of five DCS witnesses: Sheila Younglove (Dec. 11); DCS Defendants Katlyn Taylor (Dec. 30), Wright-Gilliam (Jan. 9), and Montana Medina (Jan. 9); and Dale Lynn (Jan. 15). Plaintiffs anticipated that these witnesses had information relevant to the involvement of County officials and DCS officials.

- On December 2, with Defendants' consent, Plaintiffs moved the Court to reset Plaintiffs' deadline to amend or add parties. (D.E. 58 (Motion) and 59 (Order).)

- On December 3, Plaintiffs asked the County Defendants if they would oppose naming Sherrill, Sharketti, Bell, and Watkins (the previous "John Does"). They said that they could

---

[19] It is unclear if Crabtree's recollection was accurate. Sherrill later testified that he was not on a call with a judge when he first arrived at the jail. Instead, Sherrill only recalled speaking to the judge on the phone inside the jail that day (as reflected on the audio recording).

[20] *See* **Ex. 2** to Orlandi Decl., Email String, 9/16/24 Email from County Defendants ("While I understand your desire to keep discovery going, I would submit that things should now proceed in order of the pleadings/general course of litigation, including the deposition of your clients.") and 9/23/24 Email from County Defendants (responding to Plaintiffs' request for November dates: "The proposed timeline for the County depositions seems a little soon. I should be sending over written discovery for your client this week. . . . I would imagine Plaintiff's responses and deposition should be completed prior to any additional County personnel.")

[21] About half of the call was difficult to hear because of hold music in the background. Plaintiffs had the recording cleaned up to remove the background noise.

not take a position without seeing the amended pleading.

- On December 8, Plaintiffs received the transcripts of the four County depositions.

- On December 11, Plaintiffs deposed Younglove. She confirmed that the children were removed without a petition or hearing – and before the *ex parte* removal order issued. (*See* **Ex. 3** to Orlandi Decl., Younglove Dep. at 66:20-67:8 and 81:9-22.)

- On December 18 and 23, DCS counsel told Plaintiffs' counsel that, due to an unspecified "representation issue", they would be withdrawing from representing the DCS Defendants (whose depositions could not go forward) and also substituting out as counsel for DCS, and could not say if the Attorney General's Office would represent DCS witnesses. (*See* D.E. 65-1.)

- On January 2, 2025, Plaintiffs received the transcript of the Younglove deposition.

- On January 3, Plaintiffs sent the proposed FAC to all counsel, asking for a response by January 8 with their positions on leave to amend and if they objected to unsealing it.

- On January 8, new counsel appeared for DCS. Plaintiffs held a call the next day with new DCS counsel. Plaintiffs sent them a copy of the FAC and asked that DCS respond by January 13 if it maintained confidentiality objections to any allegations.

- On January 13, after DCS did not respond to assert any objections, Plaintiffs filed their Motion for Leave to Amend.

As this sequence reflects, Plaintiffs acted with reasonable diligence at all times. This included overcoming the County's initial resistance to letting any County witnesses (other than Crabtree) testify in October or November 2024, and the County's late production of the (previously undisclosed) audio recording and call logs. Also, consistent with Plaintiffs' Rule 11(b)(3) duty, Plaintiffs' counsel undertook a thorough factual investigation before amending the complaint to add new parties. This included written discovery, depositions, third-party subpoenas, and follow-up discovery requests to get to the bottom of who was involved, what role each person played (including the specific roles played by Watkins, Sharketti, Bell, and Sherrill), and what the actual sequence of events was. In a compressed time frame, Plaintiffs sought to prepare a comprehensive, accurate, and legally supported amended pleading.

