UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| BIANCA CLAYBORNE, individually and | ) | |
|---|---|---|
| as parent and next friend of minors J.C., | ) | |
| D.W., L.W., A.C., and P.C., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 4:24-cv-12-DCLC-MJD |
| | ) | |
| RUBEN BASALDUA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

Before the Court is Plaintiffs' motion for leave to file an amended complaint [Doc. 72 (motion); Doc. 73 (memorandum in support)]. Defendants Officer Crabtree and Coffee County, Tennessee (collectively, the "County Defendants") are the only named Defendants who filed a response to the motion [Doc. 76], and the time for so doing has now passed.[1] *See* E.D. Tenn. L.R. 7.1. Plaintiffs then filed a reply [Doc. 82], and the County Defendants filed a sur-reply with the Court's permission [Doc. 88; Doc 90]. The motion is now ripe for review.

**I.  BACKGROUND**

The background of this case is set forth in two prior orders [Doc. 48 (addressing certain Defendants' motion to dismiss); Doc. 71 (addressing non-party Dale Lynn's motion to quash)] and the Court will not repeat it here except to the extent necessary to explain the Court's ruling on Plaintiffs' motion.

---

[1] Plaintiffs state in their motion that the other named Defendants have either: (i) represented to Plaintiffs that they do not oppose the motion; or (ii) otherwise failed to respond to Plaintiffs' request to state their position on the motion by January 8, 2025 [Doc. 72 at Page ID # 528–29]. The Court finds these Defendants' failure to respond constitutes a waiver of any opposition to the relief sought in the motion. *See* E.D. Tenn. L.R. 7.2.

This lawsuit stems from a series of events that began on February 17, 2023, when four Tennessee Highway Patrol troopers—Ruben Basaldua, Donnie Clark, Douglas Foster, and James Thompson (collectively, the "THP Defendants")—conducted a stop and search of a vehicle occupied by Plaintiff Bianca Clayborne ("Ms. Clayborne"), her boyfriend, and her four minor children (the "Children," and together with Ms. Clayborne, "Plaintiffs"). After discovering contraband in the vehicle, the THP Defendants instructed Plaintiffs to follow them to the Coffee County jail, where three employees of the Department of Children's Services ("DCS")—Katlyn Pelham, Montana Medina, and Erica Wright-Gilliam (collectively, the "DCS Defendants")—contacted Plaintiffs and began their investigation. The DCS Defendants then pursued an *ex parte* order to remove the Children from Ms. Clayborne's custody. Shortly thereafter, several Coffee County Sheriff's Officers arrived at the jail to assist with removing the Children, who remained separated from Ms. Clayborne for 55 days.

Plaintiffs assert they took numerous steps to obtain information prior to filing suit. For example, Plaintiffs reviewed DCS' petition of February 21, 2023, from which they were able to identify two of the three DCS Defendants (Taylor and Medina) and Officer Crabtree as having been involved in the removal. [*See* Doc. 73 at Page ID # 630]. Plaintiffs' counsel also requested and received from the Tennessee Highway Patrol copies of dashcam and bodycam videos, which Plaintiffs used to identify the THP Defendants and the third DCS Defendant (Wright-Gilliam) [*Id.* at Page ID # 630 n.1]. Further, Plaintiffs allege that in March 2023, Plaintiffs' counsel issued subpoenas seeking surveillance footage of the jail lobby and parking lot on the date of the removal [Doc. 72-1 at ¶ 447]. Finally, on January 23, 2024, Plaintiffs' counsel sent a public records request to Coffee County seeking records reflecting the identity of the Coffee County Sheriff's Officers who assisted Officer Crabtree with removing the Children from Ms. Clayborne's custody [*Id.* at ¶

2

458]. Plaintiffs allege that Coffee County advised there were no records showing who was involved [*Id.*].[2]

Plaintiffs therefore filed this lawsuit on February 8, 2024, naming the DCS Defendants, the THP Defendants, Coffee County, Officer Crabtree, and "Coffee County Sheriff's Department John Does 1-10." There is no dispute Plaintiffs' filing was timely, as it fell within what the Parties agree is the applicable one-year statute of limitations [Doc. 76 at Page ID # 650 n.1 ("Under Tennessee law, the applicable statute of limitations for a federal civil rights case is one year."); Doc. 82 at Page ID # 815 ("Plaintiffs' claims are subject to Tennessee's one-year statute of limitations.")].

