# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# AT WINCHESTER

| | |
|---|---|
| BIANCA CLAYBORNE, individually and as parent and next friend of minors J.C., D.W., L.W., A.C., and P.C., | ) ) ) |
| Plaintiff, | ) Case No.: 4:24-cv-00012 ) |
| v. | ) Judge Clifton L. Corker ) ) JURY DEMANDED |
| RUBEN BASALDUA, et al., | ) ) |
| Defendants. | ) |

**RESPONSE IN OPPOSITION TO MOTION TO DISMISS FILED BY DALE LYNN**

On February 17, 2023, Dale Lynn was instrumental in the illegal seizure and separation of Bianca Clayborne and her children. Plaintiffs filed a First Amended Complaint (D.E. 92, "FAC") asserting 7 claims against Lynn. The other four DCS Defendants answered the FAC. Only Lynn has moved to dismiss it. His Motion is procedurally improper. In violation of the Rule 12 standard, he asks the Court to ignore the bulk of the allegations, draw inferences in his favor, and to substitute his own counter-narrative (through bare statements of counsel) that his role was "limited" and that he is an "improper" defendant. However, under a fair application of the Rule 12 standard, Plaintiffs have pleaded sufficient facts that, if accepted as true, state facially plausible claims. Accordingly, all claims should proceed against Lynn (just as they are against the other DCS Defendants).

## FACTUAL BACKGROUND[1]

The FAC sets out facts concerning the interactions between DCS workers and the Clayborne family, Lynn's role in relevant events, and the various efforts to conceal his involvement. (*See, e.g.*, ¶¶ 6, 180-435; 466-479; 492-552.). In most relevant part:

(1) Lynn was a "Team Leader" who approved, authorized, directed, or acquiesced in the unlawful interrogation of Clayborne inside her car (*see* ¶¶ 42, 261-288, 679, 787);

(2) Lynn approved, authorized, directed, or acquiesced in the decision to enlist the County Coffee County Sheriff's Department to seize and remove the children from Clayborne despite the absence of any exigent circumstances (¶¶ 292-296);

(3) Lynn sought to seize the family and remove the children in retaliation for Clayborne exercising her constitutional rights including her right to (a) refuse to answer questions from DCS; and (b) tell DCS it could not take her children from her. (¶¶ 783-793);

---

[1] Lynn takes issue with references to "DCS workers" and "DCS Defendants" as improper group pleading. However, this FAC is nothing like the pleading in *Pethtel v. State of Tenn. Dep't of Children's Services*, 2020 WL 6827791, at *3 (E.D. Tenn. Nov. 20, 2020), where the plaintiffs grouped together allegations against employees of state, municipal, and non-profits without even specifying which claims applied to which defendants. Here, in context, it is clear which allegations apply to Lynn. Also, the use of "DCS Defendants" is proper because Plaintiffs are alleging that they made group decisions and otherwise acted in concert with each other.

(4) Lynn personally called CCSD officer James Sherrill to assist DCS in seizing the family and removing the children from Clayborne (without a court order and before talking to a judge), resulting in a CCSD officer placing spike strips behind Clayborne's vehicle and officers surrounding the car to keep the family from leaving (¶¶ 302-312);

(5) Lynn decided to remove the children from Clayborne with no factual or legal basis, no exigency, and without following any recognized form of legal process (¶¶ 313-317);

(6) Lynn secretly called a Coffee County Judge to seek to remove the children, in a call that was unsworn and not transcribed, recorded, or docketed (¶¶ 318-327; 322-323);

(7) Lynn acted *ultra vires* by purposely making that direct call in violation of the *ex parte* petition process set out by Tennessee law, in violation of DCS policy, and without consulting a lawyer – and purposely not telling Clayborne about it (¶¶ 6, 334-339);

(8) Lynn conveyed information on that call that was false, materially incomplete, and otherwise insufficient to justify an *ex parte* removal order. (¶ 329);

(9) After speaking to the Judge, Lynn facilitated removal of the children by DCS workers at the scene – purporting to execute a supposed "verbal order" that was a legal nullity and acting to remove the children even though no petition had been filed, no hearing took place, and there was no written order yet (*see* ¶¶ 388-391, ¶¶ 693-696); and

(10) After speaking to the Judge, Lynn called and (for the first time) spoke to a DCS attorney, telling her that the children had been removed already (without a petition, hearing, or a valid order) and that DCS should prepare an *ex parte* order for the judge to sign after the fact. (¶¶ 402-407).

Furthermore, recognizing the impropriety and illegality of Lynn's actions, DCS went to great lengths to conceal the fact of Lynn's involvement both during and after the Juvenile Court Proceedings. (¶¶ 415-476, 494-497, and 532.)[2] At the same time, Lynn and the other DCS Defendants were obligated by law (T.C.A. § 37-1-139) and ethics to dismiss the Petition and reunite the family, but never did so. (¶¶ 539-540.) The family was separated for 55 days. (¶ 17.)

## PLAINTIFFS' CLAIMS

Based on these allegations, Plaintiffs assert the following claims against Lynn:

---

[2] *See also* ¶¶ 325-327; 466-479; 593-609.

