# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## AT WINCHESTER

BIANCA CLAYBORNE, individually )
and as parent and next friend of minors )
J.C., D.W., L.W., A.C., and P.C., )
                         ) **Case No.: 4:24-cv-00012**

    Plaintiff, )

                         ) **Judge Clifton L. Corker**

v. )

                         ) **JURY DEMANDED**

RUBEN BASALDUA, et al., )

    Defendants. )

## PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON FOURTH AMENDMENT LIABILITY AS TO THP DEFENDANTS

## I. The Initial Traffic Stop on February 17, 2023

1. Defendants Ruben Basaldua, Donnie Clark, Douglas Foster, and James Thompson are Troopers with the Tennessee Highway Patrol ("THP"). (Declaration of Anthony A. Orlandi, **Ex. 18**, THP Answer to ¶¶ 11-14.)[1]

**RESPONSE**:

2. At about 9:38 a.m. on February 17, 2023, Clayborne and her family were driving on I-24 through Coffee County when they passed THP Trooper Basaldua's patrol vehicle. (**Ex. 2a**, Basaldua Dashcam at 9:38:05 am (0:02.)

**RESPONSE**:

3. Basaldua initiated a traffic stop for a potential slow poke violation and potential tint violation. (**Ex. 7**, Basaldua Dep. at 34:13-16.)

**RESPONSE**:

4. After pulling over at a BP gas station at 9:39 a.m., Williams, Clayborne, and their family remained in the car and waited until Trooper Basaldua approached the driver's side window. (**Ex. 7**, Basaldua Dep. at 45:11-20; **Ex. 2a**, Basaldua Dashcam at 9:40:41 am–9:40:51 am (2:38 to 2:48.)[2]

**RESPONSE**:

5. The family made no effort to speed away, escape, or outrun Basaldua. (**Ex. 7**, Basaldua Dep. at 45:22-46:4.)

**RESPONSE**:

---

[1] All exhibit references are to the corresponding exhibit to the accompanying Declaration of Anthony A. Orlandi.

[2] For ease of reference for the THP Defendants, Plaintiffs have identified both the actual time(s) (in a.m. or p.m.) and the time(s) within each video itself (to make it easier to locate).

6. Trooper Clark and Trooper Foster responded to the gas station in their patrol vehicles within about two to three minutes of the stop. (**Ex. 2a**, Basaldua Dashcam at 9:40:44 am (3:41, Clark); Basaldua Dashcam at 9:42:25 am (4:21, Foster).)

**RESPONSE**:

7. Trooper Basaldua was in charge of the scene because he made the traffic stop. (**Ex. 9**, Foster Dep. at 37:16-24.)

**RESPONSE**:

8. At approximately 10:37 a.m., Thompson also responded to the scene in his patrol vehicle and joined Clark, Thompson, and Basaldua there. (**Ex. 5a**, Thompson Bodycam 0:01; **Ex. 10**, Thompson Dep. at 10:21-11:8 and 17:2-7.)

**RESPONSE**:

9. Trooper Thompson assisted Basaldua, Foster, and Clark in searching the vehicle. (**Ex. 2b**, Basaldua Dashcam 11:38:02 am-11:38:50 am (2:00-2:48); **Ex. 5b**, Thompson Bodycam at 11:25:32-11:38:42 am (48:30 to 1:01:40).)

**RESPONSE**:

10. Trooper Thompson assisted Foster and Clark with the detention of Clayborne. (**Ex. 18,** THP Answer to Complaint, Dkt. 31 at ¶ 63.)

**RESPONSE**:

11. The Troopers worked collectively in making decisions. (**Ex. 7,** Basaldua Dep. at 48:11-19.)

**RESPONSE**:

12. From that point forward, there were four patrol vehicles present at the gas station along with all four troopers. (**Ex. 18,** THP Answer to Complaint ¶ 89.)

**RESPONSE**:

13.     Sergeant Edgar Perry was the supervisor for Troopers Clark, Basaldua, and Foster on the date of the incident. (**Ex. 12**, Perry Dep. at 49:13-50:7.)

**RESPONSE**:

14.     One vehicle kept its blue lights activated throughout the encounter. (**Ex. 18,** THP Answer to Complaint ¶ 90; **Ex. 4a**, Clark Bodycam 2 at 12:03:50-12:03:55 pm (42:32 to 42:37).

## II.     <u>The Troopers Discover Less than 5 Grams of Marijuana, Decide to Custodially Arrest Clayborne, and Call DCS</u>

15.     The Troopers found a small amount of suspected marijuana in the car – less than 5 grams. (**Ex. 7,** Basaldua Dep. at 105:3-23.)

**RESPONSE**:

16.     The THP Defendants only had probable cause to arrest or cite Ms. Clayborne for simple possession of marijuana. (**Ex. 13**, THP Defs. Resp. to RFA  4.)

**RESPONSE**:

17.     Before conducting a full search of Ms. Clayborne's car, Troopers Basaldua, Clark, and Foster decided to arrest Ms. Clayborne for simple possession of marijuana. (**Ex. 13**, THP Defs. Resp. to RFA  5.)

**RESPONSE**:

18.     The Troopers collectively decided to arrest both Williams and Clayborne for simple possession. (**Ex. 18,** THP Answer to Complaint ¶ 48; **Ex. 7,** Basaldua Dep. at 52:12-23.)

**RESPONSE**:

19.     The Troopers also all agreed to call the Tennessee Department of Children's Services. (**Ex. 7,** Basaldua Dep. at 53:7-9.)

**RESPONSE**:

20.     They did because they believed they needed to get DCS involved because both parents (Clayborne and Williams) were getting custodially arrested and booked into the jail – and there would not be anybody to care for the children. (**Ex. 9,** Foster Dep. at 54:15-19.)

