BIANCA CLAYBORNE, individually )
and as parent and next friend of minors )
J.C., D.W., L.W., A.C., and P.C., )
                                                         )
                                                         )   Case No.: 4:24-cv-00012
     Plaintiff,                            )
                                                         )   Judge Clifton L. Corker
v.                                                  )
                                                         )   JURY DEMANDED
RUBEN BASALDUA, et al.,              )
                                                         )
     Defendants.                       )

## PLAINTIFFS' STATEMENT OF ADDITIONAL DISPUTED MATERIAL FACTS IN OPPOSITION TO DALE LYNN'S MOTION FOR SUMMARY JUDGMENT

On January 5, 2026, DCS Defendant Dale Lynn filed a Motion for Summary Judgment (Dkt. 201). Plaintiffs have contemporaneously filed a Response in Opposition to that Motion. Consistent with the Court's Judicial Preferences No. 6 ("Special Instructions for Summary Judgment Motions"), Plaintiffs respectfully submit this Statement of Additional Disputed Material Facts. References to the "Timeline" are to Exhibit 3 to the Declaration of Anthony A. Orlandi, with specific rows within the timeline referenced as "Row [x]."

1. The individuals who communicated about the Clayborne matter on February 17, 2023, including Lynn, did not follow the formal lines of communication and decision-making in addressing the Clayborne matter. (**Pltfs. Ex. 3**, Timeline at Rows 1-86, 88-91, 93-104, 107-109, 111-121, 127-139, 141-143, 145, 147-154, 156-163, 165-176, 181, 182-196, 199-202, 204, 207-215.)

   **RESPONSE**:

2. Lynn had a call with Lusk at 12:39 p.m. to 12:41 p.m., which Lynn claims not to remember anything about. (**Pltfs. Ex. 3**, Timeline, Row 54; **Pltfs. Ex. 37**, Lynn Dep. at 109:20-110:6 & 151:2-7.)

   **RESPONSE**:

1

3. Lusk spoke with Lynn from about 12:44 p.m. to ~1:01 p.m. (about 17 minutes), during which time Lynn facilitated removing the children from Clayborne without a court order by jumping in to investigate and report back as "clean" two potential placements for the Clayborne children. (Lynn Ex. 12; **Pltfs. Ex. 3**, Timeline at Row 57.)

   **RESPONSE**:

4. Lynn knew from his texts with Wright-Gilliam and his ongoing communications with Lusk that DCS workers at the scene were interrogating and searching Clayborne and her children at the jail, and that Clayborne was resisting them. (Lynn Ex. 12 (reflecting texts with Wright-Gilliam based on notes by Wright-Gilliam from questioning Clayborne, and texts that he was "hearing about" the "shit show" from Lusk); **Pltfs. Ex. 3**, Timeline at Rows 53-84.)

   **RESPONSE**:

5. Lynn ratified, assisted, and encouraged the searching and detaining of Clayborne and her children at the jail. (Lynn Ex. 12 (texts with Wright-Gilliam and Medina, and texts about discussion with Lusk); **Pltfs. Ex. 3**, Timeline at Rows 53-98.)

   **RESPONSE**:

6. At 1:01 p.m., while Medina was already on the phone with Katlyn Taylor (one of the workers at the scene), Medina called Lusk on a call that lasted for three minutes until about 1:04 p.m., when Medina texted another DCS case worker that the Clayborne children were going to be removed from Clayborne because Clayborne had "done ticked Kellie off" (referring to Kellie Lusk). (**Pltfs. Ex. 3**, Timeline at Rows 69, 72, 73, 77, 78); **Pltfs. Ex. 18**, Medina 56 (Medina 1:04 p.m. text) ("I think we're just taking them at this point because she's done ticked kellie off").)

   **RESPONSE**:

7. During the 1:01 to 1:04 p.m. call between Lusk and Medina (and potential Katlyn Taylor as well) that took right place after Lynn and Lusk had spoken for about 17 minutes, Lusk stated that the children were being removed from Ms. Clayborne because Clayborne had made her (Lusk) mad. (**Pltfs. Ex. 3**, Timeline Rows 59, 69, 72, 73, 77, 78; **Pltfs. Ex.18**, Medina at 56 (Medina 1:04 p.m. text).)

