## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## AT WINCHESTER

| | |
|---|---|
| BIANCA CLAYBORNE, individually and as parent and next friend of minors J.C., D.W., L.W., A.C., and P.C.,<br><br>    Plaintiff,<br><br>v.<br><br>RUBEN BASALDUA, et al.,<br><br>    Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) )  Case No.: 4:24-cv-00012<br><br>Judge Clifton L. Corker<br>Magistrate Judge Michael J. Dumitru<br><br>JURY DEMANDED |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION IN LIMINE #13 – TO EXCLUDE REFERENCES TO THERE BEING A VERBAL ORDER BEFORE THE 1:36 P.M. TELEPHONE CALL

Plaintiffs respectfully move the Court to preclude the County Defendants from asserting that anyone at DCS told the County that DCS had a verbal order before the 1:36 p.m. telephone call.

As Plaintiffs have previously established with objective proof, on February 17, 2023, the following relevant sequence occurred:

- **1:10 p.m.**: Defendant Alan Crabtree (Coffee County) arrives at the jail.[1]

- **1:11 p.m.**: Dale Lynn (DCS) calls James Sherrill (Coffee County).[2] Lynn does not remember this call.[3] However, Sherrill testified he (1) understood Lynn to be asking the County to remove the children without a court order; (2) told Lynn that the County could not remove the children without one; and (3) Lynn indicated that he was working on getting a court order and would inform Sherrill when he got one (*i.e.*, he did not have one yet).[4]

- **1:13 p.m. - 1:15 p.m.**: Within three to five minutes of arriving at the jail, Crabtree places down stop sticks to keep Clayborne from leaving.[5]

- **1:31 p.m.**: Lynn speaks to the Judge for the first time that day.[6]

- **1:36 p.m.**: The Judge calls Sherrill on his cell phone and indicates that the County "can go ahead and let DCS have them" – referring to the Clayborne children.[7] Sherrill responds by stating that "we ain't got no order."[8]

---

[1] Dkt. 259 at Fact No. 27.

[2] *Id.* at Fact No. 31.

[3] Dkt. 250-37, Lynn Dep at 114:12-115:5.

[4] Dkt. 266-6, Sherrill Dep. at 13:17-23 ("I advised [Lynn] that we couldn't do anything without a court order. And I believe that's what he was working on with Judge Perry to get set up."); 16:13-18 ("Q: So if DCS says they're trying to take these kids, and you say we can't do it without a court order, what did you mean by that? A: That means we cannot assist without a court order. We cannot physically remove children from any residence, car, family member . . ."); 17:4-22 ("Q: Dale Lynn, to your knowledge would know that the sheriff's office can't get involved without a court order? A: Yes. . . . Q: And so you said to Dale words along the lines of, we can't get involved without a court order? A: I don't know exactly what I told him, but probably something to that effect. . . . He said they were working with Judge Perry trying to get the order together, and he would call me back or somebody would call me back and let me know."); and 110:5-9 (clarifying that it was the 1:11 p.m. call he had testified about).

[5] Dkt. 259 at Fact No. 51.

[6] Dkt. 250-3, Timeline at Row 100 (Lynn's 1:31 p.m. call with Judge Perry).

[7] Dkt. 250-8, Cleaned-Up Audio.

[8] *Id.* at time stamp 2:20-2:26 ("If we get in the middle of this, there's going to be a damn lawsuit for sure, and *we ain't got no order*") (emphasis added).

1

Indeed, in Interrogatory Responses, the County itself represented that the only calls "that are recalled by Inv[estigator] Sherrill as relating to the incident" were the 1:11 p.m. call from Lynn, the 1:31 p.m. call to Lynn, and the 1:36 p.m. call from the Judge.[9]

It is indisputable that there was no court order in place before the 1:11 p.m. call. It is also indisputable that, on that call, Sherrill understood Lynn to be asking the County to intervene without a court order.[10] Indeed, Sherrill testified that, *after* the 1:11 p.m. call from Lynn, Sherrill went inside the jail to speak Chief Deputy Frank Watkins to express concern that he understood DCS to have asked the County to remove the children in the parking lot *without a court order*, which Sherrill was concerned could violate the family's civil rights.[11]

Nevertheless, the County Defendants recently have asserted that (1) Lynn spoke to Judge Perry *before* Lynn called Sherrill at 1:11 p.m.; (2) after speaking to Judge Perry, Lynn called Sherrill at 1:11 p.m. to tell Sherrill that Judge Perry had just issued an order to remove the children; and (3) the County reacted to that call by seeking to enforce the court's order.[12] These assertions are factually inaccurate and misrepresent the timeline and Sherrill's own testimony. If the County Defendants are allowed to present these factually inaccurate assertions at trial, it will mislead and

---

[9] Dkt. 250-10 at Resp. to Rog. 6.

[10] The County Defendants' attempts to characterize their call with Judge Perry as "confirm[ing]" the existence of a previously conveyed court order (*see* Dkt. 258 at 6) are mischaracterizations of the record and of the substance of the phone call itself.