Case 4:24-cv-00012-DCLC-MJD    Document 82    Filed 01/30/25    Page 8 of 12
PageID #: 820

Ultimately, Plaintiffs circulated the proposed pleading just over three weeks after receiving the County deposition transcripts and taking Younglove's testimony, just one day after receiving the Younglove transcript (which confirmed certain key details relevant to claims against all current and prospective defendants), and four weeks before the January 29 deadline to amend or add parties. Plaintiffs also filed promptly upon confirming everyone's position on the motion and non-objections to unsealing the FAC. This was reasonable and satisfies the Rule 15 standard.[22]

The County Defendants cite *EEOC v. Exel Inc.*, 259 F.R.D. 652 (N.D. Ga. 2008). But that case involved a plaintiff who moved for leave to add new parties over five months after the court-ordered amendment deadline – which did not satisfy the Rule 16 good cause standard. That case has no application here: Plaintiffs' Motion concerns a pre-deadline motion for leave to amend under Rule 15's liberal standard. The County Defendants also suggest that naming the New County Defendants is prejudicial because it took place "after significant discovery and right before the expert deadline." (D.E. 76 at 14-15.) But this generic and unsubstantiated assertion of prejudice falls short of the Sixth Circuit standard, which requires "at least some significant showing of prejudice to the opponent[.]"[23] The County Defendants identify no examples of anything that has happened that would prejudice the New County Defendants and nothing that those defendants (if

---

[22] *See LeGrand v. Abbott Labs.*, 2024 WL 4969127, at *4 (N.D. Cal. Dec. 3, 2024) (seeking defendant's position 33 days after receipt of the transcript and filing promptly upon learning that the defendant would oppose demonstrated reasonable diligence); *see also Ark. Labeling, Inc. v. Proctor*, 2021 WL 4037575, at *3 (E.D. Ark. Sept. 3, 2021) (finding that requesting amendment within 28 days of receipt of transcript satisfied Rule 16 "good cause" requirement).

[23] *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986); *see also Charbonneau v. Mary Jane M. Elliot PC*, 2008 WL 324160, at *1 (E.D. Mich. Feb. 5, 2008) ("Defendants' arguments of prejudice are general in nature. There is no significant showing of prejudice. Under such circumstances, leave to amend should be granted."); *Cartwright v. Christian Cnty., Ky.*, 2018 WL 3077798, at *5 (W.D. Ky. June 21, 2018) ("Notably though, Defendants do not allege with specificity any sort of prejudice they would suffer if this Motion is granted, and the Court will allow Plaintiff to amend her Complaint.")

named) would have done differently. Also, Plaintiffs did not move for leave "right before the expert deadline." All parties had previously stipulated to extend the defense expert disclosure deadline to March 14 (*see* D.E. 58 n.1), and on January 27 – the same day that they filed their opposition brief – the County Defendants joined a motion to reset that deadline to April 7 (84 days from the date Plaintiffs moved for leave and 94 days from when Plaintiffs sent the County Defendants the proposed FAC). (D.E. 78.)

### III. The New County Defendants Are Not Entitled to Qualified Immunity

The County Defendants assert that the New County Defendants are entitled to qualified immunity. First, they contend that it was reasonable to rely on a "verbal order" to remove the children. This potential defense has no application to claims based on the New County Defendant's seizure and detention of the family before receiving supposed "verbal authorization" to remove the children. At any rate, the citations do not support their position concerning a verbal order. In particular, in *O'Donnell v. Brown*, a federal district court denied immunity on the basis that it was clearly established (as of 2004) that removal orders must be in writing and that verbal orders of removal provide no immunity against Fourth Amendment claims.[24] That case shows that the New County Defendants are not entitled to qualified immunity. Indeed, in Tennessee, any order committing a child to DCS must be in writing,[25] and the Tennessee Court of Appeals expressly

---

[24] *O'Donnell v. Brown,* 335 F. Supp. 2d 787, 806-07 (W.D. Mich. 2004) ("Defendants appear to argue that oral orders suffice to permit the removal of children from a family's home but have provided no authority for this position, and the Court rejects it. ***For Fourth Amendment purposes, a verbal order to seize a child from his home is defective for the same reason as is a verbal order to enter (i.e., search) a home; both must be written to be valid orders under the Fourth Amendment.*** Thus, the removal of the minor children was not duly authorized by a valid court order.") (emphasis added).