On May 10, 2024, the County Defendants served their initial disclosures, in which they identified several witnesses, including Coffee County Sherriff's Officers James Sherrill, Frank Watkins, Stephen Sharketti, and Alex Bell (the "Proposed New Defendants"), who they described as having "knowledge of [their] own interaction with Plaintiff and DCS Defendants . . . and court orders to assist in the removal of the minor children." [Doc. 76-2 at Page ID # 710]. During his deposition on September 11, 2024, Officer Crabtree testified in detail regarding the Proposed New Defendants' involvement in the events giving rise to this lawsuit. On November 14–15, 2024, Plaintiffs' counsel deposed the Proposed New Defendants as fact witnesses.

---

[2] The Parties clearly disagree on the reason no records were produced. On one hand, in the Proposed Amendment, Plaintiffs allege Coffee County failed to preserve surveillance footage of the jail lobby and parking lot—which it typically maintains for approximately 45 days or longer before recording over—despite being on notice the footage was relevant to ongoing proceedings and would likely be relevant in future proceedings [Doc. 72-1 at ¶¶ 442–49]. Plaintiffs further allege they sent the Juvenile Court and DCS "preservation letters" regarding, *inter alia*, evidence of "jail interactions" in February 2023. On the other hand, according to the County Defendants, "Coffee County officers communicated the need to preserve any potential evidence" once the lawsuit was filed and process served, but by then the footage was "in fact copied over in the ordinary course of video storage after months had passed and no request was made for the videos." [Doc. 76 at Page ID # 656]. There is no explanation of why (or precisely when) such footage was copied over after the alleged instruction to preserve potential evidence.

3

On December 2, 2024, Plaintiffs filed a motion to extend the deadline for moving to amend from December 31, 2024, to January 29, 2025. As grounds, Plaintiffs alleged they were diligently pursuing their claims in discovery and "ha[d] discovered (and continue[] to discover) new information about the underlying facts and about individuals (including some previously unknown) at the Department of Children's Services, Coffee County, and the Tennessee Highway Patrol who were involved." [Doc. 58 at Page ID # 458]. Plaintiffs also represented that "[a]ll Defendants have indicated they do not oppose the extensions requested in this Motion." [*Id.* at Page ID # 459]. The Court therefore granted Plaintiffs' motion and extended the deadline for any motion to amend the pleadings or add parties to January 29, 2025 [Doc. 59].

On January 13, 2025, Plaintiffs filed their motion to amend the complaint and attached a proposed first amended complaint (the "Proposed Amendment") in compliance with the Local Rules [Doc. 72-1]. The Proposed Amendment contains several revisions, but the only one at issue on this motion is Plaintiffs' attempt to add the Proposed New Defendants as named parties.[3]

## II. ANALYSIS

Federal Rule of Civil Procedure 15 directs that, where an amendment is not made as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* Factors relevant in determining whether leave should be denied include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." *See Forman v. Davis*, 371 U.S. 178, 182

---

[3] The Proposed Amendment also adds DCS employees Kathleen Velez and Dale Lynn as Defendants and contains additional and revised allegations against the existing defendants.

(1962); *see also Leary v. Daeschner*, 349 F.3d 888, 905 (6th Cir. 2003). "The standard for a motion to amend is governed by the general principle that 'cases should be tried on their merits rather than the technicalities of pleadings,' which is in turn moderated by the exception that judges should allow amendment only when doing so does not 'cause prejudice to the defendants' or undue delay." *Med. Ctr. at Elizabeth Place, LLC v. Atrium Health Sys.*, 922 F.3d 713, 732-33 (6th Cir. 2019) (quoting *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982)). Nevertheless, to "deny a motion to amend, a court must find 'at least some significant showing of prejudice to the opponent.'" *Ziegler v. Aukerman*, 512 F.3d 777, 786 (6th Cir. 2008).