(1) Count III (¶¶ 664-689): a Fourth Amendment claim by all Plaintiffs for authorizing, approving, directing, or ratifying the seizure of Ms. Clayborne and her children at the jail *before* Lynn called Judge Perry.

(2) Count IV.A (¶¶ 690-703): a Fourth Amendment Claim by all Plaintiffs for authorizing, approving, directing, or ratifying seizing Clayborne and her children *after* calling a Judge.

(3) Count IV.B (¶¶ 704-727): a parallel Tennessee false imprisonment claim for seizing the children (a) before Lynn called Perry and (b) after Lynn called Perry.

(4) Count V (¶¶ 728-738): A Fourth Amendment claim by Clayborne for authorizing, approving, directing, or ratifying the DCS workers at the scene in illegally trying to force Clayborne to provide a urine sample.

(5) Count VI (¶¶ 739-748): A substantive due process claim by all Plaintiffs for actions illegally taken to separate the children without probable cause, including illegally detaining the family at the jail, recruiting (via Lynn) the County to detain the family for DCS, retaliating against Clayborne for being unable to provide a urine sample, purposely (and flagrantly) violating the law and applicable procedures to take away her children through an *ultra vires* secret phone call from Lynn to Perry, and actively concealing Lynn's involvement and the lack of a petition/process.

(6) Count VIII (¶¶ 762-782): A Procedural Due Process Claim for denying Clayborne and her family due process by failing to follow the statutorily prescribed procedures for obtaining an *ex parte* removal petition (and removing the children without exigent circumstances).

(7) Count IX (¶¶7 83-793): A claim for retaliation based on a valid exercise of constitutional rights, specifically by purposely seeking to separate the family without cause because Ms. Clayborne validly exercised her First Amendment right to tell the DCS workers at the scene not to take her children away and her First Amendment right to stop answering questions.

## LEGAL STANDARD

I. <u>Rule 8 and Rule 12 Standards</u>

Fed. R. Civ. P. 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." A motion to dismiss under Rule 12(b)(6) requires the Court to construe the complaint in the light most favorable to the plaintiff, accept its well-pleaded allegations as true, and draw all reasonable inferences in favor of the plaintiff.[3] Accordingly, to survive a motion to

---

[3] *Penney v. Heatec, Inc.*, 2024 WL 4350786, at *2 (E.D. Tenn. Sept. 24, 2024) (citing *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016)).

dismiss, the plaintiffs must allege facts that are sufficient to "raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." [4]

## ARGUMENT

### I. Plaintiffs' Validly Made Certain Allegations Upon Information and Belief.

Lynn asserts that all allegations made "upon information and belief" must be disregarded. Lynn is incorrect.

#### A. In the Pre-Motion Conferral, Lynn Declined a Simple Solution

Lynn should not be advancing this argument. In the pre-Motion conferral, Lynn stated that he intended to assert that the allegations "upon information and belief" be disregarded. Plaintiffs offered to amend to remove the phrase "upon information and belief" to resolve that concern.[5] Lynn said no. Lynn cannot fairly refuse that compromise but move to dismiss on the issue anyway.

#### B. Plaintiffs' Allegations "Upon information and belief" Are Valid

Under the circumstances presented here, it was proper for Plaintiffs to make certain allegations against Lynn upon information and belief. This Court has already addressed the issue and summarized the standard in *Slowik v. Lambert*, a civil rights case. There, the defendants urged the Court to reject all allegations made upon information and belief because "[t]hese allegations are insufficient and may be disregarded by the Court."[6] Relying in part on the Sixth Circuit

---

[4] *Williams v. Alkermes*, 2025 WL 567548, at *2 (E.D. Tenn. Feb. 20, 2025) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) and citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009)); *see also Heatec*, 2024 WL 4350786, at *2 (citing *Iqbal*, 556 U.S. at 678).

[5] Plaintiffs also reiterated to Lynn that intervening discovery supported Plaintiffs' allegations about Lynn. In particular, later-produced call logs (which Lynn authenticated at his March 4 deposition) reflected numerous calls and texts that day concerning the Clayborne matter – both before and after Lynn spoke to Judge Perry. This included calls with a DCS worker at the scene, calls and texts with individuals in the DCS decision-making hierarchy that day, calls and texts with the DCS Court Liaison, and another call with Sherrill.