**RESPONSE**:

21.     The Troopers told Clayborne that because they were arresting her for marijuana possession, they would be calling DCS about her children. (**Ex. 7,** Basaldua Dep. at 54:10-16; **Ex. 3a,** Basaldua Bodycam at 10:33:23-10:34:28 am (54:53 to 55:48); **Ex. 11,** Clayborne Dep. at 82:1-11.)

**RESPONSE**:

22.     After being told at about 10:33 a.m. that DCS was being summoned for her children, Clayborne pleaded with the officers not to do it. (**Ex. 3a,** Basaldua Bodycam at 10:33:23-10:34:09 am (54:53 to 55:29.)

**RESPONSE**:

23.     Trooper Foster walked away to call DCS. (**Ex. 3a**, Basaldua Bodycam at 10:34:25-10:34:27 am (55:45 to 55:47.)

### III.    **The Troopers Decide to Issue a Citation in Lieu of Arrest to Clayborne**

24.     From about 11:06 a.m. to 11:08 a.m., Clark proposed to his supervisor (Sergeant Perry) that the Troopers would write Ms. Clayborne a ticket so that Ms. Clayborne would not have to be sent to jail and DCS would not need to be involved. (**Ex. 6**, Clark Bodycam 1 at 11:06:54-11:08:35 am (44:44-46:35)).

**RESPONSE**:

25.     At 11:08 a.m., Clark stated that he would run that proposal by Basaldua. (**Ex. 6,** Clark Bodycam 1 at 11:08:36 am (44:33-44:35)).

**RESPONSE**:

26.     The Troopers then talked and agreed that they would finish searching Clayborne's car at the gas station, and if they did not find anything else, then they would write a ticket to Clayborne so that the children would not be separated from her and DCS would not have to be involved. (**Ex. 7,** Basaldua Dep. at 56:14-69:15; **Ex. 6**, Clark Bodycam 1 at 11:08:55-11:10:46 am (46:36 to 48:49)).

**RESPONSE**:

27.     Clark intended that, by issuing a citation to Ms. Clayborne in lieu of arrest, Ms. Clayborne and her children would not be separated. (**Ex. 13**, THP Defs. Resp. to RFA 9.)

**RESPONSE**:

28.     The Troopers had the children wait in the gas station shop while they searched the area of the car where the children had been seated. (**Ex. 18,** THP Answer to Complaint ¶ 74.)

**RESPONSE**:

29.     During their search of the car, the Troopers found nothing illegal. (**Ex. 7,** Basaldua Dep. at 69:15-18; **Ex. 18,** THP Answer to Complaint ¶ 76.)

**RESPONSE**:

30.     Inside the gas station, Clark told Clayborne that she was being nice and respectful. (**Ex. 7,** Basaldua Dep. at 71:20-23; **Ex. 3b**, Basaldua Body Cam at 11:32:40-11:32:47 am (1:54:00 to 1:54:07.)

**RESPONSE**:

31.     Clark also commended Clayborne for breastfeeding her infant child because it was healthier for the baby. (**Ex. 7,** Basaldua Dep. at 71:2-9; **Ex. 3c**, Basaldua Body Cam at 11:30:48-11:30:57 am (1:52:08 to 1:52:15.)

**RESPONSE**:

32.     Based on all of his observations and interactions with Clayborne that day, Clark did not have any information that Clayborne's children were suffering from abuse or neglect. (**Ex. 8,** Clark Dep. at 120:15-19.)

**RESPONSE**:

33.     The entire time he was observing the children, Basaldua never had any concerns that there was abuse or neglect that would require intervention by DCS. (**Ex. 7,** Basaldua Dep. at 62:2-5.)

**RESPONSE**:

34.     Foster did not see Clayborne abuse her children, observed her being kind to her children, and did not have any concerns (**Ex. 9**, Foster Dep. at 77:11-25.)

**RESPONSE**:

35.     At about 11:42 a.m., Basaldua and Clark spoke together at Basaldua's vehicle, agreed that they were going to cite Clayborne and "let her go" so that she and the children could stay together. (**Ex. 8, Clark Dep**. at 44:1 to 45:23.)

**RESPONSE**:

36.     At 11:42 a.m., Basaldua told Clark "I'll write her the ticket and let her go with the kids." (**Ex. 8, Clark Dep**. at 20:6-7.)

**RESPONSE**:

37.     Clark did this because he thought that it was best for children to stay with their mother. (**Ex. 8, Clark Dep**. at 45:20 to 45:23; **Ex. 4b**, Clark Bodycam 2 at 11:41:49-11:42:05 am (20:30 to 20:47.)

**RESPONSE**:

38.     Clayborne was cited in lieu of arrest for simple possession of a small amount of marijuana. (**Ex. 18,** THP Answer to Complaint ¶ 227; **Ex. 13**, THP Defs. Resp. to RFA  6.)

**RESPONSE**:

39.     Basaldua issued the citation to Clayborne at the gas station. (**Ex. 14**, Basaldua Interrogatory Response No. 2; **Ex. 7,** Basaldua Dep. at 87-14-17; 92:9-92:12.)

**RESPONSE**:

40.     After they issued Clayborne the citation at the gas station, Clayborne should have been free to leave. (**Ex. 7,** Basaldua Dep. at 88:17-24.)

**RESPONSE**:

41.     At that point, the reason for the original stop had already concluded. (**Ex. 8, Clark Dep**. at 72:9-12.)

**RESPONSE**:

### IV.     Just as Clayborne is About to be Released, Foster Incorrectly Asserts that THP Policy Requires Clayborne to Meet with DCS.

42.     Just before 12 p.m., the Troopers helped Clayborne load the children and the car seats back into the family's car. (**Ex. 2c,** Basaldua Dashcam at 11:59:02 am – 11:59:59 am (2:20:59 to 2:21:56); **Ex. 4a**, Clark Bodycam 2 at 11:58:53-11:59:52 am (37:35 to 38:34.)