   **RESPONSE**:

8. At some point during the call between Lynn and Lusk that ran from 12:44 p.m. to about 1:01 p.m., Lynn agreed with Lusk to remove the Clayborne children from Clayborne because Clayborne had made Lusk mad – rather than for a legitimate reason. (**Pltfs. Ex. 3**, Timeline Rows 59, 69, 72, 73, 77, 78; **Pltfs. Ex. 18**, Medina at 56 (Medina 1:04 p.m. text).)

   **RESPONSE**:

9. At 1:08 p.m., Lynn spoke with Lusk for a minute, after which Lynn called Wright-Gilliam at 1:09 p.m. for a minute, after which he called County Investigator James Sherrill at 1:10 p.m. for three minutes to ask the County to remove the children without a court order and before Lynn had spoken to a judge. (**Pltfs. Ex. 3**, Timeline Rows 83, 84, 86, 100, 178; **Pltfs. Ex. 36**, Sherrill Dep. at 13:14-16:24.)

   **RESPONSE**:

10. Lusk asked Lynn at 1:08 p.m. if the children had been removed yet, Lynn called Wright-Gilliam at 1:09 p.m. to check that out and learned that the children had not been removed yet and that no County officers had responded yet to a dispatch request, and Lynn in turn called Sherrill to ask Sherrill to respond to the jail to remove the children without a court order and before speaking a judge. (**Pltfs. Ex. 3**, Timeline Rows 70, 78-81, 83-86, 100, 178; **Pltfs. Ex. 36**, Sherrill Dep. at 13:14-16:24.)

    **RESPONSE**:

11. On a call at 1:10 p.m., Lynn asked Sherrill to physically remove the Clayborne children from Ms. Clayborne without a court order and before anyone had spoken to a judge. (**Pltfs. Ex. 36**, Sherrill Dep. at 13:14-16:24.)

    **RESPONSE**:

12. Sherrill believed that if the County removed the children without a court order, as Lynn was asking the County to do, it could violate the civil rights of the Clayborne family. (**Pltfs. Ex. 36**, Sherrill Dep. at 13:14-16:24; **Pltfs. Ex. 8**, Cleaned-Up Audio Transcript at 3:12-16.)

    **RESPONSE**:

13. Because Sherrill believed that removing the children without a court order would be illegal, Sherrill stated that the County would not do "anything" (meaning would not remove the children as Lynn was requesting) without a court order. (**Pltfs. Ex. 36**, Sherrill Dep. at 13:14-16:24.)

    **RESPONSE**:

14. At Lynn's behest, Sherrill drove to the jail and arrived there at 1:11 p.m. while still on the phone with Lynn. (**Pltfs. Ex. 12**, Crabtree Dep. at 22:7-10 (one minute after Crabtree arrived); **Pltfs. Ex. 3**, Timeline Rows 86, 87, 90.)

    **RESPONSE**:

15. Immediately after hanging up with Sherrill at 1:13 p.m., Lynn called Wright-Gilliam for five minutes from 1:13 p.m. to about 1:17 p.m., during which time Crabtree (at the direction of another County officer who had responded along with Sherrill) put down stop sticks to keep Clayborne from leaving with her children. (**Pltfs. Ex. 12**, Crabtree Dep. at 24:10-26:5; **Pltfs. Ex. 3**, Timeline Rows 90-92.)

**RESPONSE**:

16. Lynn, who outranked Wright-Gilliam, gave Wright-Gilliam instructions on his 1:09 and 1:13 p.m. phone calls with her. (**Pltfs. Ex. 3**, Timeline Rows 59, 72, 73, 77, 78, 83, 84, 86, 87, 90-92); **Pltfs. Ex. 37**, Lynn Dep. at 98:22-99:1.)

    **RESPONSE**:

17. Lynn's call with Wright Gilliam from 1:13 p.m. to about 1:17 p.m. concerned the Clayborne matter. (*See* **Pltfs. Ex. 3**, Timeline Rows 59, 72, 73, 77, 78, 83, 84, 86, 87, 90, 91, 92.)