[11] Dkt. 211-12, Sherrill Dep. at 20:7-25; Sherrill Dep. at 21:1-12 ("Q: And did you tell [Watkins] that you had concerns about their request? A: I told that without a court order, yes, I had some concerns. Q: What were your concerns? A: That if we didn't have a court order to help remove these kids, then we would be sitting right where we are now. Q: And what do you mean by sitting where we are right now? A: In a lawsuit."); *see also,* Dkt. 201-10, Sherrill Dep. at 89:11-20; Dkt. 250-8 (audio of Sherrill's 1:36 p.m. call with Judge Perry, at time stamp 2:20-2:26 ("If we get in the middle of this, there's going to be a damn lawsuit for sure, and *we ain't got no order*") (emphasis added).)

[12] *See, e.g.*, Dkt. 197 at 4-5.

confuse the jury, and prejudice Plaintiffs by permitting facts into evidence that are objectively not true.

Plaintiffs accordingly request that the Court prohibit the County Defendants from claiming that there was a court order in place when Lynn called Sherrill at 1:11 p.m., that Lynn had already spoken to the judge by that point, and that Lynn told Sherrill on that call that there was a court order.

Dated: March 20, 2026

Respectfully submitted,

*/s/ Anthony A. Orlandi*
Tricia R. Herzfeld (#26014)
Anthony A. Orlandi (#33988)
Benjamin A. Gastel (#28699)
Jeff Preptit (#38451)
**HERZFELD SUETHOLZ GASTEL LENISKI AND WALL, PLLC**
1920 Adelicia St., Suite 300
Nashville, TN 37212
Telephone: (615) 800-6225
tricia@hsglawgroup.com
tony@hsglawgroup.com
ben@hsglawgroup.com
jeff@hsglawgroup.com

Abby R. Rubenfeld (#6645)
**Rubenfeld Law Office, PC**
810 Dominican Drive, Ste. 215
Nashville, TN 37228
Telephone: (615) 386-9077
arubenfeld@rubenfeldlaw.com

*Attorneys for Plaintiffs*

3

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a copy of the foregoing document was served on this 20th day of March 2026 by the Court's CM/ECF system which electronically served a copy to all counsel of record:

| | |
|---|---|
| Jeffrey R Thompson<br>Gina Sarli Vogel<br>Grant A. Carringer<br>**Lewis Thomason, P.C.**<br>900 South Gay St., Ste. 300<br>P.O. Box 2425<br>Knoxville, TN 37901<br>865-546-4646<br>jrthompson@lewisthomason.com<br>gvogel@lewisthomason.com<br>GCarringer@LewisThomason.com<br><br>***Attorneys for Coffee County Tennessee and Officer Crabtree*** | Daniel J. Ripper<br>Chloe Kennedy<br>Isabella Bombassi<br>**Luther Anderson PLLP**<br>P.O. Box 151<br>Chattanooga, Tennessee 37402<br>(423) 756-5034<br>dan@lutheranderson.com<br>cek@lutheranderson.com<br>bib@lutheranderson.com<br><br>***Attorney for Katlyn Pelham*** |
| Meghan Murphy<br>Peako Jenkins<br>Dawn Jordan<br>**Office of the Tennessee Attorney General**<br>P.O. Box 20207<br>Nashville, Tennessee 37202<br>Phone (615) 253-3890<br>meghan.murphy@ag.tn.gov<br>Peako.Jenkins@ag.tn.gov<br>Dawn.jordan@ag.tn.gov<br><br>W. Adam Izell<br>**Law Office of W. Adam Izell, PLLC**<br>P.O. Box 4386<br>Chattanooga, TN 37405<br>Telephone: (423) 888-3022<br>adam@chattlawyer.com<br><br>***Attorneys for Ruben Basaldua, Donnie Clark, Douglas Foster, and James Thompson*** | Kristin Ellis Berexa<br>Grace Patton<br>**Farrar\|Bates\|Berexa**<br>12 Cadillac Drive, Ste. 480<br>Brentwood, TN 37207<br>Telephone: (615) 254-3060<br>kberexa@fbb.law<br>gpatton@fbb.law<br><br>***Attorneys for Montana Medina*** |
| Arthur F. Knight III<br>**Law Office of Arthur F. Knight III**<br>3248 Tazewell Pike, Suite 103<br>Knoxville, TN 37918<br>P: (865) 252-0430 | Thomas Hickey, Jr.<br>Rafael E. Camacho<br>Nicholas C. Stevens<br>**SPICER RUDSTROM PLLC**<br>537 Market St., Ste. 203 |

4

| | |
|---|---|
| arthur@arthurfknightlaw.com<br><br>***Attorney for Erica Wright-Gilliam*** | Chattanooga, TN 37402<br>P: 423-541-9809<br>thickey@spicerfirm.com<br>rcamacho@spicerfirm.com<br>nstevens@spicerfirm.com<br><br>***Attorney for Kathleen Velez*** |
| E. Ashley Carter<br>Jeffrey B. Cadle<br>Jessica Davis<br>**Office of Tennessee Attorney General**<br>P.O. Box 20207<br>Nashville, Tennessee 37202<br>P. 615-741-7932<br>Ashley.Carter@ag.tn.gov<br>Jeffrey.cadle@ag.tn.gov<br>Jessica.davis@ag.tn.gov<br><br>***Attorney for Dale Lynn*** | |

*/s/ Anthony A. Orlandi*
Anthony A. Orlandi

5