[25] *See* T.C.A. § 37-1-171(a) ("When a court desires to commit a child to the department of children's services under this part, ***it shall do so by written order*** that finds that the child has been adjudicated dependent and neglected[.]") (emphasis added).

held in *State v. Hall* (in 2004) that a verbal order of removal by a Tennessee judge is "ineffective any purpose."[26]

For all of these reasons, Plaintiffs respectfully urge the Court to grant Plaintiffs leave to file a First Amended Complaint and to address any futility arguments (as to the New County Defendants) through post-amendment dispositive motions.

DATED: January 30, 2025          Respectfully submitted,

/s/ Anthony A. Orlandi
Tricia R. Herzfeld (#26014)
Anthony A. Orlandi (#33988)
**HERZFELD SUETHOLZ GASTEL LENISKI AND WALL, PLLC**
223 Rosa L. Parks Avenue, Suite 300
Nashville, TN 37203
Telephone: (615) 800-6225
tricia@hsglawgroup.com
tony@hsglawgroup.com

Abby R. Rubenfeld
**Rubenfeld Law Office, PC**
810 Dominican Drive, Ste. 215
Nashville, TN 37228
Telephone: (615) 386-9077
arubenfeld@rubenfeldlaw.com

*Attorneys for Plaintiffs*

---

[26] *State v. Hall*, 2003 WL 22964300, at *4-5 (Tenn. Ct. App. Dec. 16, 2023). The County Defendants also cite *Monroe v. McNairy County* for the proposition that it is reasonable to rely on verbal orders. However, that case does not reference verbal orders (let alone endorse their validity).

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served <u>via U.S. Mail</u> on the 30th day of January 2025 to:

Erica Wright-Gilliam
196 Saddle Lane
Tullahoma, TN 37388

Montana Medina
365 Matthew Branch Road
Winchester, TN 37398
***DCS Defendants***

I hereby certify that a copy of the foregoing document was served via electronic mail on this 30th day of January 2025 and by the Court's CM/ECF system which electronically served a copy to all counsel of record:

| | |
|---|---|
| Jeffrey R Thompson<br>Gina Sarli Vogel<br>Grant A. Carringer<br>**Lewis Thomason, P.C.**<br>900 South Gay St., Ste. 300<br>P.O. Box 2425<br>Knoxville, TN 37901<br>865-546-4646<br>Fax: 865-523-6529<br>jrthompson@lewisthomason.com<br>gvogel@lewisthomason.com<br>GCarringer@LewisThomason.com<br>***Attorneys for Coffee County Tennessee and Officer Crabtree*** | Daniel J. Ripper<br>Chloe Kennedy<br>Isabella Bombassi<br>**Luther Anderson PLLP**<br>P.O. Box 151<br>Chattanooga, Tennessee 37402<br>(423) 756-5034<br>(423) 265-9903(fax)<br>dan@lutheranderson.com<br>cek@lutheranderson.com<br>bib@lutheranderson.com<br>***Attorney for Katlyn Pelham*** |
| Meghan Murphy<br>Peako Jenkins<br>**Office of the Tennessee Attorney General**<br>P.O. Box 20207<br>Nashville, Tennessee 37202<br>Phone (615) 253-3890<br>meghan.murphy@ag.tn.gov<br>Peako.Jenkins@ag.tn.gov<br><br>W. Adam Izell<br>**Law Office of W. Adam Izell, PLLC**<br>P.O. Box 4386<br>Chattanooga, TN 37405<br>Telephone: (423) 888-3022<br>adam@chattlawyer.com<br>***Attorneys for Ruben Basaldua, Donnie Clark, Douglas Foster, and James Thompson*** | Kristin Ellis Berexa<br>**Farrar\|Bates\|Berexa**<br>12 Cadillac Drive, Ste. 480<br>Brentwood, TN 37207<br>Telephone: (615) 254-3060<br>Fax: (615) 254-9835<br>***Specially Appearing Attorneys for Montana Medina*** |

     */s/ Anthony A. Orlandi*
     Anthony A. Orlandi