The County Defendants' primary argument is that the Proposed Amendment is futile because the statute of limitations has run and the amendment to identify the "John Doe" Defendants by name is not saved by the relation-back doctrine of Federal Rule of Civil Procedure 15(c). *See Bradfield v. City of Memphis*, 24 Fed. App'x. 307, 308 (6th Cir. 2001) ("The amending of the complaint to substitute the names of the officers for John Doe defendants does not relate back to the filing of the original complaint."); *see also Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996) (where an original complaint names several "John Doe" defendants, "[s]ubstituting a named defendant for a 'John Doe' defendant is considered a change in parties, not a mere substitution of parties[]" and "Sixth Circuit precedent clearly holds that new parties may not be added after the statute of limitations has run, and that such amendments do not satisfy the 'mistaken identity' requirement of Rule 15(c)(3)(B).").

Plaintiffs concede this point in their reply [Doc. 82 at Page ID # 815 n.5 (stating "Plaintiffs are not asserting timeliness based on a relation back 'mistake' under Rule 15(c), so that issue is immaterial to the Motion")]. They nonetheless ask the Court to grant their motion because the

5

Proposed Amendment alleges facts sufficient to toll the statute of limitations based on theories of fraudulent concealment and equitable tolling.

"A petitioner is entitled to equitable tolling 'if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in the way and prevented timely filing.'" *Smith v. Eller*, No. 3:23-cv-448, 2025 WL 255451, at *7 (E.D. Tenn. Jan. 21, 2025) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)). However, the doctrine "is applied 'sparingly[,]'" and "'[a]bsent compelling equitable considerations, a court should not extend limitations by even a single day.'" *Id.* (quoting *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (6th Cir. 2000)).

Tennessee also recognizes the doctrine of fraudulent concealment applies not only "to circumstances in which the defendant purposefully engaged in conduct intended to conceal the plaintiff's injury from the plaintiff but also to circumstances in which the defendant engages in conduct intended to conceal the identity of the person or persons who caused the plaintiff's injury from the plaintiff." *Redwing v. Catholic Bishop Diocese of Memphis*, 363 S.W.3d 436, 462 (Tenn. 2012)). A claim of fraudulent concealment requires Plaintiffs prove that: (1) the defendant affirmatively concealed the plaintiff's injury or the identity of the wrongdoer or failed to disclose material facts regarding the injury or the wrongdoer despite a duty to do so; (2) the plaintiff could not have discovered the injury or the identity of the wrongdoer despite reasonable care and diligence; (3) the defendant knew that the plaintiff had been injured and the identity of the wrongdoer; and (4) the defendant concealed material information from the plaintiff by 'withholding information or making use of some device to mislead' the plaintiff in order to exclude suspicion or prevent inquiry." *Id.*, at 462–63.

As the County Defendants note in their brief, "the factor of futility is for the court to determine 'whether the amendment itself would be an exercise in futility.'" [Doc. 76 Page ID # 660 (quoting *Robinson v. Buffaloe & Assocs., PLC*, No. 3:13-0146, 2013 WL 4017045, at *2 (M.D. Tenn. Aug. 6, 2013))]. After reviewing the Proposed Amendment, the Court cannot at this point conclude that the amendment itself would be an exercise in futility, if for no other reason than the fact that the Proposed Amendment places front and center allegations central to the issue of whether the statute of limitations was tolled. Specifically, the Proposed Amendment alleges that various recordings concerning the incident giving rise to the lawsuit were "concealed, lost, deleted, or otherwise shielded from public view," arguably supporting Plaintiffs' claims of fraudulent concealment or equitable tolling [Doc. 72-1, at ¶¶ 436–465, 626–629]. The County Defendants' disagreement with Plaintiffs' characterization is a dispute best resolved through dispositive motion practice, and not analysis of a single factor under Rule 15.[4]

The County Defendants also ask the Court to deny Plaintiffs' motion on the grounds that Plaintiffs unduly delayed moving to amend because Plaintiffs' counsel knew of the Proposed New Defendants' involvement as early as May 10, 2024 (when the County Defendants served their initial disclosures) and certainly by November 15, 2024 (by which point Plaintiffs had deposed Officer Crabtree and the Proposed New Defendants).[5] While Plaintiffs arguably could have filed