[6] *Slowik v. Lambert*, 529 F. Supp. 3d 756 (E.D. Tenn. 2021); *see also Starkey v. JPMorgan Chase Bank, NA*, 573 F. App'x 444, 447-48 (6th Cir. 2014) ("[S]ometimes a plaintiff may lack personal

decision in *Starkey v. JP Morgan Chase*, this Court rejected that argument:

> It is not uncommon for pleadings to contain allegations based upon information and belief. They are proper where a plaintiff lack[s] personal knowledge of a fact, but has sufficient data to justify interposing an allegation on the subject. **For example, it is proper where the matter is exclusively within knowledge and control of the opposing party, but is not if the matter is within the personal knowledge of the pleader**. The Court has reviewed the factual allegations in the Amended Complaint. There are very few allegations made "upon information and belief" and those concern matters that lie exclusively within the knowledge of Defendants and are based on logical inferences given the factual circumstances. The Court declines to disregard Plaintiffs' factual allegations.[7]

Courts have also held that pleading on information and belief is permissible where the belief is based on factual information that "makes the inference of culpability plausible."[8] As explained by another Judge of this Court in *Moore v. Henderson Cnty. Sheriff's Dep't*, 2014 WL 1745017, at *10 (W.D. Tenn. Apr. 30, 2014), "the district courts have consistently held that allegations based on information and belief are still permissible post-*Twombly* and *Iqbal* where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible."[9]

Lynn relies on *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, for the proposition that courts never can consider allegations upon information and belief. But subsequent decisions by the Sixth Circuit and district courts within it have repeatedly found that *Southfield* does not impose a *per se* bar; instead; it just requires that those allegations be considered in the context of the pleading as a whole (and it only bars conclusory statements that a defendant violated the law).[10]

---

knowledge of a fact, but have sufficient data to justify interposing an allegation on the subject or be required to rely on information furnished by others.").

[7] *Id.* (cleaned up) (emphasis added); *see also Hunter v. Booz Allen Hamilton, Inc.*, 418 F. Supp. 3d 214, 224 (S.D. Ohio 2019).

[8] *Hunter*, 418 F. Supp. 3d at 224.

[9] *See also Alsbrook v. Concorde Career Colleges, Inc.*, 469 F. Supp. 3d 805, 846-847 (W.D. Tenn. 2020) (same).

[10] *See Smith v. Gen. Motors LLC*, 988 F.3d 873, 885 (6th Cir. 2021) (stating that complaints grounding claims on information and belief can survive a motion to dismiss if they "set forth a

Here, for the same reasons as in *Slowik*, *Starkey*, and *Moore,* Plaintiffs' allegations about Lynn made upon information and belief are permissible. Clayborne was not privy to any communications Lynn had on the date of the incident. They all took place outside her presence. Accordingly, the subject matter of these allegations is not within her personal knowledge; to the contrary, it is within the personal knowledge of Lynn. Also, unlike *Southfield*, Plaintiffs do not make bare assertions that Lynn violated the law without supporting factual allegations. To the contrary, the FAC includes factual allegations specific to Lynn, including (1) details about Lynn's recruitment of the County (via a call to Sherrill) to seize and separate the family (which necessarily was preceded by Lynn communicating with others at DCS about what was transpiring at the scene, Clayborne's resistance to the DCS workers who were trying to interrogate her and separate the family, and Lynn's concurrence in seeking to detain and separate the family); (2) Lynn's call with Judge Perry; and (3) Lynn's call with Younglove immediately after talking to Perry. Taken in context, it is plausible for Plaintiffs to allege (and for this Court to accept as true for Rule 12 purposes) that Lynn was involved in the decision-making and authorized, approved, or otherwise acquiesced in the illegal seizure and separation of the family that day.[11]

In sum, the Court should consider all Plaintiffs' allegations against Lynn. Lynn's Motion

---

factual basis for such belief"); *Global Licensing, Inc. v. Namefind LLC*, 582 F. Supp. 3d 467, 478 (E.D. Mich. 2022) (finding allegations upon information and belief appropriate in context); *Cates v. Crystal Clear Tech., LLC*, 2016 WL 4279220, at *2 n.5 (M.D. Tenn. Aug. 17, 2016) (*Southfield* limited to naked assertions that a defendant violated the law without providing any factual content). The other cases cited by Lynn are consistent with *Starkey* and *Slowik*. Indeed, in *Farber v. Athena of SC, LLC,* 2024 WL 2703882, at *2 (E.D. Tenn. Mar. 12, 2024), the Court acknowledged –citing *Starkey* – that in some circumstances a plaintiff can plead upon information and belief.

[11] It is worth noting that Taylor, Medina, Wright-Gilliam, and Lynn all were set to be deposed before the 1/31/25 amendment deadline. However, after DCS learned that Taylor and Medina had collaborated to spoliate key documents in the case, then-DCS counsel withdrew from representing all DCS witnesses. Lynn then appeared through separate counsel and refused to sit for deposition until ***after*** Plaintiffs filed their FAC. Plaintiffs pleaded based on the available information at the time. All DCS Defendants (including Lynn) ultimately were deposed after Plaintiffs filed the FAC.

6

accordingly is procedurally improper because it asks the Court to ignore those allegations.