**RESPONSE**:

43.     From 11:59 a.m. to 12:00 p.m., Clark and Foster, standing next to the driver's side of Clayborne's vehicle, began discussing whether Clayborne still needed to talk to DCS at the jail. (**Ex. 4a**, Clark Bodycam 2 at 11:59:46 am-12:00:58 pm (38:28-39:40); **Ex. 8, Clark Dep**. at 55:21-56:16.)

**RESPONSE**:

44. While they had this discussion, the lights were still flashing on the patrol vehicles of Clark, Foster, and Basaldua. (**Ex. 4a**, Clark Bodycam 2 at 11:59:47 am-12:01:19 pm (38:28-40:02.)

**RESPONSE**:

45. The following is a screen shot at 11:59:56, with (from left to right) Foster, Clark's vehicle with its lights flashing, Foster's vehicle with its lights flashing, Basaldua's vehicle with its lights flashing, and the driver's side of Ms. Clayborne's vehicle with Ms. Clayborne entering it:



(**Ex. 4a**, Clark Bodycam 2 at 11:59:56 am (38:38.)

**RESPONSE**:

46. Clark initially suggested that because Clayborne would be cited rather than arrested, Clark did not see a need to involve DCS at that point. (**Ex. 8, Clark Dep**. at 55:21 to 56:16; **Ex. 4a**, Clark Bodycam 2 at 11:59:55-12:00:10 am (38:37-52.)

**RESPONSE**:

47. Trooper Foster told Clark that he (Clark) was incorrect and that, to the contrary, a THP "General Order" required the Troopers to notify DCS and that Clayborne needed to speak with DCS. (**Ex. 8, Clark Dep**. at 55:21-52:23; **Ex. 4a**, Clark Bodycam 2 at 12:00:03-12:00:13 pm (38:45 to 38:55.)[3]

**RESPONSE**:

48. Foster had the following exchange with Clark:

Foster: Right, but she still needs to talk to them because they're down here, and our general order says that we have to call them. They changed that back when Dereck Stewart was the colonel. But I'm hungry, man.

Clark: What does it say? That –

Foster: You have – whenever you have criminal charges on the parents like that with those kids in the car, and they're involved, you've got to – you have to contact DCS.

Clark: Well, let's just get her down there to the jail.

(**Ex. 8, Clark Dep**. at 56:19 to 58:9; **Ex. 4a**, Clark Bodycam 2 at 12:00:15-12:00:47 pm (38:57 to 39:29.)

**RESPONSE**:

49. Foster believed that DCS needed to communicate with Ms. Clayborne. (**Ex. 9**, Foster Dep. at 141:9-12.)

**RESPONSE**:

50. Clark understood Foster to be saying that even though Clayborne had only been cited for simple possession and not physically arrested and taken into custody to be booked at the

---

[3] Foster: "Right, but she still needs to talk to them because they're down here, and our general order says that we have to call them."

jail, Clayborne and her family still had to speak with DCS at the jail. (**Ex. 8, Clark Dep**. at 58:2-9.)

**RESPONSE**:

51.     The General Order that Foster was referencing was General Order 524-1. (**Ex. 9,** Foster Dep. at 117:0-19.)

**RESPONSE**:

52.     In relevant part, the policy applies to what to do when a parent is being custodially arrested and the children will be left unattended. (**Ex. 9**, Foster Dep. at 121:8-11 and Ex. 10 to Foster Deposition, General Order 524-1; **Ex. 12**, Perry Dep. at 103:22-105:11.)

**RESPONSE**:

53.     GO 524-1 provides that if a child will be left unattended because of a custodial arrest, then the Trooper must determine if the child would be endangered by being left unattended. (**Ex. 9,** Foster Dep. at 121:15-122:1 and 123:4-8, and Ex. 10 to Foster Depo, General Order 524-1 at Part I.).

**RESPONSE**:

54.     If the Trooper determines that leaving the child unattended would put the child in danger, then a welfare check will be conducted to assure the child's safety and welfare. (**Ex. 9**, Foster Dep. at 122:10-33, 123:9-12; **Ex. 12**, Perry Dep. at 105:15-106:21.)

**RESPONSE**:

55.     Under THP policy, both conditions must be met. (**Ex. 9**, Foster Dep. at 123:13-15 and Ex. 10 to Foster Dep., General Order 524-1 at Part I.)

**RESPONSE**:

56.     Per GO 524-1, if both conditions are met, then the responding Trooper must contact dispatch and request assistance from the other parent or legal guardian, other relative, DCS, or other responsible person or agency. (**Ex. 9**, Foster Dep. at 124:20-125:1 and Ex. 10 to Foster Dep., General Order 524-1 at Part I.)

**RESPONSE**:

57.     Because Clayborne was being given a citation instead of being physically arrested, her children were not going to be left unattended. (**Ex. 9**, Foster Dep. at 101:3-6.)

**RESPONSE**:

58.     According to what GO 524-1 required, Foster's stated understanding was incorrect at that time because Clayborne was being issued a citation in lieu of arrest. (**Ex. 9**, Foster Dep. at 142:2-22; and 130:20-23; **Ex. 12**, Perry Dep. at 130:20-23.)

**RESPONSE**:

59.     When Foster stated his understanding that a THP General Order required Clayborne to meet with DCS, Clark did not know what General Order that Foster was talking about. (**Ex. 8, Clark Dep**. at 58:17-19.)

**RESPONSE**:

60.     After Foster made that statement, neither Foster nor Clark reviewed GO 524-1 at the scene. (**Ex. 4a**, Clark Bodycam 2 at 11:59:48 am-12:00:58 pm (38:30-39:40.)

**RESPONSE**:

61.     After Foster made that statement, neither Foster nor Clark contacted their supervisor, Sergeant Perry, to determine whether Foster's statement about GO 524-1 was correct. (**Ex. 4a**, Clark Bodycam 2 at 11:59:48 am-12:00:58 pm (38:30-39:40; **Ex. 12**, Perry Dep. at 131:5-23.)