    **RESPONSE**:

18. Through his calls with Sherrill and Wright-Gilliam, Lynn had DCS workers at the scene and the County keep Clayborne and her children detained pending further notice – and without a court order. (*See* **Pltfs. Ex. 3**, Timeline Rows 59, 69, 70, 72, 73, 77-81, 83-86, 90-92, 100, 178.)

    **RESPONSE**:

19. Lynn either directed, approved, encouraged, or ratified detaining Clayborne and her children at the jail pending further notice – and without a court order. (*See* **Pltfs. Ex. 3**, Timeline, Timeline Rows 53-100.)

    **RESPONSE**:

20. Lynn did not have information indicating that there was an exigency that would justify a unilateral, pre-petition removal by DCS under T.C.A. § 37-1-113(a). (**Pltfs. Ex. 37**, Lynn Dep. at 49:7-14, 53:21-24, 60:20-22 ("non-exigent"); **Pltfs. Ex. 3**, Timeline at Rows 53, 78-81.)

    **RESPONSE**:

21. Lusk did not actually tell Lynn to call the judge due to an exigency, because instead of calling a judge after his 1:08 p.m. call with Lusk, Lynn instead called Wright-Gilliam (one minute), Sherrill (three minutes), Wright-Gilliam again (five minutes), and did not have any calls with anyone from 1:18 p.m. to 1:30 p.m. (12 minutes), when Sherrill called him. (**Pltfs. Ex. 3**, Timeline Rows 83-84, 86, 90, 91, 98.)

    **RESPONSE**:

22. Lynn called a judge after the County once again refused to remove the children illegally without a court order. (*See* **Pltfs. Ex. 3**, Timeline Row 98 (1:30 call from Sherrill to Lynn); **Pltfs. Ex. 8**, Cleaned-Up Audio Transcript at 3:12-16.)

    **RESPONSE**:

23. Under DCS Policy 14.14, Lynn was required to consult with a Master of Social Work or an individual with an advanced clinical degree before taking any actions to remove the children from Clayborne, but did not do so before calling the judge in violation of that policy. (**Pltfs. Ex. 32**, DCS Policy 14.14; **Pltfs. Ex. 3**, Timeline at 54, 59, 72, 83, 84, 91, 100 (no calls to anyone with MSW or clinical degree before call to judge).)

    **RESPONSE**:

24. Under DCS Policy 14.12, Lynn was required to consult with DCS Regional Counsel regarding authorization to file a petition and to physically remove the Clayborne children from Clayborne, but did not do so before calling the judge in violation of that policy. (**Pltfs. Ex. 35**, DCS Policy 14.12; **Pltfs. Ex. 38**, Younglove Dep. at 58:12-62:10.)

    **RESPONSE**:

25. Under DCS Policy, Lynn was required to document his involvement in the Clayborne matters in TFACTS, but did not do so in violation of that policy. (**Pltfs. Ex. 33**, DCS Policy 14.11; **Pltfs. Ex. 34**, DCS Policy 31.14 (Case Documentation Requirements); **Pltfs. Ex. 37**, Lynn Dep. at 163:7-164:6.)

    **RESPONSE**:

26. Having been employed at DSC for 14 years as of February 17, 2023, Lynn knew that what he was doing by calling the judge was illegal and in violation of DCS Policy. (**Pltfs. Ex. 37**, Lynn Dep. at 9:1-4.)

    **RESPONSE**:

27. When Lynn (who is not an attorney) called the judge on the Judge's cell phone to have an unsworn conversation, Lynn was not initiating legal proceedings, not presenting a petition to the judge, and not engaging in advocacy. (**Pltfs. Ex. 37**, Lynn Dep. at 46:22-47:5, 53:18-54:2, 62:11-12, & 64:23-25)

    **RESPONSE**:

28. Lynn's only known interaction with the Judge was this 3.75-minute call that was not a judicial proceeding because the Judge did not take sworn testimony from Lynn, Lynn did not know (nor did he tell the judge) the names of the children or their ages. (**Pltfs. Ex. 31**, Lynn Resp. to Pltfs. Requests for Admission, Nos. 7-12.)