---

[4] Similarly, the County Defendants' argument that the Proposed New Defendants are entitled to qualified immunity is better suited for a Rule 12 or Rule 56 motion. *See, e.g.*, *Hoffman v. Kik*, No. 18-CV-11908m, 2019 WL 4075366, at *1 (E.D. Mich. Aug. 29, 2019) (affirming magistrate judge's recommendation to grant motion for leave to amend despite defendant's assertion of qualified immunity; finding that the "procedurally correct course of action for defendant to take is to file a motion to dismiss or for summary judgment raising the qualified immunity defense and tailoring her argument to the facts alleged in plaintiff's second amended complaint.")

[5] The County Defendants cite *E.E.O.C. v. Exel Inc.*, 259 F.R.D. 652 (N.D. Ga. 2008), to support their argument that the Proposed Amendment is untimely because Plaintiffs filed it nearly two

their motion sooner, the Court finds the impact of their delay mitigated by the explanations provided in their motion to extend the amendment deadline—namely, that Plaintiffs were diligently pursuing discovery to identify potential claims and parties—which the County Defendants did not oppose.

The County Defendants also argue that allowing the Proposed Amendment would be unduly prejudicial. The County Defendants do not explain how *they* would be prejudiced by the Proposed Amendment. Rather, it appears their position is that the *Potential New Defendants* would be prejudiced because they "all participated in their depositions with the understanding that they were merely fact witnesses, not named parties, which is extremely prejudicial to the officers." [Doc. 76 at Page ID # 659]. The County Defendants do not cite any authority establishing that the fact a person has been previously deposed as a fact witness is, standing alone, a sufficient basis to preclude later impleading that person as a party in an amended complaint. Nor do the County Defendants argue the Potential New Defendants would be prejudiced by any unfair surprise, as they have been involved in and had notice of the litigation since its inception. In any event, such arguments are best left to the Potential New Defendants to make in the appropriate context.

On that note, the County Defendants fail to address Plaintiffs' argument that the County Defendants are not the proper parties to raise these issues. *See Chandler v. Huddleston*, No. 5:14-

---

months after the Proposed New Defendants were deposed. The disposition of the motion to amend in *Exel*, however, turned on whether the movant had satisfied the "good cause" standard in Federal Rule of Civil Procedure 16, because the motion was filed more than four months after the deadline to amend set out in the scheduling order. *Id.* at 653–54 ("However, when a motion to amend is filed after a court has issued its scheduling order, as in this case, the movant first must demonstrate good cause under Rule 16(b) before the Court considers the amendment's propriety under Rule 15(a) . . . . Here, Plaintiff's motion and initial brief did not address the relief requested in terms of Rule 16."). The Court need not engage in such analysis here, because Plaintiffs' motion does not violate the current deadline in the scheduling order [Doc. 59].

8

Case 4:24-cv-00012-DCLC-MJD   Document 91   Filed 02/21/25   Page 8 of 9   PageID #: 881

360-KKC, 2015 WL 5680344, at *4 (E.D. Ky. Sept. 25, 2015) ("Alleged futility of claims against individuals who are not yet parties to the suit is not a proper basis for denying leave to amend."); *Clark v. Hamilton Mortg. Co.*, No. 1:07-cv-252, 2008 WL 919612, at *2 (W.D. Mich. Apr. 2, 2008) (observing a lack of cases "that would . . . authorize present parties who are unaffected by the proposed amendment to assert claims of futility on behalf of the proposed new defendant."). The Court finds that the arguments upon which the County Defendants rely should be raised, if at all, by the Potential New Defendants under Federal Rules of Civil Procedure 12 or 56. The Court therefore makes no conclusions or rulings regarding Plaintiffs' claims set forth in the Proposed Amendment, including those of equitable tolling and fraudulent concealment.

### III. CONCLUSION

For the reasons set forth above, Plaintiffs' motion to amend [Doc. 72] is **GRANTED**. Plaintiffs shall file the Proposed Amended Complaint as a separate docket entry within seven (7) days of the entry of this Order.

SO ORDERED.

ENTER:

_____
MIKE DUMITRU
UNITED STATES MAGISTRATE JUDGE