## II. Plaintiffs Plead Valid Search and Seizure Claims (Counts III, IV.A, IV.B, and V).

Supervisory personnel are liable where evidence establishes that they "authorized [or] approved . . . the unconstitutional conduct of the offending officers."[12] Where a supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it[,]" liability attaches.[13] A supervisor is liable for their own actions.[14] A supervisor can be liable for unconstitutional actions of a subordinate if the supervisor at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.[15]

Here, Plaintiffs allege facts showing that Lynn assisted, authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the DCS workers at the scene in illegally interrogating and illegally seizing Ms. Clayborne. Lynn does not dispute that, if taken as true, these allegations plead viable search and seizure claims – including the state law false arrest/imprisonment claim – in Counts III, IV.A, IV.B, and V. Instead, he asks the Court to ignore all allegations tying him to those violations. But for the reasons explained above, that position is not reasonable. Plaintiffs have pleaded facts concerning Lynn's involvement before, during, and after his call with Judge Perry. From those specific facts, a reasonable inference can be drawn that Lynn (1) supervised, authorized, approved, directed, blessed, or ratified the seizure of Clayborne and her family at the jail (and the attempt to force a urine sample) before he spoke to Judge Perry (¶¶ 270, 280, 488, 679 and 731)) (indeed, he recruited County officers to assist in seizing the family – which they did (¶¶ 302-311)); and (2) assisted in having the children removed before filing a

---

[12] *Ghandi v. Police Dep't of City of Detroit*, 747 F.2d 338, 351–52 (6th Cir. 1984).
[13] *Phillips v. Roane Cnty., Tenn.,* 534 F.3d 531, 543 (6th Cir. 2008).
[14] *Lanman*, 529 F.3d at 686.
[15] *Hendrix v. DeKalb Cty. Bd. of Educ.*, 186 F. Supp. 3d 779, 787 (M.D. Tenn. 2016); *Lanman v. Hinson*, 529 F.3d 673, 686 (6th Cir. 2008).

petition, before the Court had issued a valid order, and without a hearing (¶¶ 387, 488, 693). For these reasons, all the search and seizure claims (under both federal and state law) should proceed.

## III. Retaliation Claim (Count IX)

The First Amendment protects both the right to speak freely and the right not to speak at all.[16] The First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech.[17] If an official takes adverse action against someone based on that forbidden motive, and non-retaliatory grounds are in fact insufficient to provoke the adverse consequences, then the injured person may generally seek relief by bringing a First Amendment claim.[18] To prevail, the plaintiff must establish a causal connection between the government defendant's retaliatory animus and the plaintiff's subsequent injury.[19]

Plaintiffs have pleaded the requisite elements: (1) she engaged in protected speech by resisting DCS workers' efforts to force her to answer questions when they had no right to do so and by verbally resisting their efforts to take her children (*see* ¶¶ 785-788); (2) in retaliation for her valid exercise of constitutional rights, Lynn and the other DCS Defendants retaliated against her by ensuring that she remained in detention at the jail and by seeking to remove her children without cause; and (3) the family's injuries (illegal detention and the illegal separation of the family unit) were casually related to her valid exercise of constitutional rights.

Lynn asserts that he could not have retaliated against Plaintiffs because he was not present

---

[16] *Wooley v. Maynard*, 430 U.S. 705, 714 (1977).
[17] *Nieves v. Barlett*, 587 U.S. 391, 398 (2019) (citing *Hartman v. Moore*, 547 U.S. 259, 256 (2006).
[18] *Nieves*, 587 U.S. at 398.
[19] *Id.* at 399; *see also Thaddeus-X v. Blatter*, 175 F.3d 378-394 (6th Cir. 1999) (plaintiff must show he (1) engaged in protected speech; (2) adverse actions were taken against him after the protected conduct that would deter a person of ordinary firmness from continuing to engage in that conduct, and (3) a causal connection exists between the two.).

at the jail. (Dkt. 138 at 12.)[20] He misses the point. Drawing all reasonable inferences in Plaintiffs' favor, Plaintiffs allege that, once Lynn learned about Clayborne's refusal to submit to an illegal search and seizure by DCS workers at the scene, he and the other DCS Defendants decided to (1) illegally seize the family at the jail; and (2) remove the children from her and into DCS custody.[21] The FAC alleges how Lynn retaliated based on that improper motive: he communicated internally about what to do (at a minimum acquiescing to the unlawful search and seizure), he called Sherrill (a County official) to enlist the County in seizing and separating the family without a court order, and he then went rogue and (without involving DCS counsel and in violation of Tennessee statutory law and DCS policy) acted *ultra vires* by calling a Judge directly to intervene. Lynn's bald assertion that he "did not retaliate" cannot be credited at this stage: the FAC says the opposite and the Court must draw all reasonable inferences in Plaintiffs' favor.

### IV.    Lynn is Not Immune to Plaintiffs' Due Process Claims.

#### A. Plaintiffs State Viable Procedural Due Process Claims

Under the Fourteenth Amendment, no State shall deprive any person of life, liberty, or property, without due process of law. U.S. Const. amend XIV, § 1. To establish a due process violation, plaintiffs must show: (1) that they were deprived of a protected liberty or property interest; and (2) that such deprivation occurred without the requisite due process of law.[22]

---

[20] Lynn also asserts that Count IX does not identify any specific action by Lynn. (Dkt. 138 at 12.) That is incorrect. Plaintiffs allege that the DCS Defendants (including Lynn) decided to retaliate against Clayborne for validly exercising her constitutional rights, including her First Amendment rights. (¶¶ 786, 788.) Also, those allegations do not exist in a vacuum: Count IX incorporates the preceding supporting factual allegations (*see* ¶ 783), which include facts specific to Lynn (*see, e.g.*, ¶¶ 302-339, 398-414.)