**RESPONSE**:

62. On that day when he was dealing with Clayborne, Williams, and the situation with their children, Foster did not reach out to anyone to ask them about implementation or interpretation of GO 524-1. (**Ex. 9**, Foster Dep. at 128:1-5.)

**RESPONSE**:

**V.** **Even Though the Conditions of GO 524-1 Plainly Did Not Apply Because the Children Were Not Being Abandoned, the Troopers Decide to Keep Clayborne in Custody and Direct Her to Go With Them to the Jail Over a Mile Away.**

63. At 12:00 pm, in response to Foster's statement, Clark stated "Well, let's get her down there to the jail," referring to Clayborne. (**Ex. 4a**, Clark Bodycam 2 at 12:00:45-12:00:47 pm (39:27 to 39:29.)

**RESPONSE**:

64. Clark approached Basaldua's vehicle to speak with him. (**Ex. 4a**, Clark Bodycam 2 at 12:01:15 – 12:01:28 pm (39:57 to 40:10.)

**RESPONSE**:

65. At this point, Basaldua's lights were still flashing. (**Ex. 4a**, Clark bodycam 2 at 12:03:34pm (42:16.)

**RESPONSE**:

66. Basaldua asked Clark if Clayborne would be free to leave after signing a property receipt form. (**Ex. 7,** Basaldua Dep. at 86:9-17; **Ex. 4a**, Clark Bodycam 2 at 12:01:38 pm (40:20) (showing the title as "Tennessee Highway Patrol Property Receipt/Release".)

**RESPONSE**:

67.　At 12:01 p.m., in response to Basaldua's question, Trooper Clark told Basaldua that "She'll have to follow us down there because DCS," referring to Ms Clayborne. (**Ex. 13**, THP Defs. Resp to RFA 21.)

**RESPONSE**:

68.　Basaldua responded: "Okay." (**Ex. 7,** Basaldua Dep. at 86:9-87:4.)

**RESPONSE**:

69.　Clark approached Clayborne's car and asked her to sign the property receipt, which she did. (**Ex. 4a**, Clark Bodycam 2 at 12:01:42-12:02:16 pm (40:24 to 40:58.)

**RESPONSE**:

70.　At 12:03 p.m., Clark went back to Basaldua's vehicle and told Basaldua: "I'll have her follow me." (**Ex. 8, Clark Dep**. at 64:17 to 65:11; **Ex. 4a**, Clark bodycam 2 at 12:03:27-12:03:31 pm (42:09-42:13.)

**RESPONSE**:

71.　At this point, the lights on the patrol cars of Basaldua and Clark were both still flashing, as reflected in the following image:



(**Ex. 4a**, Clark Bodycam 2 at 12:03:28 pm (42:10.)

     **RESPONSE**:

     72.    At 12:03 p.m., Trooper Clark then approached Clayborne's vehicle. (**Ex. 4a**, Clark

Bodycam 2 at 12:03:33-12:03:43 pm (42:15-25.)

     **RESPONSE**:

     73.    At Clayborne's vehicle, he told her "Just follow me down to the jail and then you'll

know where he's at and then we'll finish up the paperwork there." (**Ex. 8, Clark Dep**. at 69:19 to

70:5; **Ex. 4a**, Clark Bodycam 2 at 12:03:43-12:03:49 pm (42:25 to 42:31.)

     **RESPONSE**:

     74.    In substance, Clark told Clayborne that there was additional paperwork she needed

to finish at the jail, including the citation that Clark did not realize she had already received. (**Ex.

8, Clark Dep**. at 70:6-19; **Ex. 4a**, Clark Bodycam 2 at 12:03:45-12:03:49 pm (42:27 to 42:31.)

     **RESPONSE**:

     75.    At the time Clark made those statements, there were still four patrol vehicles parked

within feet of Clayborne's car, along with all four Troopers present in full uniform. (**Ex. 8, Clark

Dep**. at 67:5 to 68:23.)

     **RESPONSE**:

     76.    The uniforms included a weapon, baton, handcuffs, and pepper spray. (**Ex. 8, Clark

Dep**. at 68:25-69:16.)

     **RESPONSE**:

     77.    At this time, Thompson was seated in his patrol vehicle parked next to Clark's. (**Ex.

4a**, Clark Bodycam 2 at 12:03:55 pm (42:37.)

     **RESPONSE**:

78.     At 12:03 p.m., Clark told Thompson (who was seated in his patrol vehicle next to Clark's vehicle): "We're moving down to the jail." (**Ex. 8, Clark Dep**. at 73:11 to 74:11; **Ex. 4a**, Clark Bodycam 2 at 12:03:57-12:03:59 pm (42:39 to 42:41.)

**RESPONSE**:

79.     Clark had not told Ms. Clayborne that she was free to leave or told Clayborne that it was voluntary whether or not she was going to speak with DCS. (**Ex. 8, Clark Dep**. at 74:16-22.).

**RESPONSE**:

80.     Foster did not tell Clayborne that she was free to leave or that it was voluntary for her to speak with DCS. (**Ex. 9**, Foster Dep. at 138:20-139:2.)

**RESPONSE**:

**VI.     The Troopers Caravan to the Jail with Clayborne Following Clark as Directed**

81.     Basaldua drove out first with Williams in the backseat.  (**Ex. 4a**, Clark Bodycam 2 at 12:03:48-12:03:50 pm (42:30-32.)

**RESPONSE**:

82.     Basaldua pulled his vehicle out of the gas station onto the road at about 12:03:45. (**Ex. 2d**, Basaldua Dashcam at 12:03:48 pm (2:25:45.)

**RESPONSE**:

83.     Clark left next, starting his car about 20 seconds later. (**Ex. 4a**, Clark Bodycam 2 at 12:03:53-12:04:11 pm (42:35-42:53.)

**RESPONSE**:

84.     As Clark pulled away from the gas station, another Trooper's vehicle was still parked at the gas station with the lights still flashing. (**Ex. 8, Clark Dep**. at 75:5-23.)