    **RESPONSE**:

29. Whatever Lynn told the Judge on the call was false, because Lynn knew that there was no exigency. (**Pltfs. Ex. 3**, Timeline Rows 59, 69, 72, 73, 78, 81, 83, 84, 86, 90, 91, 98, 100; **Pltfs. Ex. 37**, Lynn Dep. at 53:18-54:2.)

    **RESPONSE**:

5

30. Lynn waited until after his call with Judge Perry to speak with the DCS Attorney Younglove for Coffee County, who had concerns about the legality of Lynn's actions that she expressed to DCS General Counsel's Office. (**Pltfs. Ex. 3**, Timeline 100, 104; **Pltfs. Ex. 38**, Younglove Dep. at 58:12-62:10.)

   **RESPONSE**:

31. Lynn called the Judge on his cell phone without involving a DCS attorney, without going through the Court Clerk's office, and without initiating an actual legal proceeding, so that there would be no record of the call on the Court docket, no record of what was said on it, and no attorney from DCS who would know what was said. (**Pltfs. Ex. 38**, Younglove Dep. at 58:12-62:10; **Pltfs. Ex. 37**, Lynn Dep. at 64:23-25 (unsworn); 56:14-58:20.)

   **RESPONSE**:

32. At the point he hung up with the DCS Attorney Younglove, Lynn knew that DCS had not filed a petition and had not obtained a court order yet. (**Pltfs. Ex. 3**, Timeline Row 115 (Younglove text at 1:51 p.m. to Lynn and Medina); **Pltfs. Ex. 38**, Younglove Dep. at 53:14-55:17.)

   **RESPONSE**:

33. After Lynn spoke with the DCS Attorney Younglove, he called Medina and spoke to her for three minutes, after which Medina called Katlyn Taylor (*nee* Pelham) at the scene for one minute and Erica Wright-Gilliam at the scene for six minutes, while DCS workers at the scene physically removed the children from Clayborne without filing a petition or obtaining a court order. (**Pltfs. Ex. 3**, Timeline Rows 104, 107, 113, 114, 125-126 (reflecting removal by 2:00 p.m.).)

   **RESPONSE**:

34. On his call with Medina, Lynn directed Medina to have individuals at the scene remove the Clayborne children before a petition was filed and before DCS had obtained a court order. (**Pltfs. Ex. 3**, Timeline Rows 104, 107, 113, 114, 125-126.)

   **RESPONSE**:

35. After talking to the judge, Lynn remained actively involved in coordinating removal of the children and in submitting a request for an *ex parte* removal order after the children had already been removed. (*See* **Pltfs. Ex. 3**, Timeline Rows 107, 109, 117, 120, 128, 131, 142, 143, 145, 156, 192, 204, 210-212.)[1]

---

[1] Reflecting calls with Medina from 1:38 to 1:40, Lusk at 1:40, Lusk at 1:54, Christina Cremeans (the DCS Court Liaison) from 2:02 to 2:06, Lusk from 2:06 to 2:09, texts with Cremeans at 2:16, 2:18, and 2:24, a call with Medina from 3:01 to 3:04, a call with Medina from 4:02 to 4:05, and group texts at 4:24, 4:33, and 4:34 in which he called finding placements for the children "awesome!").

**RESPONSE**:

36. Lynn remembers more details about the events of February 17, 2023 than he admitted to in his deposition. (**Pltfs. Ex. 39**, Wright-Gilliam Dep. at 223:23-225:25; **Pltfs. Ex. 3,** Timeline Rows at 5, 13, 54, 56, 57, 59, 63, 66, 67, 72, 74, 75, 83, 84, 86, 90, 91, 98, 99, 104, 107, 109, 117, 120, 128, 131, 143, 145, 147, 156, 165, 166, 167, 174, 192, 204, 209, 210, 211, 212, 213, 218) (reflecting various communications involving Lynn).)