[21] Plaintiffs allege that the DCS workers at the scene were communicating with the supervisory DCS Defendants (*i.e.*, Lynn and Medina). (¶ 787).

[22] *Peach v. Hagerman*, 675 F. Supp. 3d 755, 775 (W.D. Ky. 2023) (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 296 (6th Cir. 2006)); *Schulkers v. Kammer*, 955 F.3d 520, 545 (6th Cir. 2020).

Plaintiffs' allegations meet both elements.

1. Plaintiffs Allege Deprivation of a Protected Liberty Interest.

As the Sixth Circuit held in *Doe v. Staples*, "it is axiomatic that a parent has a liberty interest in the freedom of personal choice in matters of family life in which the State cannot interfere. This liberty interest in family integrity has been labeled an essential or fundamental interest."[23] This includes parents' rights to make decisions about the care, custody, and management of their children.[24] This fundamental right to family integrity extends to all family members, both parents and children.[25] A parent's decision to make decisions concerning the care, custody, or control of their children without arbitrary government interference was clearly established at the time of the Lynn's conduct.[26] Lynn does not dispute that Plaintiffs allege this element.

2. Plaintiffs Allege that Lynn Deprived Plaintiffs of a Protected Liberty Interest Without the Requisite Due Process of Law.

Plaintiffs also allege that the deprivation occurred without the requisite due process of law. As explained in *Barnett v. Hommrich*, involving claims against Tennessee DCS workers:

> [A] procedural due process claim challenges the procedure by which a removal is affected. In the Sixth Circuit, it has been clearly established for over thirty years that, in the context of child removal, due process requires, among other things, that parents be given notice prior to the removal of the child stating the reasons for the removal and that the parents be given a full opportunity at the hearing to present witnesses and evidence on their behalf. *See Kovacic*, 724 F.3d at 699-700 (quoting *Doe v. Staples*, 706 F.3d 985, 990-91 (6th Cir. 1983)). If there is an exigency involving an immediate danger to the child's safety, however, a child can be removed from a parent's custody if the parents are later provided a prompt post-deprivation hearing. *See id.* at 695; *see also Edison v. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007). Applicable Tennessee law provides statutory procedures that follow these constitutional requirements in most relevant respects. *See*

---

[23] 706 F.2d 985, 988-989 (6th Cir. 1983); *see also Schulkers*, 955 F.3d at 540 (holding that "the right to family integrity and association without inference from the state – is the paradigmatic example of a substantive due process guarantee"); *Kovacic v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 724 F.3d 687, 698-700 (6th Cir. 2013).
[24] *O'Donnell v. Brown*, 335 F. Supp. 2d 787, 820 (W.D. Mich. 2004) (citing *Santosky v. Kramer*, 455 U.S. 745, 753 (1982)).
[25] *O'Donnell*, 335 F. Supp. 2d at 820.
[26] *See Peach*, 675 F. Supp. 3d at 771 (citing *Schulkers*, 955 F.3d at 540).

T.C.A. § 37-1-114, 115, 124, 127.[27]

Accordingly, "[o]nly in an emergency situation may social workers separate parents from children without a warrant or pre-deprivation hearing."[28] An emergency situation exists in the child custody context only if there is "reasonable cause to believe that the child is in imminent danger of serious bodily injury."[29] In *Barnett*, the court found that the plaintiff had pleaded facts indicating that there was no exigency, and accordingly permitted the procedural due process claims to proceed again DCS workers who removed a child from its parents without a pre-deprivation hearing.[30] Also, as the Sixth Circuit recently explained in *Bambach v. Moegle*, "[w]here state employees remove children from their parents' car **without a valid court order** and **without either parental consent or pre-removal process**, the state workers violate either the Fourth Amendment or Fourteenth Amendment – or both."[31]

Here, Plaintiffs expressly allege that Lynn procured and facilitated the family's separation (*i.e.*, violating that fundamental right) without a valid court order and without pre-removal process. In relevant part, by statute, Tennessee contemplates pre-hearing removal in only two ways:

(1) <u>Post-Petition Removal via Valid Written Order</u>: DCS must submit a verified petition or sworn testimony to a court,[32] which can only authorize pre-hearing removal of the child into DCS custody by written order,[33] at which point a person can remove the child per T.C.A. § 37-1-114(a) (which authorizes removal per a valid/written court order).[34]

---

[27] *Barnett v. Hommrich*, 2018 WL 10195923, at *8 (E.D. Tenn. Mar. 27, 2018).
[28] *Barnett*, 2018 WL 10195923, at *8.
[29] *Id.*
[30] *Id.* at *8.
[31] *Bambach v. Moegle*, 92 F.3d 615, 623 (6th Cir. 2024) (emphases added).
[32] T.C.A. §§ 37-1-120 ("All petitions shall be verified"); 37-1-114(a); 37-1-117(b)(1).
[33] *See* T.C.A. 37-1-171 ("[W]hen a court desires to commit a child to the department of children's services under this part, ***it shall do so by written order*** . . . .") (emphasis added); *see also State v. Hall*, 2003 WL 22964300, at *4-5 (Tenn. Ct. App. Dec. 16, 2023) (holding that a verbal order of removal by a Tennessee judge is "ineffective any purpose").
[34] T.C.A. § 37-1-113(a)(1).