**RESPONSE**:

85.     As Clark pulled out onto the road, Ms. Clayborne's vehicle, driven by Ms.

Clayborne, pulled out behind Clark. (**Ex. 8, Clark Dep**. at 76:2-7.)

**RESPONSE**:

86.     Clayborne followed Clark's car to the jail in her vehicle. (**Ex. 8, Clark Dep**. at

75:5-76:13; **Ex. 4a**, Clark Bodycam 2 at 12:04:19-12:06:43 pm (43:01-45:25.)

**RESPONSE**:

87.     At that time, Foster did not have any concern that Clayborne was under the

influence or a danger to the children. (**Ex. 9**, Foster Dep. at 138:1-7.)[4]

**RESPONSE**:

88.     The Coffee County Jail is about 1 mile away from the BP gas station. (**Ex. 17**,

Google Maps Printout.)

**RESPONSE**:

**VII.     In the Jail Parking Lot, the Troopers Keep Clayborne in Custody Until the Moment a DCS Worker Approaches Clayborne's Car to Interrogate Her**

89.     Clayborne drove right up behind Clark as he had instructed. (**Ex. 8, Clark Dep**. at

77:1-4; **Ex. 18,** THP Answer to Complaint ¶ 95.)

**RESPONSE**:

90.     Clark said to Clayborne: "Just park on – You can park right here in this handicap

zone" – referring to the handicap spot to the right of Clark's vehicle (and directly across from the

---

[4] ("Q: And you didn't speak up and say, she shouldn't be driving this car because she is under the influence or a danger to the children? A: I did not. Q: Because you didn't have any understanding that that was the case; is right? A: Correct.").

entrance to the jail). (**Ex. 4a**, Clark Bodycam 2 at 12:07:01-12:07:08 pm (45:43 to 45:50); **Ex. 18**, THP Answer to Complaint ¶ 94.)

**RESPONSE**:

91.     Clayborne pulled her car into that handicapped spot as Clark had told her to do. (**Ex. 8, Clark Dep**. at 78:13-16; 45:42-45:55.)

**RESPONSE**:

92.     Clark told Clayborne to keep her car running. (**Ex. 8, Clark Dep**. at 80:8-12.)

**RESPONSE**:

93.     Clark told Clayborne that he was going to take pictures of her car. (**Ex. 4a**, Clark Bodycam 2 at 12:07:10-12:07:12 pm (45:52-54.)

**RESPONSE**:

94.     Clark began taking pictures of the vehicle while Clayborne stayed inside it with her children and the car was running. (**Ex. 8, Clark Dep**. at 81:12-23; **Ex. 4a**, Clark Bodycam 2 at 12:07:10-12:07:36 pm (45:52-46:18.)

**RESPONSE**:

95. This is an image of Clark taking pictures while Clayborne and her children were waiting in the car:



(**Ex. 4a**, Clark Bodycam 2 at 12:07:34 pm (46:14).)

**RESPONSE**:

96. Clayborne asked Trooper Clark if she was going to jail. (**Ex. 8, Clark Dep**. at 80:1-5; **Ex. 18,** THP Answer to Complaint ¶ 98.)

**RESPONSE**:

97. She asked this question about three seconds after Clark had directed her to keep the car running and told her he was going to take pictures of her car. (**Ex. 4a**, Clark Bodycam 2 at 12:07:11-12:07:18 pm (45:52 to 46:00.)

**RESPONSE**:

98. In response, Clark told Clayborne that she was not going to jail and that "we're going to give you a ticket." (**Ex. 8, Clark Dep**. at 81:1-9; **Ex. 11**, Clayborne Dep. at 102:5-7.)

**RESPONSE**:

99.   While Clark was taking these pictures:

   a.   There was a cement pole (with the handicapped sign on it) at the front of the parking spot directly in front of Clayborne's vehicle. (Clark Dep. at 78:17-79:8; 82:22-24; **Ex. 16**, THPDEFENDANTS0000009 (pic taken by Clark).)

   b.   A UPS package truck was parked on the passenger side of Clayborne vehicle. (**Ex. 8, Clark Dep**. at 82:3-18; **Ex. 4a**, Clark Bodycam 2 at 12:07:08 pm (45:50.)

   c.   Trooper Clark's vehicle was parked on the driver's side of Clayborne's vehicle. (**Ex. 8, Clark Dep**. at 82:19; **Ex. 4a**, Clark Bodycam 2 at 12:07:08 pm (45:50); and

   d.   The entrance to the jail was behind Clayborne's car across the driving lane. (**Ex. 8, Clark Dep**. 82:25-83:1; **Ex. 4a**, Clark Bodycam 2 at 12:07:29-12:07:38 pm (46:11-20.)

   **RESPONSE**:

100.   Clark took these pictures of Clayborne's car while she and her children were inside the car:





(THP Defendants Production **Ex. 15**, THPDEFENDANTS000008-000009.)

      **RESPONSE**:

101.    At 12:07 p.m., Thompson pulled around in his patrol vehicle, parked in the spot across from Clark's facing Clark's car, exited the vehicle, and left his headlights on. (**Ex. 4a**, Clark Bodycam 2 at 12:07:27-12:07:29 pm (46:09-11); *see also* **Ex. 1**, Clark Dashcam at 12:07:29-12:08:06 pm (2:27:56 to 2:28:32.)

**RESPONSE**:

102.    In the parking lot a few feet from Clayborne's car, two DCS employees (Taylor and Velez) walked towards the back of the car in the driving lane. (**Ex. 8, Clark Dep**. at 83:4-15; **Ex. 4a**, Clark Bodycam 2 at 12:07:38-12:07:43 pm (46:20-25.)

**RESPONSE**:

103.    Clark approached Taylor and Velez to speak with them. (**Ex. 8, Clark Dep**. at 84:2-19; **Ex. 4a**, Clark Bodycam 2 at 12:07:41-12:07:43 pm (46:23-25.)