**RESPONSE**:

Dated: February 2, 2026        Respectfully submitted,

*/s/ Anthony A. Orlandi*
Tricia R. Herzfeld (#26014)
Anthony A. Orlandi (#33988)
Benjamin A. Gastel (#28699)
Jeff Preptit (#38451)
**HERZFELD SUETHOLZ GASTEL LENISKI AND WALL, PLLC**
1920 Adelicia St., Suite 300
Nashville, TN 37212
Telephone: (615) 800-6225
tricia@hsglawgroup.com
tony@hsglawgroup.com
ben@hsglawgroup.com
jeff@hsglawgroup.com

Abby R. Rubenfeld
**Rubenfeld Law Office, PC**
810 Dominican Drive, Ste. 215
Nashville, TN 37228
Telephone: (615) 386-9077
arubenfeld@rubenfeldlaw.com

*Attorneys for Plaintiffs*

8

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served on this 2nd day of February 2026 by the Court's CM/ECF system which electronically served a copy to all counsel of record:

| | |
|---|---|
| Jeffrey R Thompson<br>Gina Sarli Vogel<br>Grant A. Carringer<br>**Lewis Thomason, P.C.**<br>900 South Gay St., Ste. 300<br>P.O. Box 2425<br>Knoxville, TN 37901<br>865-546-4646<br>jrthompson@lewisthomason.com<br>gvogel@lewisthomason.com<br>GCarringer@LewisThomason.com<br><br>***Attorneys for Coffee County Tennessee and Officer Crabtree*** | Daniel J. Ripper<br>Chloe Kennedy<br>Isabella Bombassi<br>**Luther Anderson PLLP**<br>P.O. Box 151<br>Chattanooga, Tennessee 37402<br>(423) 756-5034<br>dan@lutheranderson.com<br>cek@lutheranderson.com<br>bib@lutheranderson.com<br><br>***Attorney for Katlyn Pelham*** |
| Meghan Murphy<br>Peako Jenkins<br>**Office of the Tennessee Attorney General**<br>P.O. Box 20207<br>Nashville, Tennessee 37202<br>Phone (615) 253-3890<br>meghan.murphy@ag.tn.gov<br>Peako.Jenkins@ag.tn.gov<br><br>W. Adam Izell<br>**Law Office of W. Adam Izell, PLLC**<br>P.O. Box 4386<br>Chattanooga, TN 37405<br>Telephone: (423) 888-3022<br>adam@chattlawyer.com<br><br>***Attorneys for Ruben Basaldua, Donnie Clark, Douglas Foster, and James Thompson*** | Kristin Ellis Berexa<br>Grace Patton<br>**Farrar\|Bates\|Berexa**<br>12 Cadillac Drive, Ste. 480<br>Brentwood, TN 37207<br>Telephone: (615) 254-3060<br>kberexa@fbb.law<br>gpatton@fbb.law<br><br>***Attorneys for Montana Medina*** |
| Arthur F. Knight III<br>**Law Office of Arthur F. Knight III**<br>3248 Tazewell Pike, Suite 103<br>Knoxville, TN 37918<br>P: (865) 252-0430<br>arthur@arthurfknightlaw.com | Thomas Hickey, Jr.<br>Rafael E. Camacho<br>Nicholas C. Stevens<br>**SPICER RUDSTROM PLLC**<br>537 Market St., Ste. 203<br>Chattanooga, TN 37402 |

| | |
|---|---|
| *Attorney for Erica Wright-Gilliam* | P: 423-541-9809<br>thickey@spicerfirm.com<br>rcamacho@spicerfirm.com<br>nstevens@spicerfirm.com<br><br>*Attorney for Kathleen Velez* |
| E. Ashley Carter<br>Jeffrey B. Cadle<br>Jessica Davis<br>**Office of Tennessee Attorney General**<br>P.O. Box 20207<br>Nashville, Tennessee 37202<br>P. 615-741-7932<br>Ashley.Carter@ag.tn.gov<br>Jeffrey.cadle@ag.tn.gov<br>Jessica.davis@ag.tn.gov<br><br>*Attorney for Dale Lynn* | |

*/s/ Anthony A. Orlandi*
Anthony A. Orlandi