(2) <u>Pre-Petition Removal</u>: If there are "reasonable grounds" to believe that there is an exigency meeting all the relevant criteria,[35] a law enforcement official or a social worker can remove a child before a petition is filed.[36]

Here, Plaintiffs allege that Lynn did not follow either prescribed route for removal. First, he did not open an actual court proceeding by filing a petition (or providing sworn testimony). (*See* ¶¶ 313-319, 409-414.) Instead, he called the Judge directly on his cell phone and had an unsworn phone call that was not recorded, docketed, or otherwise disclosed (and indeed was actively concealed) from Clayborne, her attorneys, and the public. (*See* ¶¶ 318, 322-327, 334, 338, 398-433, 466-479, 544-549, 593-609.) Lynn then facilitated the removal of the children without a valid written order and without filing a petition. (*See* ¶¶ 387-391, 398-407; 488.) Second, the removal was not justified on a pre-petition basis either: Plaintiffs allege that there were not reasonable grounds (indeed, there were no grounds) to believe that exigent circumstances existed. (¶¶ 265, 293, 314, 333, 694, 774, 789.) Accordingly, the constitutional deprivation occurred without a valid court order, without parent consent, and without pre-removal process.[37]

### B. Plaintiffs Also Allege Viable Substantive Due Process Claims

Parents and children have a constitutional right to family integrity and family association without interference from the state.[38] This includes the right to the "companionship, care, custody and nurture of the child[ren]."[39] The Sixth Circuit held in *Schulkers v. Kammer* that these rights

---

[35] T.C.A. § 37-113(a)(3).
[36] This second scenario appears to be the one presented in the *Barnett* case. *See Barnett*, 2018 WL 10195823, at *8; *Barnett v. Smithwick*, 2019 WL 7290475, at *5-9 (E.D. Tenn. May 30, 2019) (denying motion for summary judgment by DCS attorney on procedural due process claim, because there was a genuine dispute about whether it reasonable to believe that an exigency existed to support extra-judicial removal of the children into DCS custody); *Barnett v. Smithwick*, 835 Fed. App'x 31 (6th Cir. 2020) (affirming trial verdict in defendant's favor on issue of exigency).
[37] *Bambach*, 92 F.3d at 623.
[38] *Peach*, 675 F. Supp. 3d at 771 (citing *Schulkers v. Kemmer*, 955 F.3d 520, 540 (6th Cir. 2020)).
[39] *Id.* (citing *Schulkers*, 955 F.3d at 539-540).

are clearly established.[40] To be liable for violating these rights, the public official must have "acted with a culpable state of mind directed at the plaintiff's family relationship or a decision traditionally reserved within the ambit of the family."[41]

Plaintiffs allege multiple acts by Lynn directed at breaking up the family with a culpable state of mind. This includes: (1) retaliating against Clayborne for lawfully refusing to answer questions and lawfully telling DCS workers that they could not take her children; (2) recruiting County officials to restrain and separate the family at the jail (before anyone talked to a judge); (3) acting *ultra vires* (in violation of Tennessee procedures, due process, and DCS policy) by having an undisclosed, unrecorded, undocketed, unsworn phone call with a judge in which he made false representations and material omissions; and (4) authorizing, approving, or otherwise acquiescing in others (including DCS workers at the scene) in separating the family before the Court issued an order and where the supposed "order" had been procured through falsity.

### C. Lynn Should Not Get Immunity for Purporting to Enforce an Invalid (or Invalidly Procured) Order or for His *Ultra Vires* Call with a Judge.

1. <u>Lynn Has Not Shown Entitlement to Absolute Immunity</u>

Lynn asserts that he is entitled to absolute immunity because he was acting in his role as an "advocate." As explained in *Rieves v. Town of Smyrna*:

> The law presumes that qualified immunity – rather than absolute immunity – applies, and the official seeking absolute immunity bears the burden f showing that absolute immunity is justified for the function in question. Courts have thus been quite sparing in extending absolute immunity to state actors in the § 1983 context.[42]

He has not met his burden.

***Execution of the Supposed "Order" is a Non-Judicial Act to Which Immunity Does Not***

---

[40] *Schulkers*, 955 F.3d at 540.
[41] *Chambers v. Sanders*, 63 F.4th 1092, 1100 (6th Cir. 2023).
[42] *Rieves v. Town of Smyrna*, 959 F.3d 678, 690-691 (6th Cir. 2020).

***Extend***: In *Brent v. Wayne*, the Sixth Circuit held that immunity does not extend to the act of ***executing*** a removal order when the person procured that order through knowingly false statements and omissions.[43] Here, Plaintiffs allege that Lynn procured a directive from the Judge based on false statements and material omissions, then executed the order by having the children removed by DCS workers at the scene (¶¶ 391, 679, 693 and 695). Accordingly, even if a verbal statement by a judge could be considered a valid order (which it was not), Lynn is liable for directing, approving, acquiescing in, or otherwise assisting the execution of that order.