**RESPONSE**:

104.    Clark, Taylor, and Velez spoke behind Clayborne's car – standing in the middle of the driving lane just outside the entrance to the jail. (**Ex. 4a**, Clark Bodycam 2 at 12:07:44-12:11:01 pm (46:26 to 49:43.)

**RESPONSE**:

105.    Clark told Taylor and Velez that there had been an "adjustment to our plan." (**Ex. 18,** THP Answer to Complaint ¶ 102; **Ex. 4a**, Clark Bodycam 2 at 12:07:44 pm (46:26.)

**RESPONSE**:

106.    Clark told Taylor and Velez that the Troopers would only be issuing a misdemeanor citation to Clayborne for possession of marijuana (rather than arresting her). (**Ex. 8, Clark Dep**. at 85:4-9.)

**RESPONSE**:

107.     Specifically, Clark said the following: "So I think for everybody's best interest, she is just going to get a misdemeanor citation for marijuana, and let her go. That way we don't have to separate her and the kids . . . . So I'm not sure that you [DCS] really need to do anything." (**Ex. 8, Clark Dep**. at 47:40-48:15; **Ex. 4a**, Clark Bodycam 2 at 12:09:01-12:09:34 pm (47:43-48:16.)

**RESPONSE**:

108.     Clark told them that the Troopers were giving Clayborne a misdemeanor citation for marijuana and going to let her go so that they didn't have to separate her and the kids, that she seemed like a good mother, that there were no problems with neglect, and that it would be best for everyone involved for Clayborne to stay with the kids and not be booked in. (**Ex. 18,** THP Answer to Complaint ¶ 104.)

**RESPONSE**:

109.     At this point, Clark still did not think that Clayborne had gotten a citation yet. (**Ex. 8, Clark Dep**. at 86:15-21.)

**RESPONSE**:

110.     At this point, Clark believed that once Clayborne got the citation, she should be free to leave. (**Ex. 8, Clark Dep**. at 86:19-21.)

**RESPONSE**:

111.     At this point, Clark did not see a need for DCS to intervene. (**Ex. 8, Clark Dep**. at 87:23-88:1.)

**RESPONSE**:

112.     Taylor responded: "Yeah, we have to talk to mom in here, and see the kiddos, and stuff." (**Ex. 4a**, Clark bodycam 2 at 12:09:33-12:09:40 pm (48:15-48:22); **Ex. 8, Clark Dep**. at 88:14-17.)

**RESPONSE**:

113.     As Taylor said that, she gestured at the jail, which Clark understood to mean that Clayborne would have to speak with DCS inside the jail with her children. (**Ex. 8, Clark Dep**. at 88:18-89:3.)

**RESPONSE**:

114.     Clark then stated as follows: "She's a good mom, seems like. She breastfeeds one of the infants. . . . And there's no problem, as far as neglect, or anything like that . . . . I just think it would be best for everybody involved for her to stay with the kids and not be booked in . . . ." (**Ex. 4a**, Clark Bodycam 2 at 12:09:40-12:10:14 pm (48:22 to 48:56); **Ex. 8, Clark Dep**. at 89:6-20.)

**RESPONSE**:

115.     As of 12:10 p.m., Foster was parking ahead of Clayborne's vehicle to the right, as reflected in this image:



(**Ex. 4a**, Clark Bodycam 2 at 12:10:19 pm (49:01.)

**RESPONSE:**

116.    At this time, Foster's vehicle was parked ahead of Clayborne's vehicle to the right, Clark's vehicle remained parked in the parking spot on Clayborne's driver's side, Thompson's vehicle was parked across from Clark's vehicle (facing toward Clark's vehicle) with its headlights still on, and Clayborne remained parked in the handicapped spot with a cement pole in front of her. (**Ex. 4a**, Clark Bodycam 2 at 12:10:19 pm (49:01); **Ex. 1**, Clark Dashcam at 12:12:20 pm (2:32:46.)

**RESPONSE**:

117.    Clark reiterated to Taylor and Velez that the children "are fine" and "being cared for." (**Ex. 4A**, Clark Bodycam 2 at 12:10:27-12:10:32 pm (49:09 to 49:15); **Ex. 18,** THP Answer to Complaint ¶ 105.)

**RESPONSE**:

118.    After Taylor said "Okie Dokie," Clark stated that he did not have a problem with Clayborne as a mom. (**Ex. 8, Clark Dep**. at 92:3-6.)

**RESPONSE**:

119.    Taylor said that DCS workers still intended to question Clayborne and the children inside the jail. (**Ex. 4a**, Clark Bodycam 2 at 12:10:52-12:10:56 pm (49:34 to 49:38.)

**RESPONSE**:

120.    Clark requested that DCS workers do the questioning at the car to avoid further disruption to the children. (**Ex. 4a**, Clark Bodycam 2 at 12:10:54-12:11:0 pm (49:36 to 49:42); **Ex. 8, Clark Dep**. at 95:18-20.)

**RESPONSE**:

121.     At 12:10 p.m., Foster then walked over from his patrol vehicle to join Clark in speaking with the DCS case workers behind Clayborne's car. (**Ex. 4a**, Clark Bodycam 2 at 12:10:44-12:11:00 pm (49:26-42.)

**RESPONSE**:

122.     At that point, Foster, Clark, and the two DCS case workers (Taylor and Velez) were all standing behind Ms. Clayborne's car in the driving lane. (**Ex. 8, Clark Dep**. at 95:24-96.)

**RESPONSE**:

123.     At 12:11, Velez stated that she would "go grab Erica" — referring to a third DCS case worker – and walked into the jail. (**Ex. 4a**, Clark Bodycam 2 at 12:11:05-12:11:06 pm (49:47-48.)

**RESPONSE**:

124.     Clark told Foster that he did not believe that Basaldua had issued a citation to Clayborne yet. (**Ex. 8, Clark Dep**. at 98:13-19.)