***Absolute Immunity Does Not Extend to Acts Taken Outside Lynn's Lawful Authority***: As the Sixth Circuit found in *Rouse v. Stacy*, the doctrine of absolute immunity has limits: "it does not protect a prosecutor for actions clearly beyond his authority."[44] Accordingly, "where a prosecutor acts without any colorable claim of authority, he loses the absolute immunity he would otherwise enjoy."[45] And in *Hancock v. Miller*, the Sixth Circuit acknowledged that, "[t]o be sure, a parent may prevail on a procedural due process claim for failure to provide a pre-deprivation hearing before interfering with their family integrity."[46]

Lynn points out that the Sixth Circuit has held that social workers are immune when they are acting in their capacity as legal advocates by "initiating court proceedings or testifying under oath."[47] But these cases are consistent with *Rouse* and *Miller*. They each involve circumstances in

---

[43] 901 F.3d at 685 ("[W]e entirely agreed – and now directly hold – that a social worker, like a police officer cannot execute a removal order that would not have been issued but for known falsities that the social worker provided to the court to secure the order.").
[44] *Rouse v. Stacy*, 478 F. App'x 945, 951 (6th Cir. 2012).
[45] *Id.*
[46] *Hancock v. Miller*, 852 F. App'x 914, 924 n.6 (6th Cir. 2021) (citing *Schulkers*, 855 F.3d at 545-546).
[47] *Brent v. Wayne Cnty. Dep't of Human Servs.*, 901 F.3d 656, 683-684 (6th Cir. 2018); *see also Holloway v. Brush*, 220 F.3d 767, 774 (6th Cir. 2000); *Pittman v. Cuyahoga Cnty. Dept. of Children & Family Servs.*, 640 F.3d 716, 726 (6th Cir. 2011); *Turner v. Lowen*, 823 F. App'x 311 (6th Cir. 2020).

which (presumably in compliance with state law) the social worker was filing something to initiate court proceedings or testifying during ongoing proceedings. For example, in *Lowen*, DCS **filed** an *ex parte* petition in the juvenile court (consistent with Tennessee's statutory procedures).

Here, Plaintiffs allege that Lynn acted *ultra vires* – in a manner clearly beyond his authority – and that he did not file anything, testify, or participate in a hearing. (¶¶ 313-339, 695, 743(f).)[48] The FAC alleges that Tennessee law and DCS policy forbid him from unilaterally contacting a judge by phone to procure some type of assistance **without** providing sworn testimony or filing a petition as Tennessee law requires. Lynn should have afforded Plaintiffs a pre-deprivation hearing because there was no exigency. Regardless, he at least was required to follow the statutory process for initiating *ex parte* removal proceedings. He did neither. He does not get absolute immunity.

## 2. Lynn is Not Entitled to Qualified Immunity

"[I]t is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity."[49] As explained in *Marvaso v. Sanchez*, a plaintiff's burden at the motion to dismiss stage to overcome a qualified immunity challenge "is a low bar, given that granting qualified immunity at the motion to dismiss stage is usually disfavored."[50] The Sixth

---

[48] This also distinguishes the circumstances alleged in the FAC from those alleged in the original Complaint. Originally, Plaintiffs had been led to believe that DCS had filed a petition, held a hearing, and had an order in place **before** removing the children (*i.e.*, that DCS had at least followed the statutory *ex parte* removal procedures). But Plaintiffs later learned that none of that occurred. In other words, the due process claims asserted in the FAC are based on materially different facts than what the Court addressed with respect to the Original Complaint.

[49] *Wesley v. Campbell*, 779 F.3d 421, 433–34 (6th Cir. 2015); *see also Hart v. Hillsdale Cnty., Mich.*, 973 F.3d 627, 635 (6th Cir. 2020) (same); *Marvaso v. Sanchez*, 971 F.3d 599, 605–06 (6th Cir. 2020) (same); *see also Peach*, 675 F. Supp. 3d at 768 ("The Sixth Circuit has noted that it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity, because even though a an officer's or social worker's entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point, this is typically done at the summary judgment phase and not by dismissal under Rule 12.") (cleaned up).

[50] *Marvaso*, 971 F.3d at 605-06.

Circuit therefore "generally denies qualified immunity at the motion to dismiss stage in order for the case to proceed to discovery, so long as the plaintiff states a plausible claim for relief."[51]

Here, as discussed in *Barnett*, it is clearly established that due process requires that parents be given notice prior to the removal of the child (stating the reasons for the removal) and have a full opportunity at the hearing to present witnesses and evidence on their behalf.[52] And as recognized in *Bambach*, previous Sixth Circuit case law established that, "[w]here state employees remove children from their parents' car without a valid court order and without either parental consent or pre-removal process, the state workers violate either the Fourth Amendment or Fourteenth Amendment – or both."[53] Plaintiffs allege that Lynn violated this clearly established law by seeking to remove the children (and ultimately facilitating the removal of the children) without a valid court order, parental consent, or valid pre-removal process.