**RESPONSE**:

125.     Foster expressed surprise because he thought that Basaldua had already issued Clayborne the citation. (**Ex. 8, Clark Dep**. at 98:20-99:1.)

**RESPONSE**:

126.     Clark approached Clayborne's car, asked if she had received a pink "ticket," and she said yes.  (**Ex. 8, Clark Dep**. at 99:12-100:5; **Ex. 4a**, Clark Bodycam 2 at 12:12:11-12:12:19 pm (50:53-51:01.)

**RESPONSE**:

127.     Until he spoke to Clayborne in the parking lot of the jail, Clark did not know that Clayborne had already been issued a citation. (**Ex. 13**, THP Defs. Resp. to RFA  18.)

**RESPONSE**:

128.    Speaking Clayborne's partially rolled-down passenger window, Clark then told Clayborne that a DCS worker was "going to have a chat with you." (**Ex. 8**, Clark Dep. at 100:12-21.)

**RESPONSE**:

129.    Clark did not say this as a question. (**Ex. 8**, Clark Dep. at 100:16-18.)

**RESPONSE**:

130.    Clark added that this was "because we're [THP Troopers] required to call them" – referring to DCS. (**Ex. 8**, Clark Dep. at 100:19-21.)

**RESPONSE**:

131.    Clark then told Clayborne that he (Clark) had asked DCS to do their questioning from inside the car because the children had already been shuffled around so much. (**Ex. 8**, Clark Dep. at 101:2-6.)

**RESPONSE**:

132.    Clark stated again to Clayborne that "she" (referring to a DCS case worker) "is going to talk to you." (**Ex. 4a**, Clark Bodycam 2 at 12:12:43-12:12:45 pm (51:24-52:27); **Ex. 8**, Clark Dep. at 101:9-11.)

**RESPONSE**:

133.    Clark did not say that as a question. (**Ex. 8**, **Clark Dep**. at 101:12-13.)

**RESPONSE**:

134.    Clark asked if Clayborne had any issue with someone from DCS sitting in her car to do the questioning. (**Ex. 8, Clark Dep**. at 102:8-11; **Ex. 4a**, Clark Bodycam 2 at 12:38:37 p.m. to 12:33:39 p.m. (52:19 to 52:21).)

**RESPONSE**:

135.    Clayborne responded that there was nowhere in her car for anyone at DCS to sit. (**Ex. 8, Clark Dep**. at 102:16-18; Ex. 4a, Clark Dep. at 12:13:40 to 12:30:41 (52:22 to 52:23).)

**RESPONSE**:

136.    Clark then stated: "Okay. Well, we'll move stuff around." (**Ex. 8, Clark Dep**. at 104:4-15; **Ex. 4a**, Clark Bodycam 2 at 12:13:42 pm -12:13:44 pm (52:24-52:26.)

**RESPONSE**:

137.    Clark did not phrase that in the form of a question. (**Ex. 8, Clark Dep**. at 104:16-18.)

**RESPONSE**:

138.    Clark then directed Clayborne to unlock her door. (**Ex. 8, Clark Dep**. at 104:23-25; Ex. 4a, Clark Bodycam 2 at 12:13:43 pm to 12:13:45 pm (52:26 to 52:27.)

**RESPONSE**:

139.    Clayborne complied. (**Ex. 8, Clark Dep**. at 104:23-25; **Ex. 4a,** Clark Bodycam 2 at 12:13:45 pm to 12:13:46 pm (52:27 to 52:28.)

**RESPONSE**:

140.    Clark then manipulated various items in the front seat, including placing items in Clayborne's purse, moving the bag to the center console on top of a baby seat, and moving a bag of chips and other items off of the passenger's seat. (**Ex. 8, Clark Dep**. at 105:1-14; **Ex. 4a**, Clark Bodycam 2 at 12:13:47 to 12:14:05.)

**RESPONSE**:

141.    While Clark did this, Clayborne stared forward in silence and did not help with moving any of those items. (**Ex. 8, Clark Dep**. at 105:18 to 106:1; **Ex. 4a**, Clark Bodycam 2 at 12:13:50 to 12:14:05 (52:32 to 52:47.)

   **RESPONSE**:

142.    When Clark was done clearing space on the Clayborne's passenger seat, he left open Clayborne's passenger door and turned back towards the jail. (**Ex. 8, Clark Dep**. at 106:4-10; Clark Bodycam 2 at 12:14:05 to 12:14:06 (52:47 to 52:48).)

   **RESPONSE**:

143.    At this point (12:14:07), behind the bumper of Clayborne's car in the middle of the driving lane, Foster was standing in full uniform with a holstered gun, badge, and black jacket, while Thompson was standing in full uniform with his hand sitting on the top of his holstered gun. (**Ex. 8, Clark Dep**. at 106:17-108:19; **Ex. 4a,** Clark Bodycam 2 at 12:14:07 pm (52:49.)

   **RESPONSE**:

144.    This is an image from Clark's Bodycam 2 at 12:14:07, with Foster on the left, Thompson on the right, and passenger-side rear bumper of Clayborne's car on the far right.



(**Ex. 4a**, Clark Bodycam 2 at 12:14:07 pm (52:49.)

       **RESPONSE**:

    145.    At this point, Clark was on the passenger side of Clayborne's car waiting for the

DCS case workers to come out in order to question Clayborne. (**Ex. 8, Clark Dep**. at 107:21-

108:1.)

       **RESPONSE**:

    146.    After approaching Foster and Thompson, Clark then returned to Clayborne's car

(where the door was still wide open as Clark had left it) and told her that a DCS worker will be

back out in a minute. (**Ex. 8, Clark Dep**. at 109:1-10; **Ex. 4a**, Clark Bodycam 2 at 12:14:09 p.m.

to 12:14:10 pm (52:52 to 52:53.)