## CONCLUSION

Plaintiffs have pleaded viable claims against Lynn. Lynn played a key role in the seizure and separation of the Clayborne family. His Motion is procedurally improper because it is premised on disregarding nearly all of the allegations against him, drawing inferences in his own favor, and otherwise failing to construe the FAC in the light most favorable to Plaintiffs. The Motion otherwise is substantively without merit. For these reasons and those set out above, Plaintiffs respectfully urge the Court to deny Lynn's motion to dismiss in its entirety.

---

[51] *Id.* (emphasis added); *see also Colson v. City of Alcoa*, 2017 WL 3452353, at *5 (E.D. Tenn. Aug. 10, 2017) ("[T]he qualified immunity defense involves a fact-intensive analysis, and because of its fact-intensive nature, it is typically unsuitable for deliberation at the pleading stage.").
[52] *Barnett*, 2018 WL 10195923, at *8.
[53] *Bambach*, 92 F.3d at 623.

Dated: May 27, 2025	Respectfully submitted,

*/s/ Tricia R. Herzfeld*
Tricia R. Herzfeld (#26014)
Anthony A. Orlandi (#33988)
Benjamin A. Gastel (#28699)
Jeff Preptit (#38451)
**HERZFELD SUETHOLZ GASTEL LENISKI AND WALL, PLLC**
1920 Adelicia St., Suite 300
Nashville, TN 37212
Telephone: (615) 800-6225
tricia@hsglawgroup.com
tony@hsglawgroup.com
ben@hsglawgroup.com
jeff@hsglawgroup.com

Abby R. Rubenfeld
**Rubenfeld Law Office, PC**
810 Dominican Drive, Ste. 215
Nashville, TN 37228
Telephone: (615) 386-9077
arubenfeld@rubenfeldlaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served on this 27th day of May 2025 by the Court's CM/ECF system which electronically served a copy to all counsel of record:

| | |
|---|---|
| Jeffrey R Thompson<br>Gina Sarli Vogel<br>Grant A. Carringer<br>**Lewis Thomason, P.C.**<br>900 South Gay St., Ste. 300<br>P.O. Box 2425<br>Knoxville, TN 37901<br>865-546-4646<br>jrthompson@lewisthomason.com<br>gvogel@lewisthomason.com<br>GCarringer@LewisThomason.com<br><br>*Attorneys for Coffee County Tennessee and Officer Crabtree* | Daniel J. Ripper<br>Chloe Kennedy<br>Isabella Bombassi<br>**Luther Anderson PLLP**<br>P.O. Box 151<br>Chattanooga, Tennessee 37402<br>(423) 756-5034<br>dan@lutheranderson.com<br>cek@lutheranderson.com<br>bib@lutheranderson.com<br><br>*Attorney for Katlyn Pelham* |
| Meghan Murphy<br>Peako Jenkins<br>**Office of the Tennessee Attorney General**<br>P.O. Box 20207<br>Nashville, Tennessee 37202<br>Phone (615) 253-3890<br>meghan.murphy@ag.tn.gov<br>Peako.Jenkins@ag.tn.gov<br><br>W. Adam Izell<br>**Law Office of W. Adam Izell, PLLC**<br>P.O. Box 4386<br>Chattanooga, TN 37405<br>Telephone: (423) 888-3022<br>adam@chattlawyer.com<br><br>*Attorneys for Ruben Basaldua, Donnie Clark, Douglas Foster, and James Thompson* | Kristin Ellis Berexa<br>Grace Patton<br>**Farrar\|Bates\|Berexa**<br>12 Cadillac Drive, Ste. 480<br>Brentwood, TN 37207<br>Telephone: (615) 254-3060<br>kberexa@fbb.law<br>gpatton@fbb.law<br><br>*Attorneys for Montana Medina* |
| Arthur F. Knight III<br>**Law Office of Arthur F. Knight III**<br>3248 Tazewell Pike, Suite 103<br>Knoxville, TN 37918<br>P: (865) 252-0430<br>arthur@arthurfknightlaw.com | Thomas Hickey, Jr.<br>Rafael E. Camacho<br>Nicholas C. Stevens<br>**SPICER RUDSTROM PLLC**<br>537 Market St., Ste. 203<br>Chattanooga, TN 37402<br>P: 423-541-9809 |

| | |
|---|---|
| ***Attorney for Erica Wright-Gilliam*** | thickey@spicerfirm.com<br>rcamacho@spicerfirm.com<br>nstevens@spicerfirm.com<br><br>***Attorney for Kathleen Velez*** |
| E. Ashley Carter<br>Jeffrey B. Cadle<br>**Office of Tennessee Attorney General**<br>P.O. Box 20207<br>Nashville, Tennessee 37202<br>P. 615-741-7932<br>Ashley.Carter@ag.tn.gov<br>Jeffrey.cadle@ag.tn.gov<br><br>***Attorney for Dale Lynn*** | |

                                             */s/ Tricia R. Herzfeld*
                                             Tricia R. Herzfeld