       **RESPONSE**:

    147.    This is an image from **Ex. 4a**, Clark bodycam 2 at 12:14:10 pm (52:52), showing

Clayborne's car with its door open and Trooper Clark (whose hand is on the right-hand side)

approaching the car:



(**Ex. 4a**, Clark Bodycam 2 at 12:14:09 pm (52:51.)

    **RESPONSE**:

    148.    Clark then closed the passenger door and pivoted back to the jail, from which a DCS case worker (Taylor) was approaching. (**Ex. 8, Clark Dep**. at 109:16-22; **Ex. 4a**, Clark Bodycam 2 at 12:14:13 to 12:14:14 (52:55 to 52:56.)

    **RESPONSE**:

    149.    At this point, Troopers Foster and Thompson were still standing behind Clayborne's car and Thompson still had his hand resting on his gun. (**Ex. 8, Clark Dep**. at 109:25-110:9; **Ex. 4a**, Clark Bodycam 2 at 12:14:16 pm (52:58.)

    **RESPONSE**:

    150.    Taylor approached Clark and told him that, after speaking with a supervisor to figure out what to do, "I'll talk to mom." (**Ex. 8, Clark Dep**. at 110:6-17; **Ex. 4a**, Clark bodycam 2 at 12:14:14-12:14:23 (52:56 to 53:05.)

    **RESPONSE**:

151.     At 12:14 p.m., Taylor then walked towards the passenger side of Clayborne's car. (**Ex. 8, Clark Dep**. at 110:18-20; **Ex. 4a**, Clark Bodycam 2 at 12:14:23-12:14:31 pm (53:01 to 53:09.)

**RESPONSE**:

152.     The Troopers never told Clayborne that she was free to leave. (**Ex. 13**, THP Defs. Resp. to RFA 14; **Ex. 11**, Clayborne Dep. at 98:21-22 ("Nobody told me I was free to leave.") and 99:22-24 ("They did not tell me that I was free to leave, but they did tell me that I had follow them to the jail.").)

**RESPONSE**:

Dated: December 10, 2025   Respectfully submitted,

*/s/ Anthony A. Orlandi*
Tricia R. Herzfeld (#26014)
Anthony A. Orlandi (#33988)
Benjamin A. Gastel (#28699)
Jeff Preptit (#38451)
**HERZFELD SUETHOLZ GASTEL LENISKI
AND WALL, PLLC**
1920 Adelicia St., Suite 300
Nashville, TN 37212
Telephone: (615) 800-6225
tricia@hsglawgroup.com
tony@hsglawgroup.com
ben@hsglawgroup.com
jeff@hsglawgroup.com

Abby R. Rubenfeld
**Rubenfeld Law Office, PC**
810 Dominican Drive, Ste. 215
Nashville, TN 37228
Telephone: (615) 386-9077
arubenfeld@rubenfeldlaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served on this 10th day of December 2025 by the Court's CM/ECF system which electronically served a copy to all counsel of record:

| | |
|---|---|
| Jeffrey R Thompson<br>Gina Sarli Vogel<br>Grant A. Carringer<br>**Lewis Thomason, P.C.**<br>900 South Gay St., Ste. 300<br>P.O. Box 2425<br>Knoxville, TN 37901<br>865-546-4646<br>jrthompson@lewisthomason.com<br>gvogel@lewisthomason.com<br>GCarringer@LewisThomason.com<br><br>*Attorneys for Coffee County Tennessee and Officer Crabtree* | Daniel J. Ripper<br>Chloe Kennedy<br>Isabella Bombassi<br>**Luther Anderson PLLP**<br>P.O. Box 151<br>Chattanooga, Tennessee 37402<br>(423) 756-5034<br>dan@lutheranderson.com<br>cek@lutheranderson.com<br>bib@lutheranderson.com<br><br>*Attorney for Katlyn Pelham* |
| Meghan Murphy<br>Peako Jenkins<br>**Office of the Tennessee Attorney General**<br>P.O. Box 20207<br>Nashville, Tennessee 37202<br>Phone (615) 253-3890<br>meghan.murphy@ag.tn.gov<br>Peako.Jenkins@ag.tn.gov<br><br>W. Adam Izell<br>**Law Office of W. Adam Izell, PLLC**<br>P.O. Box 4386<br>Chattanooga, TN 37405<br>Telephone: (423) 888-3022<br>adam@chattlawyer.com<br><br>*Attorneys for Ruben Basaldua, Donnie Clark, Douglas Foster, and James Thompson* | Kristin Ellis Berexa<br>Grace Patton<br>**Farrar\|Bates\|Berexa**<br>12 Cadillac Drive, Ste. 480<br>Brentwood, TN 37207<br>Telephone: (615) 254-3060<br>kberexa@fbb.law<br>gpatton@fbb.law<br><br>*Attorneys for Montana Medina* |
| Arthur F. Knight III<br>**Law Office of Arthur F. Knight III**<br>3248 Tazewell Pike, Suite 103<br>Knoxville, TN 37918<br>P: (865) 252-0430<br>arthur@arthurfknightlaw.com | Thomas Hickey, Jr.<br>Rafael E. Camacho<br>Nicholas C. Stevens<br>**SPICER RUDSTROM PLLC**<br>537 Market St., Ste. 203<br>Chattanooga, TN 37402 |

| | |
|---|---|
| ***Attorney for Erica Wright-Gilliam*** | P: 423-541-9809<br>thickey@spicerfirm.com<br>rcamacho@spicerfirm.com<br>nstevens@spicerfirm.com<br><br>***Attorney for Kathleen Velez*** |
| E. Ashley Carter<br>Jeffrey B. Cadle<br>Jessica Davis<br>**Office of Tennessee Attorney General**<br>P.O. Box 20207<br>Nashville, Tennessee 37202<br>P. 615-741-7932<br>Ashley.Carter@ag.tn.gov<br>Jeffrey.cadle@ag.tn.gov<br>Jessica.davis@ag.tn.gov<br><br>***Attorney for Dale Lynn*** | |

/s/ Anthony A. Orlandi
Anthony A. Orlandi